**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PHILLIP TORETTO, DANIEL C. KING, and
SHERI BRAUN, individually and on behalf of all
others similarly situated,

        Plaintiffs,

    v.

DONNELLY FINANCIAL SOLUTIONS, INC. and
MEDIANT COMMUNICATIONS, INC.,

        Defendants.

Case No. 1:20-cv-02667-GHW

**DEFENDANT MEDIANT
COMMUNICATIONS INC.'S
MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS**

BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202-2662
Telephone: 303-861-0600
Facsimile: 303-861-7805

*Attorneys for Mediant Communications Inc.*

# TABLE OF CONTENTS

I.   Introduction. ................................................................................................................1

II.  Statement of Facts............................................................................................................1

III. Choice-of-Law Analysis. ...............................................................................................3

IV.  Legal Standard. ...............................................................................................................3

V.   Argument..........................................................................................................................4

      A.   Plaintiffs Do Not Have Standing to Assert Their GBL Claim Against
           Mediant Because They Do Not Allege the Actionable Transaction Occurred
           in New York. ....................................................................................................4

      B.   Plaintiffs Lack Standing to Pursue Their Contract Claims.............................8

VI.  Conclusion........................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
  651 F. Supp. 2d 155 (S.D.N.Y. 2009)...................................................................................10

*Baker-Rhett v. Aspiro AB*,
  324 F. Supp. 3d 407 (S.D.N.Y. 2018).....................................................................................6

*Baskerville-Donovan Engineers, Inc. v. Pensacola Exec. House Condo. Ass'n, Inc.*,
  581 So. 2d 1301 (Fla. 1991) ...................................................................................................8

*Burns Jackson Miller Summit & Spitzer v. Lindner*,
  451 N.E.2d 459 (NY 1983).....................................................................................................10

*Carter v. HealthPort Techs., LLC*,
  822 F.3d 47 (2d Cir. 2016) .....................................................................................................4

*Chiste v. Hotels.com L.P.*,
  756 F. Supp. 2d 382 (S.D.N.Y. 2010).....................................................................................6

*Clapper v. Amnesty Intern. USA*,
  133 S.Ct. 1138 (2013)...............................................................................................................3

*Curley v. AMR Corp.*,
  153 F.3d 5 (2d Cir. 1998) .........................................................................................................3

*CVS Pharmacy, Inc. v. Press Am., Inc.*,
  No. 1:17-CV-190-GHW, 2018 WL 318479 (S.D.N.Y. Jan. 3, 2018) ...................................8

*Eaves v. Designs for Fin., Inc.*,
  785 F. Supp. 2d 229 (S.D.N.Y. 2011).....................................................................................5

*Goshen v. Mut. Life Ins. Co. of New York*,
  98 N.Y.2d 314, 774 N.E.2d 1190 (2002) .........................................................................4, 5, 6

*Hush Little Baby, LLC v. Chapman*,
  No. 8:13-CV-2027-T-17AEP, 2015 WL 9165909 (M.D. Fla. Dec. 16, 2015)....................7

*In re SuperValu, Inc.*,
  870 F.3d 763, 771 (8th Cir. 2017)............................................................................................9

*Jackson v. Eddy's LI RV Ctr., Inc.*,
  845 F. Supp. 2d 523 (E.D.N.Y. 2012).....................................................................................9

*Kaufman v. Sirius XM Radio, Inc.*,
    474 F. App'x 5 (2d Cir. 2012) ................................................................................6

*Lujan v. Defenders of Wildlife*,
    112 S.Ct. 2130 (1992) ..........................................................................................3

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ................................................................................3

*May v. U.S. HIFU, LLC*,
    98 A.D.3d 1004, 951 N.Y.S.2d 163 (2012) ......................................................8

*Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*,
    No. 08 CIV. 3604(BSJ), 2009 WL 1119409 (S.D.N.Y. Apr. 26, 2009) ..........5

*Raines v. Byrd*,
    117 S.Ct. 2312 (1997) ..........................................................................................3

*Sharpe v. Puritan's Pride, Inc.*,
    No. 16-cv-06717, 2019 WL 188658 (N.D. Cal. Jan. 14, 2019) ......................6

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*,
    642 F. Supp. 2d 167 (S.D.N.Y. 2009) ..............................................................6

*Spokeo, Inc. v. Robins*,
    136 S.Ct. 1547 (2016) ..........................................................................................3

*Tamir v. Bank of New York Mellon*,
    No. 12-CV-4780 DLI JO, 2013 WL 4522926 (E.D.N.Y. Aug. 27, 2013) ......8

*Toretto v. Mediant Commc'ns, Inc.*,
    No. 19-CV-05208-EMC, 2020 WL 1288478 (N.D. Cal. Mar. 18, 2020) ........8

*Verify Smart Corp. v. Bank of Am., N.A.*,
    No. CV174248JMVJBC, 2019 WL 1594474 (D.N.J. Apr. 15, 2019) ..............7

*Warth v. Seldin*,
    95 S.Ct. 2197 (1975) ............................................................................................4

*Windham at Carmel Mountain Ranch Assn. v. Superior Court*,
    109 Cal. App. 4th 1162, 135 Cal. Rptr. 2d 834 (2003) ....................................8

*Wright v. Publishers Clearing House, Inc.*,
    439 F. Supp. 3d 102 (E.D.N.Y. 2020) ..........................................................5, 6

**Statutes**

N.Y. Gen. Bus. Law § 349 ..............................................................................4, 5, 6, 7

N.Y. Gen. Bus. Law § 349(h) .................................................................................................................. 4

**Rules**

Fed. R. Civ. P. § 12(b)(1) ............................................................................................ 1, 3, 4, 5

Fed. R. Civ. P. § 12(b)(6) ............................................................................................... 1, 4, 5

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendant Mediant Communications Inc. ("Mediant"), through counsel, moves this Court to dismiss Counts III, IV, V, and X of the first amended complaint ("Complaint") filed by plaintiffs Phillip Toretto, Daniel C. King, and Sheri Braun ("Plaintiffs") for lack of standing. In support, Mediant states as follows:

## I.    __Introduction.__

As relevant to Plaintiffs' Complaint, Mediant performs proxy and mailing services for clients (such as Donnelley Financial Solutions, Inc. ("Donnelley"), who in turn perform certain services for their clients, who in turn are public companies and mutual funds in which individual consumers invest. In order to provide its services, Mediant requires certain information regarding individual consumers, including but not limited to their mailing addresses. Here, it is undisputed that Mediant obtained certain information regarding Plaintiffs from various third parties in order to perform these services. Though their allegations do not reveal the answer, only Plaintiffs know with certainty where, when, and under what terms they provided these entities their information. In any event, Plaintiffs never provided any information to Mediant, nor did they ever provide Mediant anything of value. Indeed, none of the Plaintiffs can even allege they had ever heard of Mediant before they made the decision to provide their information to third parties.

These facts alone, outlined in detail below, constitute a sufficient basis to dismiss Counts III, IV, V, and X of Plaintiffs' Complaint for failure to allege standing. Mediant intends to move to dismiss the remaining claims pursuant to Federal Rule of Civil Procedure 12(b)(6) at the appropriate time.

## II.    __Statement of Facts.__

Plaintiffs do not allege they had a customer relationship with Mediant. Instead, they allege that Donnelley Financial Solutions, Inc. ("Donnelley") is hired by "public companies and mutual funds" to work as "their proxy agent to distribute materials to shareholders, coordinate shareholder votes,

and tabulate voting results," and that Mediant works with Donnelley to provide these services. (Compl., ¶ 1.)

Plaintiffs also do not allege that they provided their information to Mediant. (*Id.*, ¶ 20 (alleging that Mediant obtains investor information in connection with its work on behalf of public companies and mutual funds); ¶ 30 (Toretto alleging Mediant received his information in connection with providing services to Blackstone Real Estate Income Trust, Inc. (2017 Annual Meeting)); ¶ 37 (King alleging Mediant received his information in connection with providing services to Ivy Natural Resources Fund's 2019 proxy); ¶ 43 (Braun alleging Mediant received her information in connection with providing services to a real estate investment trust).) Plaintiffs do not allege that Mediant had a contract with these third party entities; indeed, Plaintiffs do not even allege that Mediant obtained their information directly from these entities. Further, Plaintiffs do not allege that Mediant received anything of value from these entities. Instead, Plaintiffs allege that these entities provide information to Donnelley who in turn provides it to Mediant. (*Id.*, ¶ 1.) But even this is not true. In fact, these entities provide the information to third-party agents who in turn provide it to Mediant. (*See* Donnelley Motion to Dismiss, Hughes Declaration ("Hughes Decl."), ¶ 4.) Accordingly, Mediant is *at least* three times removed from Plaintiffs: Plaintiffs provide their information to companies/funds, those companies/funds provide their information to third-party agents, and those agents provide the information to Mediant. *Id.*

The only other link Plaintiffs attempt to establish between themselves and Mediant is their allegation that Mediant posted a privacy policy on its website, and that this website is "available to all of its customers' investors." (*Id.*, ¶ 59.) Plaintiffs do not allege that they ever viewed this policy prior to providing their Personal Information to the entities they invested in (or at any point prior to the security incident at issue in this litigation), nor do they allege the terms or conditions under which they provided their information to third party companies/funds.

Finally, Plaintiffs allege they are residents of California (Toretto), New Jersey (King), and Florida (Braun). (*Id.*, ¶¶ 6-8.) Plaintiffs do not allege they ever set foot in New York (much less that they suffered legal injury to some protected interest in New York), nor do they allege that the security incident at issue in this litigation occurred in New York.

### III.   <u>Choice-of-Law Analysis.</u>

The Court is not required to conduct a choice-of-law analysis where there is no conflict of laws. *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) Instead, the Court is free to apply New York law where, as relevant here, a conflict is absent. *Id.* As reflected below, there are no substantive differences between the jurisdictions.

### IV.   <u>Legal Standard.</u>

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Intern. USA*, 133 S.Ct. 1138, 1146 (2013). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish standing to sue.'" *Id.* (quoting *Raines v. Byrd*, 117 S.Ct. 2312, 2317 (1997)). "The doctrine [of standing] limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal the plaintiff must have "suffered an injury in fact," which is "fairly traceable" to the defendant's challenged misconduct, and "likely to be redressed by a favorable decision." *Id.* "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 112 S.Ct. 2130, 2136 (1992). To meet this burden at the pleading stage, "the plaintiff must clearly allege facts demonstrating each element." *Spokeo*, 136 S.Ct. at 1547 (internal citations and quotations omitted). In the class action context, the representative plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other,

unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 95 S.Ct. 2197, 2207 (1975) (emphasis added).

Where a defendant challenges standing pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may mount either a facial attack, a factual attack, or both. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). A facial attack operates much like a Rule 12(b)(6) motion, insofar as it is "based solely on the allegations of the complaint" and "the plaintiff has no evidentiary burden." *Id.* Accordingly, the task for the district court is to determine whether the plaintiff has pled facts that "affirmatively and plausibly" suggest the plaintiff has standing to sue. *Id.*

Where a factual attack is made, a defendant may proffer evidence beyond the pleadings. *Id.*, at 57. In opposition to this style of motion, the plaintiff must come forward with evidence to rebut the defendant's position, assuming the allegations of the complaint are insufficient to do so. *Id.*

## V.   Argument.

### A.   Plaintiffs Do Not Have Standing to Assert Their GBL Claim Against Mediant Because They Do Not Allege the Actionable Transaction Occurred in New York.

New York's GBL allows private suits under Section 349(h) where an individual is able to allege injury resulting from any violation of Section 349. N.Y. Gen. Bus. Law § 349(h). To have standing under this section, a plaintiff must allege: (1) a direct injury; (2) that occurred in New York. *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324, 774 N.E.2d 1190, 1195 (2002) ("the transaction in which the consumer is deceived must occur in New York"). Plaintiffs cannot make this showing.

Plaintiffs' GBL claim depends upon the theory that Mediant touted the sufficiency of its information security protocols when it actually knew that they were insufficient. (Compl., ¶¶ 2-3.) According to Plaintiffs, this "deception" enabled Mediant to get its hands on Plaintiffs' data, which in turn was *possibly* lost when a third-party criminal actor attacked several Mediant employee e-mail

4

accounts. (*Id.*, ¶¶ 25, 59-60, 160-61.) Plaintiffs lack standing to style these allegations as a viable GBL claim because they have not and cannot allege that Mediant deceived Plaintiffs *in New York*.[1]

Plaintiffs' only nexus to New York is their allegation that Mediant is headquartered in New York and allegedly committed deceptive acts there. (Compl., ¶ 211 ("Mediant is headquartered in this District and engaged in deceptive acts or practices in the conduct of its business . . . .").) Such allegations are categorically insufficient; a plaintiff does not allege standing to assert a GBL claim simply because the defendant's headquarters are in New York, or commits deceptive acts there. *Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*, No. 08-cv-3604, 2009 WL 1119409, at *4 (S.D.N.Y. Apr. 26, 2009) ("New York law is clear" that defendant's principal place of business "is not sufficient to render GBL § 349 applicable."); *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 267 (S.D.N.Y. 2011) (where "the allegedly deceptive transaction" was a marketing plan sent to plaintiffs, dismissal was appropriate because there was "no indication that . . . any . . . misleading statements were received by Plaintiffs anywhere but in Colorado or Florida"); *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1196 (NY 2002) (finding that the "analysis does not turn on the residency of the parties" and that the GBL "was not intended to police the out-of-state transactions of New York companies.")

Instead, and as this Court held in 2018 on remarkably similar facts, to have standing, a GBL plaintiff must allege that the *actionable transaction* occurred *in New York*. *Baker-Rhett v. Aspiro AB*, 324 F. Supp. 3d 407, 416 (S.D.N.Y. 2018) ("the deception of consumers must occur in New York"). Indeed, like here, *Baker-Rhett* dealt with a plaintiff that initially filed suit in California, and the plaintiff's complaint, like here, contained no allegations that the plaintiff was deceived in New York. *Id.*, at 416-

---

[1] Courts dismiss complaints where, as here, the plaintiff cannot allege that he/she was deceived in New York. Counsel notes that some courts dismiss on Rule 12(b)(6) grounds whereas others dismiss on Rule 12(b)(1) grounds. *See, e.g., Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*, No. 08 CIV. 3604(BSJ), 2009 WL 1119409, at *3 (S.D.N.Y. Apr. 26, 2009) (12(b)(6)); *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102 (E.D.N.Y. 2020). This is a distinction without a difference for present purposes; the analysis is the same regardless of what rule is applied, and the rule relied upon appears to be a function of the arguments advanced by the parties rather than a difference in analysis from the courts.

17. Indeed, the plaintiff's case was stronger in *Baker-Rhett* insofar as the plaintiff at least had a written contract with the defendant that contained a choice of law provision identifying New York. *Id.*, at 417.

Courts consistently agree with this Court's decision in *Baker-Rhett. See, e.g.*, *Goshen*, 774 N.E.2d at 1195-96 (actionable transactions are those that occur within the state); *Wright*, 439 F. Supp. 3d 102 (E.D.N.Y. 2020) ("transactions occur where the consumer viewed the advertisement or purchased the product"). Indeed, courts consistently hold that an actionable transaction occurs when and where the plaintiff completes it. *Id.* Accordingly, a plaintiff cannot establish standing merely by alleging that the defendant did a deceptive act in New York (*e.g.*, developing and publishing deceptive marketing materials in New York), which thereafter caused the plaintiff to make a purchase or enter into an agreement in another state. *Wright,* 439 F. Supp. 3d at 102 (where plaintiffs were deceived outside New York, allegations that defendants hatched their deceptive schemes in New York, sent marketing materials containing deceptive representations from New York, and received payments and processed orders in New York did not confer standing); *see also Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7 (2d Cir. 2012) ("well-settled that a purchaser does not have standing to bring a Section 349 claim just because he or she transacted with a seller who resides in New York"); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 403 (S.D.N.Y. 2010) (dismissing claim where plaintiffs made internet purchases from New York companies in their respective home states); *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 203 n.19 (S.D.N.Y. 2009) ("It is not sufficient that a marketing plan originates in New York if the consumer deception occurs elsewhere."); *Sharpe v. Puritan's Pride, Inc.*, No. 16-cv-06717, 2019 WL 188658, at *3 (N.D. Cal. Jan. 14, 2019) (same); *Verify Smart Corp. v. Bank of Am., N.A.*, No. CV174248JMVJBC, 2019 WL 1594474, at *10 (D.N.J. Apr. 15, 2019) (same); *Hush Little Baby, LLC v. Chapman*, No. 8:13-CV-2027-T-17AEP, 2015 WL 9165909, at *13 (M.D. Fla. Dec. 16, 2015) ("Because Plaintiff HLB does not allege that Defendant Chapman's alleged misleading conduct was

6

directed to consumers in New York, Plaintiff HLB does not state a claim for relief pursuant to §
349.").

Here, Plaintiffs concede that they each reside outside the state (*id.*, ¶¶ 6-8), and they do not
allege that they interacted with Mediant in New York, nor do they allege that Mediant deceived them
in New York. (*See generally*, Compl.) Plaintiffs cannot allege that Mediant deceived them in any location,
including New York, because Plaintiffs concede that they had no relevant contact with Mediant. They
cannot allege they even knew Mediant existed prior to providing their information to third parties.
Indeed, during the motion to dismiss hearing in federal court in California, counsel for Plaintiffs
admitted, on record, that he did not believe that any shareholder, including Plaintiffs, were aware of
Mediant when they provided their information to the third party companies/funds. (Exhibit A,
Motion to Dismiss Transcript, p. 21:25-22:1-7.) Instead, Mediant received Plaintiffs information from
third-party agents who in turn worked with public companies/funds in which Plaintiffs invest.
(Hughes Decl., ¶ 4.) Accordingly, Plaintiffs are on far worse footing than the plaintiffs in the above-
cited cases, who could each at least allege they directly interacted with a New York defendant, and
that the interaction directly induced them into a purchase or an agreement that caused injury. In those
cases, the plaintiffs could allege that the defendant "hatched its deceptive scheme" in New York, and
by direct virtue of that scheme, the plaintiffs entered into agreements/purchased goods outside the
state that caused them injury. In every case, such allegations were insufficient.

Even if the Court assumes that Mediant falsely represented the adequacy of its information
security in New York, Plaintiffs' claim unmistakably depends upon the premise that a viable GBL
action arises in every state Mediant' s false representations produced reliance and/or injury, no matter
how far removed from Mediant and/or New York. Clear and substantial precedent demonstrates that
this premise has no legal basis, and therefore Plaintiffs' GBL claim should be dismissed.

### B.  Plaintiffs Lack Standing to Pursue Their Contract Claims.

"A non-party to a contract lacks standing to challenge an agreement in the absence of terms demonstrating that it is a third-party beneficiary." *Tamir v. Bank of New York Mellon*, No. 12-CV-4780 DLI JO, 2013 WL 4522926, at *3 (E.D.N.Y. Aug. 27, 2013); *CVS Pharmacy, Inc. v. Press Am., Inc.*, No. 1:17-CV-190-GHW, 2018 WL 318479, at *5 (S.D.N.Y. Jan. 3, 2018) (same); *May v. U.S. HIFU, LLC*, 98 A.D.3d 1004, 1006, 951 N.Y.S.2d 163, 166 (2012); *Baskerville-Donovan Engineers, Inc. v. Pensacola Exec. House Condo. Ass'n, Inc.*, 581 So. 2d 1301, 1303 (Fla. 1991) (same); *Windham at Carmel Mountain Ranch Assn. v. Superior Court*, 109 Cal. App. 4th 1162, 1173, 135 Cal. Rptr. 2d 834, 841 (2003) (same). Here, the Court should find that Plaintiffs have no standing to pursue contract claims against Mediant for four reasons.

First, a federal district court in California, after reviewing the parties' jurisdictional discovery, unequivocally held that "there is no contract between the parties, and Plaintiffs are not one of the Defendant's clients." *Toretto v. Mediant Commc'ns, Inc.*, No. 19-CV-05208-EMC, 2020 WL 1288478, at *3 (N.D. Cal. Mar. 18, 2020); (*see also* Exhibit A, p. 3:2-7 ("this is not a contractual cause of action with the people . . . who had a direct relationship with Mediant . . . these are the bystanders whose records were uploaded".) This Court is not required to follow that decision, but is free to rely on it as persuasive authority. Indeed, even in its review of the facts of this case in preparation for the parties' pre-motion conference, this Court forcefully stated: "[h]ow is [Plaintiffs' claim] a description of any kind of contract law? [I]f somebody reasonably believes that someone three tiers down the road is going to act in a certain way, then that person has a contract with that person?" (Exhibit B, Pre-Motion Conference Transcript, p. 22:13-22.) The Court was assessing Plaintiffs' contract claim against Donnelley, but as the California federal court found, it applies with equal force to Mediant because, like Donnelley, Mediant and Plaintiffs are separated by several entities.

Second, and consistent with the findings of the federal district court in California, Plaintiffs freely admit they had no direct contractual relationship with Mediant. (Compl., ¶ 20 (alleging that Mediant received Plaintiffs' information from third party entities.) Indeed, Plaintiffs were even more forthcoming on this point in their hearing on Mediant's motion to dismiss in California. There, the court asked whether "an individual shareholder" ever provided their information "directly to Mediant." (Exhibit A, p. 21:19-20.) In response, counsel for Plaintiffs stated: "I don't think it's provided directly to Mediant." (*Id.*, p. 21:21-23.) Following up, the court stated that it "[t]akes two to make a contract," and asked "do you think . . . any shareholder would even know that [a third party entity] contracted through an intermediary to have Mediant do the proxy service work?" (*Id.*, p. 21:25-22:1-7.) Counsel candidly responded: "I don't." (*Id.*) Indeed, Mediant did not have any contractual relationship with any of the Plaintiffs, nor did it have such a relationship with any of the entities in which the Plaintiffs invested. (Compl., ¶ 20; Hughes Decl., ¶ 4.) The parties never entered into any agreement, Plaintiffs are on record freely admitting that they never even knew about Mediant before providing their information, and therefore Plaintiffs lack standing to sue to enforce any supposed contractual security commitments Mediant allegedly made to third parties.

Third, these arguments apply with equal force to Plaintiffs' implied breach of contract claim, which under the facts of this case, also requires privity. *See, e.g., Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 530 (E.D.N.Y. 2012) ("New York law allows claims of implied warranty to be brought only by those in privity with the named defendant."); *In re SuperValu, Inc.*, 870 F.3d 763, 771 (8th Cir. 2017) (finding on similar facts no standing where plaintiff failed to set forth allegations they were party to an implied contract merely by virtue of the defendant's information security commitments). Accordingly, Plaintiffs' claim for implied breach of contract should be dismissed for the same reasons its express contract claim should be dismissed.

Finally, Plaintiffs appear to understand their predicament, and attempt to solve it by alleging a third party beneficiary claim. To properly allege the right to sue under a third party beneficiary theory, Plaintiffs must allege the existence of a contract, an intent by the contracting parties that the contract benefit Plaintiffs, and that the benefit be immediate rather than incidental. *Burns Jackson Miller Summit & Spitzer v. Lindner*, 451 N.E.2d 459, 469 (NY 1983).

Here, Plaintiffs do not allege these elements. Instead, Plaintiffs only suppose that Mediant entered into undisclosed contracts with unnamed and undisclosed parties and that those contracts contain provisions that evince an intent to benefit Plaintiffs. Plaintiffs do not allege the terms of these contracts nor do they allege any intent to benefit them. *See, e.g.*, *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 184 (S.D.N.Y. 2009) (dismissing third party beneficiary claim where it "lack[ed] any facts regarding when . . . contracts were formed and their major terms").

Moreover, this contract theory cannot solve Plaintiffs' standing problem for the reason this Court already observed: a party does not have a contract simply because another party, three tiers up the road, reasonably believes that party will eventually act in a certain way. (Exhibit B, p. 22:13-22.)

## VI.   Conclusion.

Plaintiffs never had any relationship, express or implied, with Mediant. Accordingly, Plaintiffs lack standing to bring their GBL claim (because Mediant did not injure Plaintiffs in New York), and Plaintiffs lack standing to bring their contract claims because Plaintiffs are not party to any contract with Mediant and have not identified any contract or contractual terms that they could claim they were intended to benefit from

Dated: July 17th, 2020                           Respectfully submitted,


                                                 */s/ Casie D. Collignon*
                                                 Casie D. Collignon, Esq.
                                                 Baker & Hostetler LLP
                                                 1801 California Street, Suite 4400
                                                 Denver, CO 80202-2662
                                                 Telephone: 303-861-0600
                                                 Facsimile: 303-861-7805
                                                 ccollignon@bakerlaw.com

                                                 *Attorneys for Defendant*

11

### <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing Motion to Dismiss was filed and

served on all counsel of record on this 17th day of July, 2020, via the Court's ECF system.


_____ */s/ Casie D. Collignon* _____