UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILLIP TORETTO, DANIEL C. KING, and SHERI BRAUN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>DONNELLEY FINANCIAL SOLUTIONS, INC. and MEDIANT COMMUNICATIONS, INC.,<br><br>        Defendants. | Case No. 1:20-cv-02667-GHW |

**<u>DEFENDANT DONNELLEY FINANCIAL SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ........................................................................ 1

II.  RELEVANT BACKGROUND ........................................................................ 2

    A.  The Proxy Services ............................................................................ 2

    B.  The Mediant Intrusion........................................................................ 3

    C.  Procedural History ............................................................................. 3

III.  STANDARD OF REVIEW ........................................................................... 4

IV.  ARGUMENT ................................................................................................. 5

    A.  Donnelley's Purported Misconduct Is Not Alleged to Have Had a
       "Determinative or Coercive Effect" on Mediant's Alleged Misconduct
       Which Purportedly Caused Plaintiffs' Injuries ..................................... 6

    B.  Plaintiffs Lack Standing to Assert Their Claims Against Donnelley
       Because They Have Not Alleged, And in Fact It Is Not the Case, That
       Donnelley Ever Possessed *Their* Data ................................................. 9

V.  CONCLUSION.............................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelphia Recovery Tr. v. Bank of Am., N.A.*,
 No. 05 CIV. 9050 (LMM), 2010 WL 2077214 (S.D.N.Y. May 14, 2010) .............................7

*Amnesty Int'l United States v. Clapper*,
 638 F.3d 118 (2d Cir. 2011).........................................................................................6

*Bennett v. Spear*,
 520 U.S. 154 (1997)..................................................................................................7, 8

*Braun v. Mediant Commc'ns Inc.*,
 No. 19-CV-62563-RS (S.D. Fla. Mar. 14, 2020).......................................................3

*Carter v. HealthPort Technologies, LLC*,
 822 F.3d 47 (2d Cir. 2016)........................................................................................4, 5

*Carver v. City of New York*,
 621 F.3d 221 (2d Cir. 2010)..........................................................................................7

*Chevron Corp. v. Donziger*,
 833 F.3d 74 (2d Cir. 2016)..........................................................................................6

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*,
 790 F.3d 411 (2d Cir. 2015)..........................................................................................4

*Dhinsa v. Krueger*,
 917 F.3d 70 (2d Cir. 2019)........................................................................................4, 5, 6

*Forsee v. Metro. Transportation Auth.*,
 No. 19 CIV. 4406 (ER), 2020 WL 1547468 (S.D.N.Y. Mar. 31, 2020)...................9

*Heldman on Behalf of T.H. v. Sobol*,
 962 F.2d 148 (2d Cir. 1992)..........................................................................................6

*Jacobson v. Fla. Sec'y of State*,
 957 F.3d 1193 (11th Cir. 2020) ...................................................................................9

*Katz v. Donna Karan Co., L.L.C.*,
 872 F.3d 114 (2d Cir. 2017)..........................................................................................4

*Lewis v. Governor of Alabama*,
 944 F.3d 1287 (11th Cir. 2019) ...................................................................................11

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)......................................................................6, 8

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)...................................................................5

*Nat'l Council of La Raza v. Mukasey*,
    283 F. App'x 848 (2d Cir. 2008) .........................................................7, 8

*Simon v. E. Kentucky Welfare Rights Org.*,
    426 U.S. 26 (1976)...............................................................................6

*Sovak v. President & Members of Bd. of Educ. of City of New York*,
    181 F.3d 83 (2d Cir. 1999), *aff'd sub nom. Sovak v. President, Members of Bd. of Educ. of City of New York*,
    181 F.3d 83 (2d Cir. 1999)......................................................................6

*Spiro v. Healthport Techs., LLC*,
    73 F. Supp. 3d 259 (S.D.N.Y. 2014)........................................................5

*Spokeo Inc. v. Robbins*,
    136 S. Ct. 1540 (2016) ..........................................................................4

*Summers v. Earth Island Inst.*,
    555 U.S. 488, 494 (2009), *rev'd on other grounds sub nom. Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .................................................6

*In re Supervalu, Inc.*,
    870 F.3d 763, 771 n.6 (8th Cir. 2017) ....................................................12

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.*,
    No. 14-MD-2586 ADM/TNL, 2018 WL 1189327, (D. Minn. Mar. 7, 2018),
    *aff'd sub nom. In re SuperValu, Inc.*, 925 F.3d 955 (8th Cir. 2019) ...........10

*Toretto v. Mediant Commc'ns, Inc.*,
    No. 19-CV-05208-EMC, 2020 WL 1288478 (N.D. Cal. Mar. 18, 2020)................3

**Rules**

Federal Rules of Civil Procedure 12(b)(1)........................................1, 2, 4, 12

**Other Authorities**

California Department of Justice, *Jackson National Life Insurance Company Notice*,
    https://oag.ca.gov/system/files/CA%20Consumer%20Notice_Mediant_Sampl e_0.pdf# (last visited July 14, 2020) ........................................................3

Defendant Donnelley Financial Solutions, Inc. respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss Plaintiffs' First Amended Class Action Complaint (the "Complaint" or "Compl.").

## I.     PRELIMINARY STATEMENT

Plaintiffs bring this putative class action against Defendants Donnelley Financial Solutions, Inc. ("Donnelley") and Mediant Communications Inc. ("Mediant") seeking recovery for injuries allegedly stemming from a criminal cyber intrusion that affected Mediant's email system and allegedly resulted in the compromise of Plaintiffs' personal information (the "Mediant Intrusion").  Donnelley's network was not impacted by the Mediant Intrusion and no information in Donnelley's possession was compromised.  Nonetheless, Plaintiffs claim that Donnelley is liable for their injuries because *some* of the personal information that purportedly was compromised in the Mediant Intrusion allegedly passed through Donnelley's possession before being transferred to Mediant, and Donnelley allegedly failed to ensure that Mediant had adequate security practices in place to protect that subset of data.

Plaintiffs' specific claims include a variety of tort, contract, and quasi-contract claims, along with claims under multiple consumer protection statutes and a claim for declaratory judgment.  However, Plaintiffs lack constitutional standing to bring *any* claims against Donnelley because their alleged injuries are not fairly traceable to Donnelley's alleged misconduct—namely, sharing sensitive data with Mediant without exercising proper oversight over Mediant's ensuing security practices as to the shared data.  First, where, as here,  the traceability theory is that party A's misconduct resulted in party B's misconduct, and that party B's misconduct in turn caused the plaintiff's alleged injuries, Article III standing exists as to party A only if party A's misconduct had a "determinative or coercive effect" as to party B's alleged misconduct. No such "determinative and coercive effect" has been alleged here as to Donnelley's alleged conduct.

Second, Plaintiffs do not plead—and it is not factually true—that Donnelley shared *their* personal information with Mediant.  As a result, Plaintiffs have not alleged and in any event cannot show that *their* injuries resulted from the Donnelley conduct challenged by Plaintiffs.  For each of these reasons, then, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## II.  RELEVANT BACKGROUND

### A.  The Proxy Services

Defendants Donnelley and Mediant jointly provide certain proxy services to mutual funds and publicly owned companies.  Compl. ¶ 1, 9.  Plaintiffs acknowledge that, in some instances, the personal information that was allegedly compromised in the Mediant Intrusion was provided to Mediant pursuant to a direct contractual relationship between Mediant and the proxy services customer.  *Id.* ¶ 1.

The joint proxy services include printing and distributing materials to shareholders, coordinating shareholder votes, and tabulating voting results.  Compl. ¶ 1.  Donnelley's specific responsibilities with respect to these proxy services generally include creating, EDGAR filing, and printing proxy statements and other materials that companies want distributed to their shareholders.  Decl. of Bridget Hughes ("Hughes Decl."), ¶ 3.  Donnelley then sends these printed materials to Mediant, which prints the customized cards or voting forms and completes the mailings.  *Id.*

Unlike the services Mediant provides, Donnelley's share of the joint proxy services does not require access to any of the shareholders' personal information.  *Id.* at ¶ 4.  Accordingly, contrary to Plaintiffs' allegation that Donnelley sometimes receives sensitive shareholder data from the proxy services clients and then transfers this data to Mediant, Compl. ¶ 1, Donnelley in fact never takes possession of shareholder data in connection with its provision of the joint proxy

2

services.  Hughes Decl. ¶ 4.  The companies and mutual funds provide their investors' personal information to third-party agents who in turn transfer the information directly to Mediant.  *Id.*

### B.   The Mediant Intrusion

On April 1, 2019, Mediant suffered the Mediant Intrusion, in which hackers obtained unauthorized access to four of Mediant's business email accounts and purportedly exfiltrated shareholders' personal information collected by Mediant in connection with the proxy services. Compl. ¶¶ 16, 18.  Mediant commenced an investigation into the Mediant Intrusion.  Compl. ¶ 16. Again, contrary to Plaintiffs' allegations, Donnelley learned which shareholders were potentially involved in the Mediant Intrusion from Mediant based on the findings of Mediant's investigation. Hughes Decl. ¶ 6.  Mediant discovered which shareholders' information was involved in the Mediant Intrusion on May 10, 2019 and began notifying state attorneys general and sending notices to affected shareholders at the end of May 2019.  Compl. ¶¶ 17, 21.[1]  Donnelley did not duplicate Mediant's efforts to provide notice to all necessary parties.  Compl. ¶ 26.

### C.   Procedural History

Plaintiffs are investors whose personal information was allegedly compromised as a result of the Mediant Intrusion.  Compl. ¶¶ 6-8.  They brought class actions against Mediant seeking recovery for injuries allegedly caused by inadequate data security practices and purported failure to timely provide notice of the Mediant Intrusion in the Northern District of California and the Southern District of Florida, but these actions were dismissed for lack of personal jurisdiction. *Toretto v. Mediant Commc'ns, Inc.*, No. 19-CV-05208-EMC, 2020 WL 1288478 (N.D. Cal. Mar. 18, 2020); *Braun v. Mediant Commc'ns Inc.*, No. 19-CV-62563-RS (S.D. Fla. Mar. 14, 2020).

---

[1] One client, Jackson National Life Insurance Company, provided its own notices. Compl. ¶¶ 19 n.9, 20 n.10. Jackson's notices, cited in the Complaint, expressly disclosed that "Mediant received your personal information from Jackson."  State of California Department of Justice, *Jackson National Life Insurance Company Notice*, https://oag.ca.gov/system/files/CA%20Consumer%20Notice_Mediant_Sample_0.pdf# (last visited July, 14, 2020), *cited in* Compl. ¶¶ 19 n.9, 20 n.10.

3

Now, notwithstanding that Mediant alone was subject to the Mediant Intrusion, Plaintiffs have refiled their class actions in this Court against not only Mediant, but also Donnelley, contending that somehow Donnelley was responsible for Mediant's alleged security vulnerabilities and purported delay in notification. Compl. ¶ 4. Plaintiffs base this assertion on (1) the allegation that Donnelley collected and then shared *some* investors' personal information with Mediant; and (2) a contention that Donnelley failed to exercise adequate oversight to ensure that such information was securely protected by Mediant. *Id.* at ¶¶ 4, 76, 81.

Donnelley now moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) for lack of Article III standing.

## III.   <u>STANDARD OF REVIEW</u>

Standing under Article III of the Constitution "consists of three elements: the individual initiating the suit 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019) (quoting *Spokeo Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016)). "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 416–17 (2d Cir. 2015). The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: (i) facial motions and (ii) fact-based motions. *See Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). "When the Rule 12(b)(1) motion is facial," the task of the court "is to determine whether the [pleadings] allege[] facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter*, 822 F.3d at 56 (internal quotations omitted). "Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond

the [pleadings]."  *Id.* at 57.  "On such a motion, a court may consider evidence outside the pleadings, such as affidavits and exhibits."  *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 267 (S.D.N.Y. 2014) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

## IV.   <u>ARGUMENT</u>

Plaintiffs allege they were injured by the Mediant Intrusion that Mediant alone suffered, which they contend involved shareholder data stored on Mediant's network, purportedly due to Mediant's deficient data security practices.  Despite not having alleged that Donnelley's system was affected by the Mediant Intrusion, or that Donnelley in any way failed to protect personal information on its own network, Plaintiffs nonetheless claim that Donnelley caused and is liable for their alleged injuries.  Specifically, all of Plaintiffs' claims against Donnelley hinge on the theory that Donnelley shared with Mediant some of the sensitive shareholder information that was allegedly compromised in the Mediant Intrusion; that Donnelley did so without exercising adequate oversight of Mediant's ensuing efforts to protect that data against a third-party criminal attack; and that such lack of oversight led to Mediant's data security deficiencies, which in turn led to the Mediant Intrusion, which purportedly caused Plaintiffs' injuries.  Compl. ¶¶ 4, 76, 81, 87-88, 122-123, 128, 137, 154, 168, 172, 186-187, 191, 195, 203, 205, 223.

For two independent reasons, with this theory Plaintiffs fail to allege—and, in any event, relying on this theory, Plaintiffs cannot show—that their alleged injuries are "fairly traceable to the challenged conduct of [Donnelley]," as required to establish Article III standing with respect to Donnelley.  *Dhinsa*, 917 F.3d at 77.  First, the Complaint fails to allege, as it must, that Donnelley's challenged conduct had a "determinative or coercive effect" on Mediant's misconduct, which supposedly caused the Mediant Intrusion and, in turn, Plaintiffs' alleged injuries.  Second, because Plaintiffs do not allege, and it is not the case, that Donnelley shared *their* information with Mediant, *their* injuries are not "fairly traceable" for Article III purposes to

Donnelley's challenged conduct.

### A. Donnelley's Purported Misconduct Is Not Alleged to Have Had a "Determinative or Coercive Effect" on Mediant's Alleged Misconduct Which Purportedly Caused Plaintiffs' Injuries

As noted above, to establish Article III standing a plaintiff must show the alleged injury is "fairly traceable to the challenged conduct of the defendant." *Dhinsa*, 917 F.3d at 77. "The traceability requirement for Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury." *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) (internal quotations omitted). "The causation requirement ensures that the injury alleged is attributable to the defendant." *Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992). Thus, when a plaintiff "fails to demonstrate how his alleged injuries are attributable to the defendants," the plaintiff "fail[s] to establish standing." *Sovak v. President & Members of Bd. of Educ. of City of New York*, No. 97 CIV. 7407 (HB), 1998 WL 470507, at *3 (S.D.N.Y. Aug. 11, 1998), *aff'd sub nom. Sovak v. President, Members of Bd. of Educ. of City of New York*, 181 F.3d 83 (2d Cir. 1999).

While "[a] plaintiff does not lack standing merely because her injury is an indirect product of the defendant's conduct," it is "'ordinarily substantially more difficult' to establish standing based on indirect injuries than on direct injuries." *Amnesty Int'l United States v. Clapper*, 638 F.3d 118, 141 (2d Cir. 2011) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009)), *rev'd on other grounds sub nom. Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (noting that "much more is needed" to establish causation when "a plaintiff's asserted injury arises from . . . allegedly unlawful regulation (or lack of regulation) of someone else"). That is because, where "[s]peculative inferences are necessary to connect [a plaintiff's] injury to the challenged actions of [the defendant,]" the traceability requirement has not been met. *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 45 (1976).

6

Thus, where the alleged injury was not directly caused by the defendant, but rather by a third party, a plaintiff must "plead facts indicating that a defendant's actions had a 'determinative or coercive effect upon the action of [the third party]' who directly caused the alleged injury." *Nat'l Council of La Raza v. Mukasey*, 283 F. App'x 848, 851 (2d Cir. 2008) (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)); *see also Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010) ("As a rule, causation is shown if the defendants' actions had a 'determinative or coercive effect' on the action that produced the injury.").

Donnelley's challenged conduct concededly did not cause Plaintiffs' injuries directly, but instead, as alleged, merely enabled Mediant's purported misconduct in failing to protect against the Mediant Intrusion, which in turn allegedly injured Plaintiffs. Article III's traceability requirement, therefore, can be satisfied as to Donnelley only upon allegations establishing that Donnelley's challenged conduct had a "determinative or coercive effect" on Mediant's actions that purportedly produced Plaintiffs' injuries. ***No such allegations can be found anywhere in the Complaint.***

The cases applying the "determinative or coercive" standard confirm that Plaintiffs' allegations fail to satisfy it here. In *National Council of La Raza*, the Second Circuit found that plaintiffs injured by state and local authorities' unlawful arrest of aliens did not have standing to sue defendant federal agencies because the federal agencies did not have a "determinative or coercive effect" on the challenged conduct of the local authorities. 283 F. App'x at 851. This was true even though the federal agencies had specifically requested the arrests, because the state and local authorities sometimes chose not to comply with the federal requests. *Id.* *National Council of La Raza* thus teaches that a determinative or coercive effect "requires more than a showing that the injuries would not have happened 'but for'" the defendant's alleged wrongful instigation of or

failure to prevent the third-party conduct that directly caused the plaintiff's injury. *Adelphia Recovery Tr. v. Bank of Am., N.A.*, No. 05 CIV. 9050 (LMM), 2010 WL 2077214, at *7 (S.D.N.Y. May 14, 2010). Were the rule otherwise, and an allegation that a defendant failed to prevent a plaintiff's injury at the hands of a third party were enough to establish traceability for Article III standing purposes, then plaintiffs would have standing to sue anyone and everyone in the world who conceivably could have intervened to prevent their injuries. But that is not the law. *See Lujan*, 504 U.S. at 560 (noting that "much more is needed" to establish causation when "a plaintiff's asserted injury arises from . . . allegedly unlawful regulation (or lack of regulation) of someone else"). Rather, the defendant's influence must have been a sufficient cause—not just a but-for or necessary cause—of the third party's injury-causing actions for the plaintiff's injuries to be traceable to that defendant, or it would not be "determinative" or "coercive." *Compare Nat'l Council of La Raza*, 283 F. App'x at 851 ("Plaintiffs' allegations that defendants 'encouraged, caused, and induced state and local police to arrest immigrants . . . do not adequately allege that the injury was fairly traceable to defendants."), *with Bennett*, 520 U.S. at 170 (finding administrative agency's advisory opinion had "determinative or coercive effect" on advisee's action where it played a "central role" in the advisee's decision to follow advice: advisee was required to articulate any reasons for deviation and would have "run[ ] a substantial risk" by ignoring the advice, which "alter[ed] the legal regime to which the [advisee was] subject").

Plaintiffs do not allege facts that would establish Donnelley had influence or control over Mediant enabling Donnelley to "determine" or "coerce" Mediant's data security practices. For example, the Complaint makes no allegation that Mediant and Donnelley are affiliated companies or that they share computer networks or email systems. Accordingly, even if Donnelley's alleged lack of oversight were a but-for cause of Mediant's supposedly deficient security practices, that

alleged lack of oversight could not have been in and of itself *sufficient* to produce those security practices, as Mediant—not Donnelley—ultimately determined those practices and Donnelley could not itself put different practices in place. *Compare Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193, 1208-09 (11th Cir. 2020) (finding injuries caused by Supervisors of Elections not traceable to Florida Secretary of State because "Supervisors are independent officials not subject to the Secretary's control" and noting that "Secretary must resort to judicial process if the Supervisors fail to perform their duties" which "underscores her lack of authority over them"), *with Forsee v. Metro. Transportation Auth.*, No. 19 CIV. 4406 (ER), 2020 WL 1547468, at *5-7 (S.D.N.Y. Mar. 31, 2020) (finding city had control over MTA's and NYCTA's operation of the subway system where city granted specific authority to operate subway system to MTA and NYCTA via lease agreement, continued to own subway system, retained the ability to take back powers granted to NYCTA, and maintained budgetary authority and veto power). That being the case, for this reason alone Plaintiffs lack standing to assert their claims against Donnelley.[2]

**B.    Plaintiffs Lack Standing to Assert Their Claims Against Donnelley Because They Have Not Alleged, And in Fact It Is Not the Case, That Donnelley Ever Possessed *Their* Data**

Plaintiffs allege that Donnelley collected most of the sensitive shareholder data allegedly at issue in the Mediant Intrusion and shared that data with Mediant. Compl. ¶¶ 1, 26. In doing so, Plaintiffs also acknowledge that companies sometimes contracted directly with Mediant for its proxy services, *id.* ¶ 1, and they concede that not all the shareholder data compromised in the Mediant Intrusion was transferred to Mediant by Donnelley, *id.* ¶¶ 1, 17, 26.

The Complaint never alleges, however, that *Plaintiffs'* information was among the subset

_____

[2] Because the Complaint makes no attempt to plead that Donnelley's challenged conduct had a "determinative or coercive effect" on Mediant's challenged conduct, this aspect of Donnelley's motion presents only a facial challenge to the Complaint's allegations of Article III standing as to Donnelley.

9

of data involved in the Mediant Intrusion that was purportedly provided to Mediant by Donnelley, rather than by some other party. Moreover, any such allegation would have been false,[3] for as the Declaration of Bridget Hughes attached hereto shows, Donnelley never collects, possesses, stores, or transfers shareholder data in connection with its provision of proxy services. Hughes Decl. ¶ 4.

Thus, Plaintiffs' alleged injuries stemming from the Mediant Intrusion are not traceable to Donnelley's challenged conduct—namely, Donnelley's alleged transfer of personal information to Mediant without thereafter exercising adequate oversight of Mediant's data security practices as to that information—because Plaintiffs have not alleged, and it is not the case, that such conduct ever even happened *as to them*. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413-14 (2013) (requiring plaintiffs to show their own communications would likely be intercepted by government surveillance conducted pursuant to the statutory provisions at issue to establish traceability requirement for Article III standing); *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, No. 14-MD-2586 ADM/TNL, 2018 WL 1189327, at *17–18 (D. Minn. Mar. 7, 2018) (finding that plaintiff allegedly injured by cyberattack affecting data collected by Albertsons and SuperValu stores did not have standing to assert claim against Albertsons because plaintiff's data was collected by SuperValu, not Albertsons), *aff'd sub nom. In re SuperValu, Inc.*, 925 F.3d 955 (8th Cir. 2019). This is especially so given the Complaint makes clear that Donnelley's conduct is only challengeable, and hence is only being challenged, if and to the extent that Donnelley shared Plaintiffs' personal information with Mediant. *See* Compl. ¶ 122 (asserting negligence claim based on Donnelley having "collected and stored the Personal Information of Plaintiffs"); *id.* at ¶ 123 (alleging duty to protect data within Donnelley's "control"); *id.* at ¶ 128 (alleging Donnelley breached its duty to Plaintiffs by "failing to ensure . . . Mediant had sufficient data security systems,

---

[3] If the Court accepts Donnelley's facial 12(b)(1) challenge, it need not reach Donnelley's fact-based challenge to the contention that Donnelley shared personal information with Mediant.

protocols and practices *before sharing sensitive information with it*") (emphasis added); *id.* at ¶ 137, 154, 168, 172, 186-187, 191, 195, 203, 205, 223 (similar).

In the pre-motion conference proceedings, Plaintiffs indicated they might try to switch theories and assert that, even if Donnelley never in fact shared Plaintiffs' data with Mediant, Donnelley still somehow had, and violated, a duty to oversee Mediant's data security practices as to Plaintiffs' data.  Decl. of David T. Cohen, Exhibit A, Pre-Mot. Conference Tr. 17:24-18:16. However, no amended complaint seeking to implement such a change in theory has been proffered by Plaintiffs.  There is good reason for Plaintiffs' inaction, as there is no basis in the law for asserting that party A has a legal duty to oversee party B's data security practices as to an individual's personal information where party A has no relationship with the individual in question and never possessed the information in question.  That being the case, a pivot of this sort would do nothing to cure the Complaint's fatally deficient Article III standing allegations, because for Plaintiffs' injuries to be traceable to Donnelley's challenged conduct, such conduct must be legally challengeable, which would not be the case under the new theory Plaintiffs suggested they might advance as to Donnelley.  *See Lewis v. Governor of Alabama*, 944 F.3d 1287, 1298 (11th Cir. 2019) ("[P]laintiffs' *ex ante* theory of Article III traceability fails on two accounts—both because the Alabama Attorney General has no legal duty to inform anyone of anything under these circumstances and because the particular conduct that plaintiffs contend violated this nonexistent duty simply didn't occur as they have described it.").

In any event, because as *currently* pleaded Plaintiffs' claims against Donnelley depend entirely on the theory that Donnelley shared with Mediant some of the sensitive shareholder information that was allegedly compromised in the Mediant Intrusion, and because the Complaint nowhere alleges and it is not in fact the case that such sharing occurred as to *Plaintiffs'* data,

Plaintiffs cannot trace *their* injuries to the Donnelley misconduct they allege.  As a result, Plaintiffs lack Article III standing as to their claims against Donnelley for this independent reason.

## V.   <u>CONCLUSION</u>

For the forgoing reasons,[4] the Court should dismiss the Complaint's claims against Donnelley pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing.

---

[4] Mediant has moved to dismiss the contract claims against Mediant for lack of Article III standing because Plaintiffs have demonstrated no relationship with Mediant that could create a contract.  The same rationale compels dismissal of Plaintiffs' contract claims against Donnelley, given that Plaintiffs have also pleaded no relationship with Donnelley, so Donnelley incorporates Mediant's argument herein by reference.  *See, e.g., In re Supervalu, Inc.*, 870 F.3d 763, 771 n.6 (8th Cir. 2017) (no Article III standing for contract claims brought under Illinois law—the same state law that applies to Illinois-based Donnelley—because the complaint did not plausibly plead the existence of a contract).

Dated: July 17, 2020

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By:         /s/ Douglas H. Meal

Douglas H. Meal

Douglas H. Meal
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, Massachusetts 02116
Telephone:  (617) 880-1800
Email:  **dmeal@orrick.com**

Michelle Visser (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94102
Telephone:  (415) 773-5700
Email:  **mvisser@orrick.com**

David T. Cohen
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
Telephone:  (212) 506-5000
Email:  **david.cohen@orrick.com**

*Attorneys for Defendant*
Donnelley Financial Solutions, Inc.

13