UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILLIP TORRETTO, DANIEL C. KING, and
SHERI BRAUN, individually and on behalf of
all others similarly situated,

        Plaintiffs,

        v.

DONNELLEY FINANCIAL SOLUTIONS, INC.
and MEDIANT COMMUNICATIONS, INC.,

        Defendants.

Case No. 1:20-cv-02667-GHW

**<u>DEFENDANT DONNELLEY FINANCIAL SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ............................................................................................. 1
II. RELEVANT BACKGROUND ............................................................................................... 2
    A. The Proxy Services ..................................................................................................... 2
    B. The Mediant Intrusion ................................................................................................. 3
    C. Procedural History ...................................................................................................... 4
III. STANDARD OF REVIEW ..................................................................................................... 5
IV. ARGUMENT ............................................................................................................................ 6
    A. Plaintiffs Fail to Allege the Facts Showing the Existence of a Legal Partnership Between Donnelley and Mediant .......................................................... 7
    B. Donnelley's Purported Misconduct Is Not Alleged to Have Had a "Determinative or Coercive Effect" on the Alleged Mediant Misconduct that Purportedly Caused Plaintiffs' Injuries ............................................................ 9
V. CONCLUSION ...................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adelphia Recovery Tr. v. Bank of Am., N.A.*,
  No. 05 CIV. 9050 (LMM), 2010 WL 2077214 (S.D.N.Y. May 14, 2010) ............................11

*Amnesty Int'l United States v. Clapper*,
  638 F.3d 118 (2d Cir. 2011)............................................................................................10

*Ardis Health, LLC v. Nankivell*,
  No. 11 CIV. 5013 NRB, 2012 WL 5290326 (S.D.N.Y. Oct. 23, 2012) ..............................8, 9

*Bennett v. Spear*,
  520 U.S. 154 (1997).................................................................................................10, 12

*Braun v. Mediant Commc'ns Inc.*,
  No. 19-CV-62563-RS (S.D. Fla. Mar. 14, 2020).....................................................................4

*Carter v. HealthPort Technologies, LLC*,
  822 F.3d 47 (2d Cir. 2016)................................................................................................6

*Carver v. City of New York*,
  621 F.3d 221 (2d Cir. 2010)............................................................................................10

*Chevron Corp. v. Donziger*,
  833 F.3d 74 (2d Cir. 2016)................................................................................................9

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*,
  790 F.3d 411 (2d Cir. 2015)..............................................................................................6

*Dhinsa v. Krueger*,
  917 F.3d 70 (2d Cir. 2019)......................................................................................5, 7, 9

*Forsee v. Metro. Transportation Auth.*,
  No. 19 CIV. 4406 (ER), 2020 WL 1547468 (S.D.N.Y. Mar. 31, 2020)..................................13

*Growblox Scis., Inc. v. GCM Admin. Servs., LLC*,
  No. 14-CV-2280 ER, 2015 WL 3504208 (S.D.N.Y. June 2, 2015) .....................................8, 9

*Heldman on Behalf of T.H. v. Sobol*,
  962 F.2d 148 (2d Cir. 1992).............................................................................................9

*Jacobson v. Fla. Sec'y of State*,
  957 F.3d 1193 (11th Cir. 2020) ........................................................................................12

*Katz v. Donna Karan Co., L.L.C.*,
  872 F.3d 114 (2d Cir. 2017) ........................................................................................ 6

*Kosower v. Gutowitz*,
  No. 00 CIV. 9011 (JGK), 2001 WL 1488440 (S.D.N.Y. Nov. 21, 2001) .................. 8

*Landers-Scelfo v. Corp. Office Sys., Inc.*,
  356 Ill. App. 3d 1060 (2005) ................................................................................. 8, 9

*Lewis v. Governor of Alabama*,
  944 F.3d 1287 (11th Cir. 2019) ............................................................................... 13

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................... 10, 11

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ....................................................................................... 6

*Nat'l Council of La Raza v. Mukasey*,
  283 F. App'x 848 (2d Cir. 2008) ..................................................................... 10, 11, 12

*Simon v. E. Kentucky Welfare Rights Org.*,
  426 U.S. 26 (1976) ................................................................................................... 10

*Sovak v. President & Members of Bd. of Educ. of City of New York*,
  No. 97 CIV. 7407 (HB), 1998 WL 470507 (S.D.N.Y. Aug. 11, 1998) .................... 9

*Spiro v. Healthport Techs., LLC*,
  73 F. Supp. 3d 259 (S.D.N.Y. 2014) ......................................................................... 6

*Spokeo Inc. v. Robbins*,
  136 S. Ct. 1540 (2016) .............................................................................................. 5

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ................................................................................................ 10

*In re Syngenta Mass Tort Actions*,
  No. 3:16-CV-00255-DRH, 2017 WL 54345 (S.D. Ill. Jan. 4, 2017) ........................ 9

*Toretto v. Mediant Commc'ns, Inc.*,
  No. 19-CV-05208-EMC, 2020 WL 1288478 (N.D. Cal. Mar. 18, 2020) .................. 4

*XL Disposal Corp. v. John Sexton Contractors Co.*,
  168 Ill. 2d 355, 659 N.E.2d 1312 (1995) ................................................................ 14

**Other Authorities**

California Department of Justice, *Jackson National Life Insurance Company Notice*, https://oag.ca.gov/system/files/CA%20Consumer%20Notice_Mediant_Sample_0.pdf# ..................................................................................................................4

Fed. R. Civ. P. 12(b)(1)............................................................................................................ *passim*

Defendant Donnelley Financial Solutions, Inc. respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss Plaintiffs' Second Amended Class Action Complaint (the "Second Amended Complaint" or "SAC").

## I. PRELIMINARY STATEMENT

Plaintiffs bring this putative class action against Defendants Donnelley Financial Solutions, Inc. ("Donnelley") and Mediant Communications Inc. ("Mediant") seeking recovery for injuries allegedly stemming from a criminal cyber intrusion that affected Mediant's email system and allegedly resulted in the compromise of Plaintiffs' personal information (the "Mediant Intrusion"). Donnelley's network was not impacted by the Mediant Intrusion, and no information in Donnelley's possession was compromised.

Nonetheless, in their First Amended Class Action Complaint (the "First Amended Complaint" or "FAC"), Plaintiffs claimed that Donnelley was liable for their injuries because some of the personal information purportedly compromised in the Mediant Intrusion allegedly passed through Donnelley's possession before being transferred to Mediant, and Donnelley allegedly failed to ensure that Mediant had adequate security practices in place to protect that subset of data. FAC ¶¶ 1, 4. However, the factual predicate for this argument—that Donnelley transferred personal information to Mediant in connection with the provision of proxy services—was incorrect. Donnelley disproved this assertion by submitting a declaration in connection with its motion to dismiss for lack of Article III standing, demonstrating that Donnelley never transferred *any* investor personal information to Mediant, let alone Plaintiffs' information, in connection with proxy services. *See* ECF No. 51, Declaration of Bridget Hughes in Support of Donnelley Financial Solutions, Inc.'s Motion to Dismiss First Amended Complaint ("Hughes Decl."), ¶ 4.

Plaintiffs have now amended their complaint to delete the erroneous factual allegation, but in a last-ditch effort to keep Donnelley in the case, they now claim that Donnelley is responsible

1

for their injuries by virtue of partnering with Mediant allegedly without exercising proper oversight as to Mediant's data security practices. SAC ¶¶ 1, 4. Alternatively, Plaintiffs assert that Mediant's alleged misconduct is vicariously attributable to Donnelley as Mediant's "partner." *See* SAC ¶¶ 85, 122, 130. Like their first theory, however, this back-up "partnership" theory fails to establish that Plaintiffs' alleged injuries are fairly traceable to Donnelley. Specifically, while the factual predicate for Plaintiffs' new theory is that Donnelley and Mediant purportedly formed a legal partnership, thereby giving Donnelley the right and ability to control Mediant's conduct of partnership activities and making Donnelley vicariously liable for any wrongful acts of Mediant as a member of the partnership, the Second Amended Complaint alleges no facts supporting the existence of the legal partnership it claims was formed between Mediant and Donnelley. Having neglected to plead the elements of a legal partnership, Plaintiffs' only remaining traceability theory is that Donnelley's alleged failure to oversee Mediant's data security practices resulted in Mediant's purportedly deficient data security, which in turn caused the Mediant Intrusion, leading to Plaintiffs' alleged injuries. But under this theory Article III standing exists as to Donnelley only if Donnelley's alleged misconduct had a "determinative or coercive effect" on Mediant's alleged misconduct. No such "determinative and coercive effect" has been alleged here regarding Donnelley vis-à-vis Mediant. As a result, the Second Amended Complaint, just like the First Amended Complaint, fails to show that Donnelley's challenged conduct caused their injuries and, accordingly, should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## II.     RELEVANT BACKGROUND

### A.     The Proxy Services

Defendants Donnelley and Mediant are separate companies that jointly provide certain proxy services to mutual funds and publicly owned companies. SAC ¶¶ 1, 9-10. The joint proxy

2

services include printing and distributing materials to shareholders, coordinating shareholder votes, and tabulating voting results. *Id.* To effectuate the distribution of materials and coordinate shareholder votes, Mediant collects sensitive shareholder data from the proxy services customers. *Id.* ¶¶ 1, 85. Notably, the Second Amended Complaint does not allege that Donnelley itself ever collects, possesses, stores, or transfers investors' personal information in connection with its provision of the proxy services. *See id.* ¶ 85, 122. Instead, it alleges that Donnelley only collects nonpublic personal information "through its partner Mediant" and "through their Partnership." *See id.* ¶ 85, 122. However, despite referring to the business relationship between Donnelley and Mediant throughout as the "Partnership," the Second Amended Complaint contains no allegations showing that Donnelly and Mediant (i) shared profits and losses generated by their relationship; (ii) jointly controlled one another's actions pursuant to their relationship; (iii) contributed resources for the benefit of the relationship; or (iv) intended for their relationship to be a legal partnership.

### B. The Mediant Intrusion

On April 1, 2019, Mediant suffered the Mediant Intrusion, in which hackers obtained unauthorized access to four of Mediant's business email accounts and purportedly exfiltrated shareholders' personal information collected by Mediant in connection with the proxy services. SAC ¶¶ 16, 18. Mediant immediately commenced an investigation into the Mediant Intrusion. SAC ¶ 16. Mediant determined which shareholders' information was involved in the Mediant Intrusion on May 10, 2019 and began notifying state attorneys general and sending notices to affected shareholders at the end of May 2019. SAC ¶¶ 17, 21.[1] Donnelley did not duplicate

---

[1] One client, Jackson National Life Insurance Company, provided its own notices. SAC ¶¶ 19 n.9, 20 n.10. Jackson's notices, cited in the Complaint, expressly disclosed that "Mediant received your personal information from Jackson." State of California Department of Justice, *Jackson National Life Insurance Company Notice*,

3

Mediant's efforts to provide notice to all necessary parties.  SAC ¶ 26.

### C.     Procedural History

Plaintiffs are investors whose personal information was allegedly compromised as a result of the Mediant Intrusion.  SAC ¶¶ 6-8.  They brought class actions against Mediant seeking recovery for injuries allegedly caused by inadequate data security practices and purported failure to timely provide notice of the Mediant Intrusion in the Northern District of California and the Southern District of Florida, but these actions were dismissed for lack of personal jurisdiction. *Toretto v. Mediant Commc'ns, Inc.*, No. 19-CV-05208-EMC, 2020 WL 1288478 (N.D. Cal. Mar. 18, 2020); *Braun v. Mediant Commc'ns Inc.*, No. 19-CV-62563-RS (S.D. Fla. Mar. 14, 2020).  Now, notwithstanding that Mediant alone was subject to the Mediant Intrusion, Plaintiffs have refiled their class actions in this Court against not only Mediant, but also Donnelley, contending that somehow Donnelley was responsible for Mediant's alleged security vulnerabilities and purported delay in notification.  SAC ¶ 4.

In their First Amended Complaint, Plaintiffs based this assertion on (1) the allegation that Donnelley collected and then shared *some* investors' personal information with Mediant; and (2) a contention that Donnelley failed to exercise adequate oversight to ensure that such information was securely protected by Mediant.  FAC ¶¶ 4, 76, 81.  Donnelley moved to dismiss Plaintiffs' First Amended Complaint under Fed. R. Civ. P. 12(b)(1) for lack of Article III standing on the grounds that (1) Plaintiffs failed to allege—and in fact it is not the case—that Donnelley ever possessed *Plaintiffs'* personal information; and (2) as a result Plaintiffs were required, but had failed, to allege Donnelley had a "determinative or coercive effect" on Mediant sufficient to render Donnelley causally responsible for Mediant's purportedly deficient data security practices.  ECF

---

https://oag.ca.gov/system/files/CA%20Consumer%20Notice_Mediant_Sample_0.pdf# (last visited July, 14, 2020), *cited in* SAC ¶¶ 19 n.9, 20 n.10.

4

No. 50.

In response to Donnelley's motion, Plaintiffs filed their Second Amended Complaint. The Second Amended Complaint drops the fallacious allegation as to Donnelly's prior possession of certain of the information compromised in the Mediant Intrusion. Instead, Plaintiffs now claim that Donnelley formed a legal partnership with Mediant to provide the proxy services, giving Donnelley the right and ability to control Mediant's data security, and making Donnelley vicariously liable for Mediant's actions. SAC ¶¶ 1, 4, 85, 122, 130.[2] But Plaintiffs' Second Amended Complaint fails to cure the Article III standing deficiencies set forth in Donnelley's previous motion to dismiss. Even after their latest amendment, Plaintiffs still must show, but still have not shown, that Donnelley had a "determinative or coercive effect" on Mediant's allegedly inadequate data security practices, or that Mediant's conduct—such as Mediant's data collection, storage, or security practices—is otherwise attributable to Donnelley.

## III.  STANDARD OF REVIEW

Standing under Article III of the Constitution "consists of three elements: the individual initiating the suit 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019) (quoting *Spokeo Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016)). "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if . . . the plaintiff lacks constitutional standing

---

[2] Plaintiffs' specific claims include a variety of tort, contract, and quasi-contract claims, along with claims under multiple consumer protection statutes and a claim for declaratory judgment. The First Amended Complaint included counts asserting that Donnelley and Mediant breached "contracts" with Plaintiffs and "deceived" Plaintiffs about data security, even though Plaintiffs undisputedly never had any communications or relationship with Donnelley or Mediant prior to the Mediant Intrusion. *See* FAC ¶¶ 1, 20, 30, 37, 43; SAC ¶¶ 1, 20, 30, 37, 43. Plaintiffs have now dropped these claims, but continue to assert, without alleging any factual support, that they are "third-party beneficiaries" of contracts that Mediant and Donnelley entered into with public companies and mutual funds. SAC ¶¶ 144-141.

5

to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 416–17 (2d Cir. 2015). The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: (i) facial motions and (ii) fact-based motions. *See Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). "When the Rule 12(b)(1) motion is facial," the task of the court "is to determine whether the [pleadings] allege[] facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter*, 822 F.3d at 56 (internal quotations omitted). "Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [pleadings]." *Id.* at 57. "On such a motion, a court may consider evidence outside the pleadings, such as affidavits and exhibits." *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 267 (S.D.N.Y. 2014) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). Because the Second Amended Complaint does not plausibly allege that Donnelley's challenged conduct had the requisite "determinative or coercive effect" on Mediant's challenged conduct, nor that Mediant's conduct is otherwise attributable to Donnelley, Donnelley presents only a facial challenge to the Second Amended Complaint's allegations of Article III standing as to Donnelley.

**IV.  ARGUMENT**

Plaintiffs allege they were injured by the Mediant Intrusion that Mediant alone suffered, which they contend involved shareholder data stored on Mediant's network, purportedly due to Mediant's deficient data security practices. Despite not having alleged that Donnelley's system was affected by the Mediant Intrusion, or that Donnelley in any way failed to protect personal information on its own network, Plaintiffs nonetheless claim that Donnelley caused and is liable for their alleged injuries. Specifically, all of Plaintiffs' claims against Donnelley hinge on the theory that Donnelley is liable by virtue of having *partnered* with Mediant to provide the proxy services in question. In most cases, Plaintiffs allege that, as Mediant's partner, Donnelley had the

6

right and ability, but failed, to ensure that Mediant implemented adequate data security measures to protect against a third-party criminal attack on data collected and stored by Mediant in connection with those proxy services; according to this theory, such lack of oversight led to Mediant's data security deficiencies, which in turn led to the Mediant Intrusion, which purportedly caused Plaintiffs' injuries. SAC ¶¶ 4, 23, 26, 76, 81, 88, 124, 138, 146, 157,163, 172, 183, 185, 191. Alternatively, based on the same "partnership" theory Plaintiffs claim that Mediant's alleged misconduct is vicariously attributable to Donnelley as Mediant's "partner." *Id.* at ¶¶ 85, 122, 130.

With this theory Plaintiffs fail to allege that their purported injuries are "fairly traceable to the challenged conduct of [Donnelley]," as required to establish Article III standing with respect to Donnelley. *Dhinsa*, 917 F.3d at 77. First, Plaintiffs do not plead the facts showing the existence of the legal partnership between Donnelley and Mediant that is now the linchpin of all their claims. Second, with that linchpin eliminated from their case, Plaintiffs must allege, but fail to allege, that Donnelley's challenged conduct had a "determinative or coercive effect" on the Mediant misconduct that supposedly caused the Mediant Intrusion and, in turn, Plaintiffs' alleged injuries. Thus, Plaintiffs' injuries are not "fairly traceable" for Article III purposes to Donnelley's challenged conduct.

### A. Plaintiffs Fail to Allege the Facts Showing the Existence of a Legal Partnership Between Donnelley and Mediant

Donnelley's previous motion to dismiss for lack of Article III standing established that Donnelley never possessed the sensitive shareholder data at issue in the Mediant Intrusion and that, as a result, the First Amended Complaint had to allege, but failed to allege, that Donnelley had a "determinative or coercive effect" on Mediant's purportedly deficient data security practices sufficient to render Donnelley causally responsible for those practices. ECF No. 50. Confronted with these points, Plaintiffs amended their pleading to drop the factually inaccurate allegation as

7

to Donnelly's prior possession of certain of the compromised data and to claim, instead, that Donnelley and Mediant formed a legal partnership to provide the proxy services, thereby giving Donnelley the right and ability to control Mediant and the business of the supposed partnership, as well as making the actions of Mediant and the supposed partnership vicariously attributable to Donnelley.  SAC ¶¶ 1, 4, 23, 26, 76, 81, 85, 88, 122, 124, 130, 138, 146, 157,163, 172, 183, 185, 191.

However, Plaintiffs have not alleged facts supporting the existence of a single element of a legal partnership between Donnelley and Mediant.  Those elements are, at an absolute minimum, "(i) the sharing of profits and losses; (ii) joint control and management of the business; (iii) the contribution by each party of property, financial resources, effort, skill, or knowledge; and (iv) the intent to form a partnership."  *Ardis Health, LLC v. Nankivell*, No. 11 CIV. 5013 NRB, 2012 WL 5290326, at *5 (S.D.N.Y. Oct. 23, 2012) ("To plead the existence of a partnership in fact, a party must allege" these elements); *Growblox Scis., Inc. v. GCM Admin. Servs., LLC*, No. 14-CV-2280 ER, 2015 WL 3504208, at *6 (S.D.N.Y. June 2, 2015) (same); *Kosower v. Gutowitz*, No. 00 CIV. 9011 (JGK), 2001 WL 1488440, at *4 (S.D.N.Y. Nov. 21, 2001) (similar); *Landers-Scelfo v. Corp. Office Sys., Inc.*, 356 Ill. App. 3d 1060, 1066 (2005) ("We therefore look for some sign of a venture for common benefit between COS and Synergy, and in particular for some indication of a sharing of profits.").  Instead, Plaintiffs merely introduce a defined term—the "Partnership"—to label Donnelley and Mediant's business relationship, and use that label to assert the legal conclusions that, being Mediant's "partner," Donnelley has the ability and right to control Mediant's data security practices and, in addition, is vicariously liable for any Mediant misconduct as Mediant's "partner."  SAC ¶¶ 1, 4, 85, 122, 130.  But "[a] bald assertion that a partnership or joint venture exists is not sufficient to plead the existence of such a relationship."  *Landers-Scelfo*, 356 Ill. App.

8

3d at 1066 (applying the law of Illinois, where Donnelley is based). Nor is it sufficient that Donnelley and Mediant colloquially referred to themselves as "partners." *See* SAC ¶¶ 1, 15; *see also In re Syngenta Mass Tort Actions*, No. 3:16-CV-00255-DRH, 2017 WL 54345, at *6 (S.D. Ill. Jan. 4, 2017) (rejecting argument that defendants' use of "partner" was sufficient to state a plausible claim that legal partnership was formed and finding that "plaintiff must set forth factual allegations or assertions to support the existence of a legal partnership"). Absent specific allegations supporting the existence of the elements of a legal partnership between Donnelley and Mediant, Plaintiffs cannot rely on their new "partnership" theory to overcome the Article III standing deficiencies raised in Donnelley's previous motion to dismiss. *See Growblox Scis., Inc.*, 2015 WL 3504208, at *6–8 (finding complaint did not allege sufficient indicia of a partnership to establish that a legal partnership or joint venture was formed); *Ardis Health, LLC v. Nankivell*, No. 11 CIV. 5013 NRB, 2012 WL 5290326, at *5–6 (S.D.N.Y. Oct. 23, 2012) (same); *In re Syngenta Mass Tort Actions*, 2017 WL 54345, at *6 (same); *Landers-Scelfo*, 356 Ill. App. 3d at 1066 (same).

### B. Donnelley's Purported Misconduct Is Not Alleged to Have Had a "Determinative or Coercive Effect" on the Alleged Mediant Misconduct that Purportedly Caused Plaintiffs' Injuries

As noted above, to establish Article III standing a plaintiff must show the alleged injury is "fairly traceable to the challenged conduct of the defendant." *Dhinsa*, 917 F.3d at 77. "The traceability requirement for Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury." *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) (internal quotations omitted). "The causation requirement ensures that the injury alleged is attributable to the defendant." *Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992). Thus, when a plaintiff "fails to demonstrate how his alleged injuries are attributable to the defendants," the plaintiff "fail[s] to establish standing." *Sovak v. President & Members of Bd. of Educ. of City of New York*, No. 97 CIV. 7407 (HB), 1998 WL 470507, at *3

(S.D.N.Y. Aug. 11, 1998), *aff'd sub nom. Sovak v. President, Members of Bd. of Educ. of City of New York*, 181 F.3d 83 (2d Cir. 1999).

While "[a] plaintiff does not lack standing merely because her injury is an indirect product of the defendant's conduct," it is "'ordinarily substantially more difficult' to establish standing based on indirect injuries than on direct injuries." *Amnesty Int'l United States v. Clapper*, 638 F.3d 118, 141 (2d Cir. 2011) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009)), *rev'd on other grounds sub nom. Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (noting that "much more is needed" to establish causation when "a plaintiff's asserted injury arises from . . . allegedly unlawful regulation (or lack of regulation) of someone else"). That is because, where "[s]peculative inferences are necessary to connect [a plaintiff's] injury to the challenged actions of [the defendant,]" the traceability requirement has not been met. *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 45 (1976). Thus, where the alleged injury was not directly caused by the defendant, but rather by a third party, a plaintiff must "plead facts indicating that a defendant's actions had a 'determinative or coercive effect upon the action of [the third party]' who directly caused the alleged injury." *Nat'l Council of La Raza v. Mukasey*, 283 F. App'x 848, 851 (2d Cir. 2008) (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)); *see also Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010) ("As a rule, causation is shown if the defendants' actions had a 'determinative or coercive effect' on the action that produced the injury.").

Here, Donnelley itself concededly did not cause Plaintiffs' injuries directly. Instead, as alleged, Donnelley merely enabled Mediant's purported misconduct in failing to protect against the Mediant Intrusion, which in turn allegedly injured Plaintiffs. Article III's traceability requirement, therefore, can be satisfied as to Donnelley only upon allegations establishing that

10

Donnelley's challenged conduct had a "determinative or coercive effect" on Mediant's actions that purportedly produced Plaintiffs' injuries. Just as such allegations were absent from the First Amended Complaint, ***no such allegations can be found anywhere in the Second Amended Complaint.***

The cases applying the "determinative or coercive" standard confirm that Plaintiffs' allegations fail to satisfy that standard here. In *National Council of La Raza*, the Second Circuit found that plaintiffs injured by state and local authorities' unlawful arrest of aliens did not have standing to sue defendant federal agencies because the federal agencies did not have a "determinative or coercive effect" on the challenged conduct of the local authorities. 283 F. App'x at 851. This was true even though the federal agencies had specifically requested the arrests, because the state and local authorities sometimes chose not to comply with the federal requests. *Id. National Council of La Raza* thus teaches that a determinative or coercive effect "requires more than a showing that the injuries would not have happened 'but for'" the defendant's alleged wrongful instigation of or failure to prevent the third-party conduct that directly caused the plaintiff's injury. *Adelphia Recovery Tr. v. Bank of Am., N.A.*, No. 05 CIV. 9050 (LMM), 2010 WL 2077214, at *7 (S.D.N.Y. May 14, 2010). Were the rule otherwise, and an allegation that a defendant failed to prevent a plaintiff's injury at the hands of a third party were enough to establish traceability for Article III standing purposes, then plaintiffs would have standing to sue anyone and everyone in the world who conceivably could have intervened to prevent their injuries. But that is not the law. *See Lujan*, 504 U.S. at 560 (noting that "much more is needed" to establish causation when "a plaintiff's asserted injury arises from . . . allegedly unlawful regulation (or lack of regulation) of someone else"). Rather, the defendant's influence must have been a sufficient cause—not just a but-for or necessary cause—of the third party's injury-causing actions for the

plaintiff's injuries to be traceable to that defendant, or it would not be "determinative" or "coercive." *Compare Nat'l Council of La Raza*, 283 F. App'x at 851 ("Plaintiffs' allegations that defendants 'encouraged, caused, and induced state and local police to arrest immigrants . . . do not adequately allege that the injury was fairly traceable to defendants."), *with Bennett*, 520 U.S. at 170 (finding administrative agency's advisory opinion had "determinative or coercive effect" on advisee's action where it played a "central role" in the advisee's decision to follow advice: advisee was required to articulate any reasons for deviation and would have "run[ ] a substantial risk" by ignoring the advice, which "alter[ed] the legal regime to which the [advisee was] subject").

Plaintiffs do not allege facts that would establish Donnelley had influence or control over Mediant enabling Donnelley to "determine" or "coerce" Mediant's data security practices. Like the First Amended Complaint, the Second Amended Complaint acknowledges that Donnelley and Mediant are separate companies, SAC ¶¶ 9-10, and makes no allegation that Donnelley and Mediant are affiliates or that they share computer networks or email systems. Indeed, the Second Amended Complaint does not allege any new facts regarding the relationship between Donnelley and Mediant. Plaintiffs have not alleged any facts to suggest that Donnelley and Mediant were anything more than arms-length business associates. And arms-length business associates certainly do not have an automatic right to control each other. Accordingly, even if Donnelley's alleged lack of oversight were a but-for cause of Mediant's supposedly deficient security practices, that alleged lack of oversight could not have been in and of itself *sufficient* to produce those security practices, as Mediant—not Donnelley—ultimately determined those practices and Donnelley could not itself put different practices in place. *Compare Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193, 1208-09 (11th Cir. 2020) (finding injuries caused by Supervisors of Elections not traceable to Florida Secretary of State because "Supervisors are independent officials not

subject to the Secretary's control" and noting that "Secretary must resort to judicial process if the Supervisors fail to perform their duties" which "underscores her lack of authority over them"), *with Forsee v. Metro. Transportation Auth.*, No. 19 CIV. 4406 (ER), 2020 WL 1547468, at *5-7 (S.D.N.Y. Mar. 31, 2020) (finding city had control over MTA's and NYCTA's operation of the subway system where city granted specific authority to operate subway system to MTA and NYCTA via lease agreement, continued to own subway system, retained the ability to take back powers granted to NYCTA, and maintained budgetary authority and veto power).

There is no basis in the law for asserting that party A is responsible for party B's data security practices as to an individual's personal information where party A has no relationship with the individual in question, never possessed the information in question, and has nothing more than an arms-length business relationship with party B. That being the case, Plaintiffs' Second Amended Complaint does nothing to cure the fatally deficient Article III standing allegations in their previous pleading, because for Plaintiffs' injuries to be traceable to Donnelley's challenged conduct, such conduct must be legally challengeable, which is not the case here. *See Lewis v. Governor of Alabama*, 944 F.3d 1287, 1298 (11th Cir. 2019) ("[P]laintiffs' *ex ante* theory of Article III traceability fails on two accounts—both because the Alabama Attorney General has no legal duty to inform anyone of anything under these circumstances and because the particular conduct that plaintiffs contend violated this nonexistent duty simply didn't occur as they have described it."). As a result, Plaintiffs lack Article III standing as to their claims against Donnelley.

## V.     **CONCLUSION**

For the forgoing reasons,[3] the Court should dismiss the Second Amended Complaint's

---

[3] Mediant has moved to dismiss the third-party-beneficiary contract claim against Mediant for lack of Article III standing. The same rationale compels dismissal of Plaintiffs' third-party-beneficiary contract claim against Donnelley, so Donnelley incorporates Mediant's argument herein by reference. *See also, e.g., XL Disposal Corp. v.*

13

claims against Donnelley pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing.

---

*John Sexton Contractors Co.*, 168 Ill. 2d 355, 361, 659 N.E.2d 1312, 1316 (1995) (requirements for third-party-beneficiary status under the law of Illinois, where Donnelley is based).

Dated: August 26, 2020

      Respectfully submitted,

      Orrick, Herrington & Sutcliffe LLP


By:      /s/ Douglas H. Meal
           Douglas H. Meal

Douglas H. Meal
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, Massachusetts 02116
Telephone: (617) 880-1800
Email: **dmeal@orrick.com**

Michelle Visser (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94102
Telephone: (415) 773-5700
Email: **mvisser@orrick.com**

David T. Cohen
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
Telephone: (212) 506-5000
Email: **david.cohen@orrick.com**

*Attorneys for Defendant*
Donnelley Financial Solutions, Inc.