**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHILLIP TORRETTO, DANIEL C. KING, and SHERI BRAUN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONNELLEY FINANCIAL SOLUTIONS, INC. and MEDIANT COMMUNICATIONS, INC., individually and as general partners,<br><br>    Defendants. | Case No. 1:20-cv-02667-GHW |

## PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .................................................................................................................. 1

PLAINTIFFS' ALLEGATIONS ............................................................................................ 2

STANDARD FOR PLEADING ARTICLE III STANDING ...................................................... 7

PLAINTIFFS SUFFICIENTLY ALLEGE ARTICLE III STANDING ....................................... 9

  A.  Defendants' Challenges to Plaintiffs' Partnership Allegations Are Merits
      Arguments That Are Inappropriate on a 12(b)(1) Motion. .................................. 10

  B.  Plaintiffs' Partnership Allegations Are Well-Stated. ............................................ 13

  C.  Donnelley's "Determinative and Coercive Effect" Test Does Not
      Apply but Is Satisfied in Any Event. ................................................................... 17

  D.  Plaintiffs Have Standing to Pursue Their Third-Party Beneficiary Claim. .......... 20

CONCLUSION ...................................................................................................................... 24

CERTIFICATE OF SERVICE ............................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Adelphia Recovery Trust v. Bank of America*, *N.A.*,
   No. 05 Civ. 9050(LMM), 2010 WL 2077214 (S.D.N.Y. May 14, 2010)................................ 18

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011)............................................................................................. 9

*Arista Records*, *LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010).............................................................................................. 22

*Attias v. Carefirst*, *Inc.*,
   865 F.3d 620 (D.C. Cir. 2017)............................................................................................ 9

*BankUnited*, *N.A. v. Merritt Envtl. Consulting Corp.*,
   360 F. Supp. 3d 172 (S.D.N.Y. 2018)................................................................................ 2

*Barclay v. Denckla*,
   582 N.Y.S.2d 252 (1992).................................................................................................. 15

*Bell v. Hood*,
   327 U.S. 678 (1946).......................................................................................................... 12

*Block v. Meese*,
   793 F.2d 1303 (D.C. Cir. 1986).......................................................................................... 11

*Boykin v. KeyCorp*,
   521 F.3d 202 (2d Cir. 2008).............................................................................................. 16

*Carter v. HealthPort Techs.*, *LLC*,
   822 F.3d 47 (2d Cir. 2016)......................................................................................... 7, 8, 9, 16

*Carver v. City of New York*,
   621 F.3d 221 (2d Cir. 2010).............................................................................................. 18

*Ctr. for Discovery*, *Inc. v. D.P.*,
   No. 16CV3936MKBRER, 2018 WL 1583971 (E.D.N.Y. Mar. 31, 2018) ........................... 23

*Curtis v. Cenlar FSB*,
   No. 13 CIV. 3007 DLC, 2013 WL 5995582 (S.D.N.Y. Nov. 12, 2013) ................................. 20

*CVS Pharmacy*, *Inc. v. Press Am.*, *Inc.*,
   No. 1:17-CV-190-GHW, 2018 WL 318479 (S.D.N.Y. Jan. 3, 2018) ..................................... 20

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008)...................................................................................................... 7, 8

*Everlast World's Boxing Headquarters Corp. v. Trident Brands Inc.*,
   No. 19-CV-503 (JMF), 2020 WL 917058 (S.D.N.Y. Feb. 26, 2020) ..................................... 23

*Fitchie v. Yurko*,
   570 N.E.2d 892 (Ill. App. 1991) ............................................................................................ 15

*Forsee v. Metro. Transportation Auth.*,
   No. 19 CIV. 4406 (ER), 2020 WL 1547468 (S.D.N.Y. Mar. 31, 2020) ................................. 19

*Galaria v. Nationwide Mut. Ins. Co.*,
   663 F. App'x 384 (6th Cir. 2016) ............................................................................................. 9

*Greenwood Motor Lines, Inc. v. Godfather Trucking LLC*,
   No. EDCV1301640JGBSPX, 2014 WL 12689216 (C.D. Cal. July 18, 2014) ........................ 23

*Hall v. Assoc. Int'l Ins. Co.*,
   No. 11-CV-4013-JTM/DJW, 2011 WL 3299104 (D. Kan. Aug. 1, 2011) .............................. 21

*Herst v. Chark*,
   579 N.E.2d 990 (Ill. App. 1991) ............................................................................................ 15

*Hiatt v. W. Plastics, Inc.*,
   36 N.E.3d 852 (Ill. App. 2014) ........................................................................................ 11, 15

*Hoover v. HSBC Mortgage Corp. (USA)*,
   9 F. Supp. 3d 223 (N.D.N.Y. 2014) ....................................................................................... 12

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
   892 F.3d 613 (4th Cir. 2018) ............................................................................................... 9, 17

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) ................................................................................................. 9

*Ioerger v. Halverson Const. Co.*,
   902 N.E.2d 645 (Ill. 2008) .............................................................................................. 14, 15

*Katz v. Donna Karan Co.*,
   872 F.3d 114 (2d Cir. 2017) ................................................................................................... 10

*Katz v. Pershing, LLC*,
   672 F.3d 64 (1st Cir. 2012) .................................................................................................... 21

*Knight First Amendment Inst. at Columbia Univ. v. Trump*,
   302 F. Supp. 3d 541 (S.D.N.Y. 2018) ..................................................................................... 19

*L-3 Commc'ns Corp. v. Serco, Inc.*,
   673 F. App'x. 284 (4th Cir. 2016) .......................................................................................... 21

*Landers-Scelfo v. Corp. Office Sys., Inc.*,
 827 N.E.2d 1051 (Ill. App. 2005) ........................................................ 16

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ............................................................................ 8

*Merriam v. Demoulas*,
 No. CIV.A. 11-10577-RWZ, 2013 WL 2422789 (D. Mass. June 3, 2013) ............................ 12

*Natkin v. Am. Osteopathic Ass'n*,
 No. 3:16-CV-01494-SB, 2018 WL 452165 (D. Or. Jan. 17, 2018) ........................... 23

*Nat'l Council of La Raza v. Mukasey*,
 283 F. App'x 848 (2d Cir. 2008) .......................................................... 18

*New York v. United States Dep't of Commerce*,
 351 F. Supp. 3d 502 (S.D.N.Y.) ............................................. 8, 11, 13, 14

*Paciello v. Patel*,
 443 N.Y.S.2d 403 (1981) .................................................................... 11

*Praileau v. Fischer*,
 930 F. Supp. 2d 383 (N.D.N.Y. 2013) .................................................... 16

*Remijas v. Neiman Marcus Grp., LLC*,
 794 F.3d 688 (7th Cir. 2015) ............................................................... 9

*Robinson v. Gov't of Malaysia*,
 269 F.3d 133 (2d Cir. 2001) ............................................................... 12

*Rothstein v. UBS AG*,
 708 F.3d 82 (2d Cir. 2013) ................................................................. 8

*Rusyniak v. Gensini*,
 629 F. Supp. 2d 203 (N.D.N.Y. 2009) .................................................... 22

*Ryan v. Brophy*,
 755 F. Supp. 595 (S.D.N.Y. 1991) ........................................................ 11

*Sackin v. TransPerfect Glob., Inc.*,
 278 F. Supp. 3d 739 (S.D.N.Y. 2017) .................................................. 9, 10

*Scholastic, Inc. v. Harris*,
 259 F.3d 73 (2d Cir. 2001) ................................................................ 14

*Snoussi v. Bivona*,
 No. 05 CV 03133 RJD LB, 2010 WL 3924683 (E.D.N.Y. Sept. 29, 2010) ...................... 22

*Sonterra Capital Master Fund Ltd. v. UBS AG*,
   954 F.3d 529 (2d Cir. 2020)..................................................................... 8

*Sound Video Unlimited, Inc. v. Video Shack Inc.*,
   700 F. Supp. 127 (S.D.N.Y. 1988) .................................................. 14, 15

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)........................................................................... 17

*Wagner v. Bear, Stearns & Co.*,
   No. 82 C, 2995, 1982 WL 1364 (N.D. Ill. Sept. 17, 1982).................... 11

*Whalen v. Michaels Stores, Inc.*,
   689 F. App'x 89 (2d Cir. 2017) ............................................................. 10

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990)............................................................................... 12

**<u>Statutes</u>**
N.Y. P'ship Law § 40 ................................................................................ 11

Rules

Federal Rule of Civil Procedure 12 ................................................... passim

**<u>Other Authorities</u>**

5 Wright, & Miller, Federal Practice and Procedure § 1224 ...................... 22

**INTRODUCTION**

Plaintiffs Phillip Torretto, Daniel King, and Sheri Braun each suffered harms resulting from the theft of their sensitive personally identifying and financial information in a data breach experienced by Defendant Mediant Communications, Inc. Mediant was in possession of Plaintiffs' information in order to provide proxy services for mutual funds and publicly owned companies in which Plaintiffs were investors, services that it jointly performed with its business partner Defendant Donnelley Financial Solutions, Inc. Plaintiffs allege Mediant's and Donnelley's failures to act with reasonable care and breaches of their duties of care and contractual commitments caused Plaintiffs' injuries. In particular, Plaintiffs allege Mediant maintained inadequate data security measures that were insufficient to protect the investor information in its possession, and separately allege that Donnelley failed to ensure Mediant had adequate data security in place before partnering with Mediant to deliver proxy services. Plaintiffs further allege that after partnering with Mediant, Donnelley failed to supervise Mediant and monitor Mediant's data security to ensure it was adequate to protect the investor information Mediant possessed and used to carry out their joint proxy services. Plaintiffs also allege Donnelley and Mediant entered into contracts in which they promised, for the benefit of Plaintiffs, that the investor information they used to carry out their joint proxy services would be adequately secured. Plaintiffs allege that if Mediant had provided adequate data security, and if Donnelley had performed proper oversight and control over Mediant's data security, the data breach would not have occurred, and Plaintiffs' injuries would have been avoided.

Despite this direct line of causation between Defendants' alleged conduct and Plaintiffs' injuries, Defendants each contend this Court does not have the constitutional authority to adjudicate some or all of Plaintiffs' claims and seek dismissal without prejudice under Federal Rule of Civil Procedure 12(b)(1). Donnelley contends that Plaintiffs have not alleged sufficient

facts to show Donnelley can be held liable for its conduct, but as Plaintiffs explain below, Donnelley's merits-based challenge is both improper under 12(b)(1) and wrong in any event. Mediant seeks dismissal of only Plaintiffs' third-party beneficiary contract claim, but like Donnelley, Mediant does not challenge Plaintiffs' alleged injuries or theory of causation, only the merits of the claim. Defendants' motions should be denied.

## PLAINTIFFS' ALLEGATIONS

Donnelley is a global risk and compliance company, offering an array of products and services in technology, fintech, and financial solutions, among others. Second Amended Complaint ("Compl.") ¶¶ 9, 13. Mediant is an investor communications and financial technology company. *Id.* ¶ 10. In 2008, Mediant entered into a partnership with Donnelley's corporate predecessor, which, through various corporate restructurings, became Donnelley in 2016. *See* Doc. 51 (Declaration of Bridget Hughes, Vice President of Corporate Governance and Compliance Services at Donnelley ("Hughes Decl.")) ¶¶ 2-3.[1] Donnelley's and Mediant's partnership (the "Partnership") continues to this day for the purpose of "jointly providing proxy services to mutual funds and publicly owned companies." *Id.* ¶ 3. These joint "proxy services include printing and distributing materials to shareholders, coordinating shareholder votes, and tabulating voting results." *Id.* Donnelley's specific responsibilities with respect to the Partnership's proxy services include "creating, EDGAR filing, and printing proxy statements and other materials that companies want distributed to their shareholders." *Id.* Mediant's Partnership responsibilities include taking the printed materials prepared by Donnelley and "print[ing] the customized cards or voting forms and complet[ing] the mailings." *Id.*

---

[1] Plaintiffs cited Ms. Hughes' declaration in their Second Amended Complaint, *see* Compl. ¶ 4 n.2, and it is therefore incorporated by reference therein and may be considered in evaluating Defendants' motions to dismiss. *E.g.*, *BankUnited, N.A. v. Merritt Envtl. Consulting Corp.*, 360 F. Supp. 3d 172, 183 (S.D.N.Y. 2018).

Defendants represent to the public that Donnelley and Mediant are engaged in a "partnership" to provide their joint proxy services, refer to the Partnership's customers as "our clients," and state that the Partnership offers a "single-source solution" for proxy services where clients can get everything they need "all in one place. . . from a single, intuitive platform." *See* Compl. ¶¶ 1 n.2, 15 n.8 (incorporating by reference Donnelley's website[2]). Defendants further represent that their joint services can be accessed through "a single point of contact" backed by a single "expert team." *Id.* Moreover, Defendants state that their single source solution allows their clients to "[m]aintain control of both [their] data and [their] event with secure file transfer protocols and procedures." *Id.*

Donnelley entered into contracts with each Plaintiff's investment fund for the Partnership to perform proxy services for those funds. Compl. ¶¶ 30, 37, 43. While typically Donnelley is the party named in the contract with the various funds for which the Partnership will perform its proxy services, in some instances, Mediant directly contracts with the public companies and mutual funds for the performance of the Partnership's proxy services. *Id.* ¶ 145. Plaintiffs allege on information and belief that those respective contracts contain provisions requiring Donnelley and Mediant to protect the investor information that Donnelley and Mediant receive and use in order to provide the Partnership's proxy services. *Id.* ¶ 146.

On April 1, 2019, hackers exploited a vulnerability in Mediant's e-mail software to gain unauthorized access to four Mediant business email accounts and obtain the personal information located on a network server of more than 200,000 individuals who were investors in the Partnership's clients, including Plaintiffs here (the "Data Breach"). *Id.* ¶¶ 16-18, 30, 37, 43. The

---

[2] The website cited in Plaintiffs' Second Amended Complaint provides a link to the Partnership's "Fact Sheet," available here: https://www.dfinsolutions.com/sites/default/files/documents/2019-09/perfect_partnership_to_power_your_fund_proxies_20190926.pdf

personal information stolen included investors' names, genders, physical addresses, email addresses, phone numbers, Social Security Numbers, tax identification numbers, account numbers, and investment-specific information such as units owned, issue dates, and owner/annuitant designation (collectively, "Personal Information"). *Id.* ¶¶ 2, 16. The affected individuals were investors in 15 entities and mutual funds located in California, Illinois, Kansas, Massachusetts, Michigan, Missouri, and New York. *Id.* ¶ 17. Mediant learned which of the Partnership's clients had affected investors from Donnelley, who had the direct contractual relationship with most of the Partnership's clients. *Id.*

Following the Data Breach, Mediant stated it had taken steps to strengthen the security of its systems—such as remediating the vulnerability in its email system, implementing targeted network access restrictions, updating network monitoring systems, requiring affected employees to change their passwords, and accelerating planned improvements to its email system. Mediant also stated it would be reviewing its written information security program to determine if any updates to the program were appropriate. And it admitted that it had not encrypted the Personal Information stored in its systems. *Id.* ¶ 18. In notices of the Data Breach posted on state attorneys general websites, Mediant disclosed that it received the affected investors' Personal Information as part of the provision of proxy services it performed with Donnelley. *Id.* ¶ 20.

By May 10, 2019, Mediant had determined the identities of the investors whose Personal Information had been stolen; however, neither Mediant nor Donnelley provided notice to the affected investors. Instead, Mediant first informed the companies whose investors were impacted, two weeks prior to notifying the investors themselves. *Id.* ¶ 21.

Each Plaintiff eventually received a letter from Mediant dated May 31, 2019, stating that their Personal Information had been compromised in the Data Breach. *Id.* ¶¶ 29-30, 36-37, 42-43.

Recognizing the risk of identity theft resulting from the Data Breach, Mediant advised each Plaintiff to "be vigilant and closely review or monitor your financial accounts, statements, credit reports and other financial information for any evidence of unusual activity, fraudulent charges, or signs of identity theft." *Id.* ¶¶ 24-25, 31, 38, 44. Mediant offered 24 months of credit monitoring, and provided additional information regarding steps affected investors could take, including implementing security freezes and fraud alerts, and Mediant provided the contact information for certain attorneys general who could provide additional information about "steps [the affected investors] can take to prevent identity theft." *Id.* ¶ 24. Each Plaintiff followed Mediant's directives and spent time and effort regularly monitoring their financial accounts for signs of fraud, and continue to do so. *Id.* ¶¶ 32, 39, 45, 53.

Each Plaintiff suffered misuse of his or her Personal Information in the immediate aftermath of the Data Breach. Starting around May 15, 2019, prior to getting Mediant's notification of the Data Breach, Plaintiff Braun began receiving almost daily phone calls from credit card companies inquiring whether she had contacted them to open new accounts. *Id.* ¶ 45. As a result, Plaintiff Braun was forced to spend time thoroughly investigating her credit report to check for unauthorized and fraudulent credit inquiries, applications, and transactions. *Id.* On May 28, 2019, Plaintiff Braun called Experian, Equifax and Trans Union to place fraud alerts on her credit. *Id.* ¶ 46. At the time she placed these fraud alerts, Plaintiff Braun had no idea how her identity had been stolen and spent hours of her time researching the causes of identity theft and possible technologies that she could employ to determine how her identity had been stolen, time that would not have been expended had Defendants provided timely notice of the Data Breach. *Id.* ¶ 47.

After receiving the delayed notification from Mediant, and in light of the series of fraudulent attempts to secure credit under her name, on June 18, 2019, Plaintiff Braun filed an

Identity Theft Report with the Federal Trade Commission. *Id.* ¶ 48. On July 10, 2019, Plaintiff Braun filed a police report memorializing that her Personal Information had been exposed and that her identity had been stolen. *Id.* ¶ 49. Plaintiff Braun estimates that she has spent between 40 and 50 hours attempting to resolve instances of identity theft, including having to make three separate trips to the police station, and continues to spend her valuable time to protect the integrity of her finances and credit. *Id.* ¶¶ 50, 53. Out of concern for her safety as a result of the Data Breach, Plaintiff Braun purchased a security system which she had installed at her home at her expense. She subsequently purchased two Ring doorbell cameras at a cost of $550 to $600. *Id.* ¶ 52.

Plaintiff Toretto began to receive a significant increase in spam-related telephone calls following the Data Breach, which interfered with work, travel, and daily life. As a result, Plaintiff Toretto has had to pay out-of-pocket for Verizon's Call Filter and Digital Secure services at a cost of approximately $17 per month to help protect against these calls. *Id.* ¶ 34. To help protect himself following the Data Breach, Plaintiff Toretto purchased a LifeLock service plan which after the first year will result in an annual out-of-pocket fee of $300. In addition, Plaintiff Toretto has obtained Kaspersky security plans for each of his computers at an annual cost of $124.99. *Id.* ¶ 33.

Plaintiff King twice experienced fraudulent charges on a retail credit card after the Data Breach. In June 2019, someone made a fraudulent charge of $1,750 on the card, for which Plaintiff King had to spend time and effort to obtain reimbursement. Then, in August 2019, he experienced $2,700 in unauthorized charges on the same card, which were also reimbursed. *Id.* ¶ 40. While investigating the fraud, Plaintiff King was informed by the credit card company that it seemed likely the fraud had been perpetrated by an individual who did not have access to the card number, but rather, had access to his personal information which was used to impersonate him to look up and use the retail credit card at the stores. *Id.*

Each Plaintiff remains at a substantial and imminent risk of suffering additional misuse of their Personal Information, and has suffered a loss in the value of their Personal Information as a personal-identifier now that criminals can use it to impersonate them to fraudulent ends. *Id.* ¶¶ 35, 41, 54.

Plaintiffs contend that the theft of their Personal Information in the Data Breach and the harms that have resulted would not have occurred if Mediant had maintained sufficient and reasonable data controls to prevent and monitor its data systems for unauthorized access, and if Donnelley had taken the necessary steps to inspect, inquire, and/or require documentation from Mediant that it implemented and maintained adequate security measures to protect investors' Personal Information in Mediant's possession to carry out the business of the Partnership. *Id.* ¶ 23. Defendants' respective failures in this regard violated Defendants' common law and statutory duties and breached contracts to which Plaintiffs were third-party beneficiaries. Plaintiffs assert claims for negligence, negligence *per se*, breach of contract of which Plaintiffs are third-party beneficiaries, unjust enrichment, declaratory judgment, and violations of California's customer records act and unfair competition law and Florida's deceptive and unfair trade practices act. *Id.* ¶¶ 121-194. Plaintiffs request compensatory damages, injunctive relief, and other relief as provided by law.

## STANDARD FOR PLEADING ARTICLE III STANDING

"'Article III restricts federal courts to the resolution of cases and controversies.... That restriction requires that the party invoking federal jurisdiction have standing—the personal interest that must exist at the commencement of the litigation.'" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (ellipses provided by *Carter*, emphasis omitted)). To have standing, the plaintiff must sufficiently allege three elements: 1) "injury in fact," in other words, "a personal stake in the alleged dispute";

2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and 3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* at 55 (quotations and emphasis omitted).

The requirement that the plaintiff's injury be "fairly traceable" to the challenged conduct of the defendant "does not create an onerous standard." *Id.* at 55. "For example, it is a standard lower than that of proximate causation." *Id.* (citing *Rothstein v. UBS AG*, 708 F.3d 82, 91-92 (2d Cir. 2013)). "A defendant's conduct that injures a plaintiff but does so only indirectly, after intervening conduct by another person, may suffice for Article III standing." *Id.* at 56; *see also id.* at 59 ("a plaintiff's injury need not be 'directly' attributable to a defendant in order to show the causation element of standing to sue that defendant, so long as the injury is 'fairly traceable' to that defendant"). Traceability under Article III "only [requires] that the defendant's conduct [be] a *de facto* cause of the plaintiff's injury, not that it was the 'legal' or 'proximate' cause." *New York v. United States Dep't of Commerce*, 351 F. Supp. 3d 502, 625 (S.D.N.Y.), *aff'd in relevant part*, *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the Court] presum[s] that general allegations embrace those specific facts that are necessary to support the claim." *Carter*, 822 F.3d at 56 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (emphasis omitted); *Sonterra Capital Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 534 (2d Cir. 2020) (same). "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint . . . [t]he task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly

suggest that [the plaintiff] has standing to sue.'" *Carter*, 822 F. 3d at 56 (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). The Court must "accept[] as true all material factual allegations of the complaint, and draw[] all reasonable inferences in favor of the plaintiff." *Id.* at 57 (internal citations and quotations omitted). Where a complaint is dismissed for lack of subject matter jurisdiction on a 12(b)(1) challenge, "the dismissal must be without prejudice, rather than with prejudice," because "without jurisdiction, the district court lacks the power to adjudicate the merits of the case." *Id.* at 54-55.

## PLAINTIFFS SUFFICIENTLY ALLEGE ARTICLE III STANDING

Defendants do not contest that Plaintiffs have alleged sufficient injuries in fact, or that their injuries are redressable by a favorable judicial decision, for purposes of Article III. Data breach cases addressing these issues are nearly uniform in holding that the types of harms Plaintiffs have suffered here arising out of the theft of their most sensitive personally identifying and financial information in a data breach—including but not limited to actual misuse of their Personal Information, the substantial risk that their Personal Information will continue to be misused to engage in fraud, and the time and costs incurred to mitigate the effects of actual misuse and risk of future misuse—are sufficient to confer Article III standing. *See, e.g.*, *In re Zappos.com, Inc.*, 888 F.3d 1020, 1027, 1030 (9th Cir. 2018), *cert. denied sub nom. Zappos.com, Inc. v. Stevens*, 139 S. Ct. 1373 (2019); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 621 n.8, 622 (4th Cir. 2018); *Attias v. Carefirst, Inc.*, 865 F.3d 620, 628-29 (D.C. Cir. 2017); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388-89, 391 (6th Cir. 2016); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693-94, 697 (7th Cir. 2015); *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 746-47 (S.D.N.Y. 2017).[3] Instead, both Defendants contend Plaintiffs' harms

---

[3] While the Second Circuit has not addressed Article III standing on similar allegations, the court in *Sackin* concluded that two unreported Second Circuit decisions analyzing different facts

are not traceable to Defendants.[4] For the reasons explained below, those arguments should be rejected.

### A. Defendants' Challenges to Plaintiffs' Partnership Allegations Are Merits Arguments That Are Inappropriate on a 12(b)(1) Motion.

Donnelley offers the remarkable argument that Plaintiffs have not sufficiently alleged Donnelley and Mediant entered into a partnership, even after Donnelley submitted a declaration in this litigation referring to its relationship with Mediant as a "partnership" and describing the duties of each respective partner in "jointly provid[ing] proxy services." *See* Hughes Decl. ¶¶ 2-3. In that Declaration, Bridget Hughes, Donnelley's Vice President of Corporate Governance and Compliance Services, states that she was "involved with the initial partnership with Mediant, and in all of [her] roles since then [she] ha[s] been actively involved in managing the partnership with Mediant on a day to day basis." *Id.* ¶ 2. Ms. Hughes avers that Donnelley and Mediant "jointly provide proxy services to mutual funds and publicly owned companies" and describes each company's respective roles in carrying out the provision of these joint services. *Id.* ¶ 3.

Despite Plaintiffs' allegations and Donnelley's own admissions before this Court, Donnelley contends that Plaintiffs do not sufficiently allege that Mediant and Donnelley are partners, and thus, do not adequately allege Donnelley had the right or obligation to inquire, ascertain, monitor, or control Mediant's data security, or that Donnelley is vicariously liable for

---

"suggest that it will follow the lead of its sister circuits" in agreeing allegations like Plaintiffs' here state injuries in fact. 278 F. Supp. 3d at 746 (citing *Katz v. Donna Karan Co.*, 872 F.3d 114, 120-21 (2d Cir. 2017); *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 90 (2d Cir. 2017)).

[4] Mediant does not identify which element of standing it contends is lacking, instead arguing generally that a non-party, or non-third-party beneficiary, to a contract does not have standing to enforce it. *See* Doc. 66 at 4. However, because Mediant does not argue Plaintiffs have not been injured, and only that Mediant cannot be liable for Plaintiffs' injuries arising out of the alleged breaches of contract unless Mediant is liable on those contracts, Plaintiffs suggest Mediant's challenge is best characterized as one to traceability.

Mediant's deficient data security. Doc. 68 at 7-9.[5] Mediant also challenges Plaintiffs' partnership allegations, contending if Plaintiffs do not sufficiently allege Mediant and Donnelley were legal partners, that Mediant cannot be liable on contracts entered into by Donnelley for the performance of their joint proxy services. Doc. 66 at 5-6.

Defendants' arguments fail for several reasons. As a preliminary matter, Defendants' arguments "suffer from a common confusion between the standing and merits inquiries, which — of course — are conceptually distinct." *United States Dep't of Commerce*, 351 F. Supp. 3d at 623. Defendants' challenges to whether Plaintiffs have adequately alleged a legal partnership are misguided merits challenges unsuitable for dismissal under Rule 12(b)(1). As to standing against Donnelley, Plaintiffs contend Donnelley failed to exercise adequate supervision and control over Mediant's data security in carrying out their joint provision of proxy services, and that if it had provided sufficient oversight, the Data Breach would have been prevented. Compl. ¶ 23. Plaintiffs have thus alleged Donnelley was a *de facto* cause of Plaintiffs' injuries arising out of the Data Breach for purposes of Article III's traceability requirement. *United States Dep't of Commerce*, 351 F. Supp. 3d at 625 (Traceability under Article III "only [requires] that the defendant's conduct was a *de facto* cause of the plaintiff's injury, not that it was the 'legal' or 'proximate' cause") (quoting *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.)); *see also, e.g.,*

---

[5] Donnelley does not dispute that *if* Mediant and Donnelley are legal partners, it had the right of control over Mediant's data security as used to carry out the business of the Partnership; nor does it dispute that it would be vicariously liable for Mediant's alleged wrongful conduct undertaken while carrying out the business of the Partnership. *See Paciello v. Patel*, 443 N.Y.S.2d 403, 406 (1981); *Hiatt v. W. Plastics, Inc.*, 36 N.E.3d 852, 865 (Ill. App. 2014) (both stating partners are vicariously liable for the acts of other partners taken in the course of carrying out the partnership business); N.Y. P'ship Law § 40(5) ("All partners have equal rights in the management and conduct of the partnership business."); *Wagner v. Bear, Stearns & Co.*, No. 82 C 2995, 1982 WL 1364, at *4 (N.D. Ill. Sept. 17, 1982) ("In a 'classic' general partnership, each partner has a statutory right to equal control of the management of the business of the partnership."). Nor does Mediant dispute that it would be liable as a partner on contracts Donnelley entered into on behalf of the Partnership. *See Ryan v. Brophy*, 755 F. Supp. 595, 597-98 (S.D.N.Y. 1991).

*Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("Our threshold inquiry into standing in no way depends on the merits of [the plaintiff's] contention that particular conduct is illegal.") (internal quotation marks omitted); *Hoover v. HSBC Mortgage Corp. (USA)*, 9 F. Supp. 3d 223, 237 (N.D.N.Y. 2014) ("While standing and merits questions frequently overlap, standing is fundamentally about the propriety of the individual litigating a claim irrespective of its legal merits, while a Rule 12(b)(6) inquiry is concerned with the legal merits of the claim itself."); *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001) ("A district court does not, of course, decide a case on the merits in order to decide if it has jurisdiction. '[J]urisdiction is not defeated by the possibility that the averments might fail to state a cause of action.'") (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

In addition, Plaintiffs allege that as Mediant's partner, Donnelley is vicariously liable for Mediant's inadequate data security, which also sufficiently alleges the traceability of Plaintiffs' injuries to Donnelley. *See, e.g.*, *Merriam v. Demoulas*, No. CIV.A. 11-10577-RWZ, 2013 WL 2422789, at *4 (D. Mass. June 3, 2013) (where the plaintiffs' standing "rest[ed] on the allegation that they were directly harmed by the Trustee defendants' alleged breach, for which (they allege) the Director defendants are vicariously liable[,] [w]hether the Director defendants are in fact vicariously liable for that breach is a merits question that should not be conflated with the standing issue"). Thus, Donnelley's contention that Plaintiffs have not adequately alleged Donnelley *can be held liable* for its own failures, or for Mediant's, is a merits challenge going to whether Plaintiffs have stated a claim against it.

Similarly, Mediant's contention that Plaintiffs' partnership allegations are insufficient to show Mediant is liable on contracts on which Plaintiffs are third-party beneficiaries is also an improper merits challenge. Plaintiffs contend Mediant and Donnelley jointly provided proxy

services and that as part of these joint services, Donnelley entered into contracts that, for Plaintiffs' benefit, promised that Plaintiffs' Personal Information would be protected in carrying out the Partnership's joint services.[6] Plaintiffs allege these contracts were breached by Mediant's failure to employ adequate data security, resulting in the Data Breach and the theft of Plaintiffs' Personal Information. Plaintiffs thus have alleged Mediant's conduct was a *de facto* cause of their injuries to make their third-party beneficiary claim against Mediant justiciable.[7]

Because Plaintiffs have sufficiently alleged "the chain of causation connecting Defendants' conduct to Plaintiffs' injuries" and "shown that one is sufficiently traceable to the other so as to give Plaintiffs a sufficiently 'personal stake' in the outcome of their challenge to create the adverseness required by Article III," Defendants' motions to dismiss under Rule 12(b)(1) must be denied. *See United States Dep't of Commerce*, 351 F. Supp. 3d at 624.

**B.      Plaintiffs' Partnership Allegations Are Well-Stated.**

Even if Defendants' challenge to the sufficiency of Plaintiffs' allegations that Defendants entered into a partnership to perform proxy services were a proper attack on this Court's subject matter jurisdiction, those challenges should be rejected because Plaintiffs have plausibly alleged Donnelley and Mediant were partners in providing the proxy services that ultimately led to the Data Breach. As noted above, Donnelley expressly represented to this Court that it and Mediant entered into a partnership in 2008 to "jointly provide proxy services to mutual funds and publicly owned companies," and that "the partnership . . . continues to this day." Hughes Decl. ¶¶ 2-3. Donnelley also identified the details of the Partnership's joint proxy services ("printing and

---

[6] Plaintiffs allege in some instances Mediant was the primary contracting party on such contracts. Compl. ¶ 145.

[7] Likewise, as explained at Part D, *infra*, Mediant's contention that Plaintiffs have not sufficiently alleged they are third-party beneficiaries of breached contracts is also not a proper 12(b)(1) challenge, and in any event, is incorrect.

distributing materials to shareholders, coordinating shareholder votes, and tabulating voting results") and identified each partner's respective responsibilities in carrying out those joint services ("Donnelley's specific responsibilities with respect to these proxy services generally include creating, EDGAR filing, and printing proxy statements and other materials that companies want distributed to their shareholders. Donnelley then sends these printed materials to Mediant, which prints the customized cards or voting forms and completes the mailings."). *Id.* ¶ 3.

Defendants also represent to the public that Donnelley and Mediant are engaged in a "partnership" to provide their joint proxy services, refer to the Partnership's customers as "our clients," and state that the Partnership offers a "single-source solution" for proxy services where clients can get "[e]verything [they] need – all in one place. . . from a single, intuitive platform." *See* Compl. ¶ 1 n.2 (incorporating by reference Donnelley's website). Defendants further state that their joint services can be accessed through "a single point of contact" backed by a single "expert team." *Id.* Moreover, Defendants state that their single source solution allows their clients to "[m]aintain control of both [their] data and [their] event with secure file transfer protocols and procedures." *Id.*

Notwithstanding its own admissions and representations to the public, Donnelley now tries to walk back its clear statements that Donnelley and Mediant are partners, arguing that Plaintiffs' allegations do not satisfy the elements of a legal partnership, including "(i) the sharing of profits and losses; (ii) joint control and management of the business; (iii) the contribution of each party of property, financial resources, effort, skill, or knowledge; and (iv) the intent to form a partnership." Doc. 68 at 8.[8]

---

[8] A partnership for a limited purpose is also correctly called a "joint venture," and the same legal rules and obligations apply. *See Scholastic, Inc. v. Harris*, 259 F.3d 73, 84 (2d Cir. 2001); *Ioerger v. Halverson Const. Co.*, 902 N.E.2d 645, 648 (Ill. 2008); *see also Sound Video Unlimited, Inc. v. Video Shack Inc.*, 700 F. Supp. 127, 138 (S.D.N.Y. 1988) ("Common indicia of a joint venture are:

But Plaintiffs' allegations and Donnelley's own admissions reflect that these elements are met, including that Donnelley and Mediant intended to and did form a partnership dating back twelve years to engage in a singular enterprise relying on shared infrastructure and resources, including those related to data security. In particular, the above facts showing Donnelley and Mediant jointly provide services, utilize common property and resources, and each contribute their respective skills and know-how, clearly support, at a minimum, joint control and management and contribution of each party of property, financial resources, effort, skill, or knowledge. *See, e.g.*, *Herst v. Chark*, 579 N.E.2d 990, 993-94 (Ill. App. 1991) (stating alleged partner's control and management over his respective responsibilities related to the alleged joint venture was sufficient to satisfy joint control and management element). Likewise, the sharing of profits and losses does not require that the parties engage in joint accounting or "pool" their profits and losses prior to dividing them. *See Hiatt*, 36 N.E.3d at 870. Instead, "as long as the parties share in the same revenue stream, the shared-profits element can . . . be established." *Id*. It can be reasonably inferred that Mediant and Donnelley shared in the same revenue stream in jointly providing their "single-source" proxy services. Finally, when each of these facts and inferences are combined with Defendants' characterization of their pairing as a partnership, their intent to form a legal partnership or joint venture is also plausible. *Fitchie v. Yurko*, 570 N.E.2d 892, 900 (Ill. App. 1991) ("[T]he existence of a joint venture may be inferred from facts and circumstances demonstrating that the parties, in fact, undertook a joint enterprise."); *Sound Video Unlimited, Inc.*, 700 F. Supp.

---

(1) the intent of the parties to form a joint enterprise; (2) joint control and management of the business; (3) a sharing of profits and losses; and (4) a combination of property, skill or knowledge."). Mediant cites a case identifying eight factors, but encompassing the same considerations as the four factors Donnelley identifies. Doc. 66 at 5-6. Notably, Mediant admits these are merely factors courts consider in reaching the ultimate determination of whether a legal partnership was formed, which is normally a question of fact. *Ioerger*, 902 N.E.2d at 648; *Barclay v. Denckla*, 582 N.Y.S.2d 252, 253 (1992).

at 138-39; *see also Carter*, 822 F.3d at 56 (where a standing challenge is made "on a motion to dismiss[,] we presum[e] that general allegations embrace those specific facts that are necessary to support the claim").

Each of the cases Defendants rely on for the proposition that each element of a partnership must be affirmatively alleged were brought by one putative partner against another, and thus, the plaintiff would have had knowledge of the details of the alleged partnership agreement. *See* Doc. 68 at 8; Doc. 66 at 5-6. In the only case either Defendant cites involving the circumstances here, where an outsider to the alleged partnership brought a claim alleging partnership liability, the court stated that only "some sign of a venture for common benefit" and "some indication of a sharing of profits" need be found. *Landers-Scelfo v. Corp. Office Sys., Inc.*, 827 N.E.2d 1051, 1057–58 (Ill. App. 2005). Plaintiffs are not privy to the details of the agreement between Donnelley and Mediant and thus cannot be expected to allege these details. Notably, even in fraud cases requiring allegations of heightened specificity, pleading requirements are less stringent when information is exclusively within the defendant's knowledge. *E.g., Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008). And here, there can be no dispute Plaintiffs' allegations provide Defendants "fair notice of what [Plaintiffs'] claim is and the grounds upon which it rests." *E.g.*, *Praileau v. Fischer*, 930 F. Supp. 2d 383, 390 (N.D.N.Y. 2013). Thus, Plaintiffs allege facts sufficient to make plausible the existence of a legal partnership between Donnelley and Mediant, and therefore, Defendants' traceability challenges that depend on a legal partnership *not* existing between them must be rejected.

In addition, Donnelley's contention that it cannot be liable for its alleged conduct unless Plaintiffs sufficiently alleged Donnelley and Mediant are legal partners does not apply to Plaintiffs' third-party beneficiary claims against Donnelley. Specifically, Donnelley's liability on contracts

*it entered into* in no way depends on whether Donnelley and Mediant are legal partners.[9] Plaintiffs' unjust enrichment claim also does not depend on Donnelley's right of control over Mediant or its vicarious liability. Rather, Plaintiffs allege that Donnelley and Mediant were unjustly enriched by their use of Plaintiffs' Personal Information to provide their joint services. Compl. ¶¶ 150-60. Donnelley thus makes no argument that Plaintiffs do not have standing to pursue this claim against it. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1551 (2016) (Thomas, J., concurring) ("Many traditional remedies for private-rights causes of action—such as for . . . unjust enrichment—are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right."). Thus, even if Donnelley's arguments are accepted, Plaintiffs' entire case against it should not be dismissed.

### C.   Donnelley's "Determinative and Coercive Effect" Test Does Not Apply but Is Satisfied in Any Event.

Donnelley argues that because any potential injuries Plaintiffs allege specific to Donnelley were "indirect" and not "fairly traceable" to its conduct (Doc. 68 at 9-10), Article III standing can only be satisfied by establishing that Donnelley's conduct had a "determinative or coercive effect" on Mediant's actions, *i.e.*, that Donnelley had control over Mediant.  Donnelley's argument ignores Plaintiffs' actual allegations. As discussed above, Plaintiffs allege that Donnelley was a ***direct*** cause of Plaintiffs' injuries relating to its own failures to prevent the Data Breach, which alone is sufficient to satisfy Article III's traceability requirement. *See Hutton*, 892 F.3d at 623 (noting that the "fairly traceable standard is not equivalent to a requirement of tort causation" and a defendant

---

[9] In a footnote, Donnelley incorporates by reference Mediant's challenges to Plaintiffs' third-party beneficiary claim. Doc. 68 at 13-14 n.3. However, because Donnelley was the primary contracting party with Plaintiffs' investment funds, *see* Compl. ¶¶ 30, 37, 43, 145, Mediant's challenge to this claim on the basis that Mediant is not liable on those contracts does not apply to Donnelley. And as explained in Part D, *infra*, Mediant's other challenges to Plaintiffs' third-party beneficiary claim should be rejected.

need only be a "plausible source" of breach to satisfy traceability); Part A, *supra*. Consequently, the "determinative or coercive effect" test arising from *indirect* harm relied on by Donnelley simply does not apply here.

The cases Donnelly relies on for application of the "determinative or coercive effect" test are factually distinguishable as they involve allegations of **_indirect_** harm by defendants and intervening acts of independent third parties—not conduct of a named party as Plaintiffs allege here. *Cf., e.g.*, *Carver v. City of New York*, 621 F.3d 221, 226-227 (2d Cir. 2010) (plaintiff alleged defendant City's actions indirectly caused his lottery money to be intercepted by a State agency (a non-party) in violation of minimum wage laws; court found the City's actions had a "determinative or coercive effect" on the plaintiff's injury such that plaintiff established standing over the City); *Nat'l Council of La Raza v. Mukasey*, 283 F. App'x 848, 851-52 (2d Cir. 2008) (plaintiffs alleged defendant DHS's actions indirectly caused plaintiffs' injuries by way of unlawful conduct by state and local authorities (not defendants); court found plaintiffs failed to establish standing to sue defendants because plaintiffs pled the non-parties "chose not to comply" with defendants' requests, plaintiffs did "not allege that such [non-party] authorities suffer any adverse consequences from this resistance" and thus there was no "determinative or coercive effect"); *Adelphia Recovery Trust v. Bank of America, N.A.*, No. 05 Civ. 9050(LMM), 2010 WL 2077214, at *7 (S.D.N.Y. May 14, 2010) (plaintiff failed to allege direct damages were "fairly traceable" to entry of non-party debtors and bank defendants into the facility and failed to demonstrate bank defendants had a "determinative or coercive effect" on any of the third parties' conduct).

However, even assuming *arguendo* that the "determinative or coercive effect" test does apply, Plaintiffs satisfy that test as well. Although Donnelley argues in a vacuum that it did not have any control over Mediant, that argument ignores the facts as alleged in Plaintiffs' Second

Amended Complaint. Plaintiffs' allegations demonstrate that even if the relationship between Mediant and Donnelley is determined to not be a legal "partnership" (which, as set forth above, it is), at a minimum, Mediant operated as a quasi-subcontractor of Donnelley. Donnelley had the opportunity and ability to control Mediant's conduct starting with the initial decision-making authority to select Mediant to carry out the proxy services. *See, e.g.*, Compl. ¶¶ 4, 23, 58. Donnelley could have and should have decided to contract with another entity based on Mediant's failure to implement and maintain adequate security protocols. By choosing Mediant instead of another entity, and by continuing to employ Mediant, Donnelley failed to exercise its control over Mediant in good faith in order to protect Plaintiffs' sensitive information, including not requiring "Mediant to execute a written contract requiring it to implement reasonable data security measures or otherwise ensure such measures were implemented for the protection of the Partnership's customers' investors." *See id.* ¶ 62; *see also id.* ¶¶ 23, 26, 62, 87. Under similar factual circumstances, the court in *Forsee v. Metropolitan Transportation Authority*, No. 19 CIV. 4406 (ER), 2020 WL 1547468 (S.D.N.Y. Mar. 31, 2020) (cited by Donnelley at Doc. 68 at 13), found the plaintiff's allegations that the City had "granted the specific authority to operate its subway system to the MTA Defendants" (*i.e.*, a subcontractor), "retains a significant degree of control" over MTA, and "enjoys significant influence over the MTA Defendants through its budgetary authority and veto power" were sufficient to meet plaintiffs' burden of alleging that even though the City's conduct may have been indirect, plaintiffs' "injury is fairly traceable to the City's failure to act." *Id.* at *5-7. [10]

---

[10] Any argument that Donnelley's *failure* to act is insufficient to establish standing is contradicted by the *Forsee* court's acknowledgement that "an omission may provide a basis for standing just as an affirmative action." *Id.* at *5 (citing *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 558 (S.D.N.Y. 2018)) (internal citations omitted).

Thus, although Plaintiffs maintain that the "determinative or coercive effect" test does not apply here where Plaintiffs allege Donnelley was a direct cause of their injuries, even if it did, Plaintiffs have sufficiently alleged Donnelley's conduct had a "determinative or coercive effect" over Mediant's conduct such that Plaintiffs have sufficiently alleged Article III standing as to Donnelley.

### D. Plaintiffs Have Standing to Pursue Their Third-Party Beneficiary Claim.

As shown above, Defendants' standing arguments premised on the purported insufficiency of Plaintiffs' allegations that Donnelley and Mediant were legal partners in their provision of joint proxy services fails. Mediant's other challenges to Plaintiffs' standing to sue for breach of contract as third-party beneficiaries (which Donnelley incorporates by reference) also fail because they are improper merits challenges inappropriate under Rule 12(b)(1), and in any event, Plaintiffs have stated a claim even if the 12(b)(6) standard was applicable here.

Mediant first argues that a non-party or non-third-party beneficiary to a contract lacks standing to sue to enforce the contract. Doc. 66 at 4.[11] But Plaintiffs *allege they are* third-party beneficiaries to the alleged contracts at issue. Compl. ¶¶ 145-149. Mediant goes on to challenge whether Plaintiffs have sufficiently alleged *the elements* of a third-party beneficiary claim. Doc. 66 at 5-8 (citing state law cases for the elements of a third-party beneficiary claim); Doc. 68 at 13-14 n.3 (same). Mediant's attack on whether Plaintiffs have stated a claim must be rejected as a challenge to this Court's subject matter jurisdiction because if credited it "would allow any Rule 12(b)(6) motion to be restyled as a Rule 12(b)(1) standing motion." *Curtis v. Cenlar FSB*, No. 13

---

[11] Illustrating Mediant's confusion on the legal standard that applies here, Mediant cites cases decided under state law in purported support for this proposition, Doc. 66 at 4 (citing cases from state courts in New York, Florida, and California), but of course, state court jurisdiction is irrelevant here. Mediant also cites this Court's opinion in *CVS Pharmacy, Inc. v. Press Am., Inc.*, No. 1:17-CV-190-GHW, 2018 WL 318479, at *5 (S.D.N.Y. Jan. 3, 2018), Doc. 66 at 4, which also did not address Article III standing.

CIV. 3007 DLC, 2013 WL 5995582, at *2 (S.D.N.Y. Nov. 12, 2013). Accordingly, courts routinely reject challenges to their subject matter jurisdiction based on the sufficiency of breach of contract allegations. *See, e.g.*, *L-3 Commc'ns Corp. v. Serco, Inc.*, 673 F. App'x. 284, 289 (4th Cir. 2016) ("[B]y 'alleg[ing] the existence of a contract, express or implied, and a concomitant breach of that contract, [the plaintiff's] complaint adequately show[ed] an injury to her rights' for purposes of standing, even though she was not a party to the contracts in question and could not survive a motion to dismiss under Rule 12(b)(6)"); *Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012) (same); *see also Hall v. Assoc. Int'l Ins. Co.*, No. 11-CV-4013-JTM/DJW, 2011 WL 3299104, at *3 (D. Kan. Aug. 1, 2011), *aff'd*, 494 F. App'x 902 (10th Cir. 2012) ("[W]hen a plaintiff pursues a third-party beneficiary claim, his standing, as well as his claim, are dependent upon a showing that a certain provision of the contract operated to his benefit. Therefore, the question of Plaintiff's standing is intertwined with the merits of the case," and when "the jurisdictional question is intertwined with the merits of the case, the issue should be resolved under 12(b)(6) or Rule 56.").

Even if Mediant's challenge was appropriate under Rule 12(b)(1), Plaintiffs have sufficiently alleged the elements of a third-party beneficiary claim. Plaintiffs allege that Donnelley and Mediant entered into contracts with their investment funds, and other public companies and mutual funds, to perform their joint proxy services. Compl. ¶¶ 30, 37, 43, 145. They further allege that each of those contracts contained provisions requiring Mediant and Donnelley to protect their Personal Information and that those provisions were intentionally included for the direct benefit of Plaintiffs and Class Members, such that Plaintiffs and Class Members are intended third-party beneficiaries of those contracts. *Id.* ¶¶ 146-47. Plaintiffs allege that Defendants breached these

contracts by not protecting Plaintiffs' Personal Information and Plaintiffs were thereby damaged. *Id.* ¶¶ 148-49.

These allegations undoubtedly allege the elements of a third-party beneficiary claim, and Mediant does not actually contend otherwise. Instead, Mediant argues that Plaintiffs' allegations are insufficient because they were made on information and belief. But Plaintiffs' allegations must be credited—allegations on information and belief are permissible when the plaintiff has a basis to believe the allegation is true or the facts underlying the allegation are within the exclusive knowledge of the defendant. *See, e.g.*, *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.") (internal quotations and citations omitted); *Snoussi v. Bivona*, No. 05 CV 03133 RJD LB, 2010 WL 3924683, at *5 n.5 (E.D.N.Y. Sept. 29, 2010) (stating allegations made on information and belief "have been held to be permissible" and rejecting the defendants' contention that such allegations "should not be afforded the presumption of truth"); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 208 n.2 (N.D.N.Y. 2009) (stating even allegations of fraud, which are subject to heightened pleading requirements, may be made on information and belief for matters "peculiarly within the opposing party's knowledge" when "accompanied by a statement of facts upon which the belief is founded"); 5 Wright, & Miller, Federal Practice and Procedure § 1224. Donnelley's regulation under the Gramm-Leach Bliley Act (Compl. ¶¶ 83-86), for example, provides Plaintiffs a reasonable basis to believe the alleged contract provision is included in Defendants' contracts, but in advance of discovery, the existence and content of such contracts are matters within Defendants' exclusive knowledge.

Conversely, the cases Mediant relies on for its contention that third-party beneficiary claims alleged on information and belief are insufficiently pled (Doc. 66 at 6-7) are inapposite. *See Everlast World's Boxing Headquarters Corp. v. Trident Brands Inc.*, No. 19-CV-503 (JMF), 2020 WL 917058, at *4 (S.D.N.Y. Feb. 26, 2020) (concluding plaintiff had not stated a claim as a third-party beneficiary under Rule 12(b)(6) by alleging upon information and belief that two parties "had an agreement," but did not allege—at all—the terms of the agreement, that those terms manifested an intent to benefit the plaintiff, or that those terms were breached); *Ctr. for Discovery, Inc. v. D.P.*, No. 16CV3936MKBRER, 2018 WL 1583971, at *8 n.8 (E.D.N.Y. Mar. 31, 2018) (rejecting sufficiency of third-party beneficiary claim under Rule 12(b)(6) where the counter-claim defendants did not allege the nature of the purported contract and provided no explanation for their belief in the existence of the alleged contract, its terms, or why they should be considered third-party beneficiaries); *Greenwood Motor Lines, Inc. v. Godfather Trucking LLC*, No. EDCV1301640JGBSPX, 2014 WL 12689216, at *3 (C.D. Cal. July 18, 2014) (concluding plaintiff's third-party beneficiary allegations were insufficient, and therefore denying request for default judgment, where plaintiff alleged on information and belief that a contract existed, but did not allege any facts regarding the agreement or whether the contracting parties manifested an intent to benefit the plaintiff); *Natkin v. Am. Osteopathic Ass'n*, No. 3:16-CV-01494-SB, 2018 WL 452165, at *15 (D. Or. Jan. 17, 2018) (rejecting under Rule 12(b)(6) a third-party beneficiary claim where plaintiffs' allegations on information and belief did not provide any factual basis for plaintiffs' belief that they were third-party beneficiaries in an unidentified contract).

Thus, Plaintiffs have sufficiently alleged their third-party beneficiary claim, and Defendants' motion to dismiss this claim for lack of subject matter jurisdiction must be denied.

## **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss under 12(b)(1) must be denied.


Dated: September 23, 2020                    /s/ *J. Austin Moore*
                                             Norman E. Siegel (*pro hac vice*)
                                             J. Austin Moore (*pro hac vice* )
                                             Lindsay Todd Perkins (*pro hac vice*)
                                             **STUEVE SIEGEL HANSON LLP**
                                             460 Nichols Road, Suite 200
                                             Kansas City, Missouri 64112
                                             Telephone: (816) 714-7100
                                             siegel@stuevesiegel.com
                                             moore@stuevesiegel.com
                                             perkins@stuevesiegel.com

                                             Amanda Peterson (Bar No. AP1797)
                                             **MORGAN & MORGAN**
                                             90 Broad Street, Suite 1011
                                             New York, NY 10004
                                             Telephone: (212) 564-4568
                                             apeterson@forthepeople.com

                                             John A. Yanchunis (*pro hac vice*)
                                             **MORGAN & MORGAN**
                                             **COMPLEX LITIGATION GROUP**
                                             201 N. Franklin Street, 7th Floor
                                             Tampa, Florida 33602
                                             Tel.: 813-223-5505
                                             jyanchunis@forthepeople.com

                                             Patricia N. Syverson (*pro hac vice*)
                                             **BONNETT, FAIRBOURN, FRIEDMAN**
                                             **& BALINT, P.C.**
                                             600 W. Broadway, Suite 900
                                             San Diego, California 92101
                                             Telephone: (602) 274-1100
                                             psyverson@bffb.com

24

Elaine A. Ryan (*pro hac vice*)
Carrie A. Laliberte (*pro hac vice*)
**BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.**
2325 E. Camelback Road, #300
Phoenix, Arizona 85016
Telephone: (602) 274-1100
eryan@bffb.com
claliberte@bffb.com

*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered users.

*/s/ J. Austin Moore*