UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILLIP TORRETTO, DANIEL C. KING, and SHERI BRAUN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>DONNELLEY FINANCIAL SOLUTIONS, INC. and MEDIANT COMMUNICATIONS, INC.,<br><br>        Defendants. | Case No. 1:20-cv-02667-GHW |

**DEFENDANT MEDIANT COMMUNICATIONS INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................... 2

       A.     The Proxy Services ................................................................................... 2

       B.     The Incident ............................................................................................. 3

       C.     Plaintiffs' Damages Allegations. ............................................................... 4

III.   ARGUMENT ........................................................................................................ 5

       A.     Choice of Law Analysis for the Common Law Claims ............................. 5

       B.     Plaintiffs Fail to Allege the Essential Element of Damages ....................... 6

              1.     Plaintiffs' Allegations That They Will Be Damaged in the Future Do
                     Not Constitute Damages. ............................................................... 8

              2.     Plaintiffs' "Actual Fraud" Allegations are Insufficient. ............... 11

              3.     Plaintiffs' Time and Expense Damages are Insufficient. .............. 13

              4.     Plaintiffs' Loss of Value Allegations are Insufficient. .................. 16

              5.     Plaintiffs' Notification Damages Allegations are Insufficient. ...... 17

       C.     Plaintiffs Fail to Plead a Contract Claim Against Mediant ....................... 18

       D.     The Economic Loss Doctrine Bars Plaintiffs' Negligence Claims. .......... 19

       E.     Plaintiffs' Negligence Claims Fail for Failure to Plead Duty and Breach. .............. 20

       F.     Plaintiffs Fail to Allege Facts Sufficient to Support an Unjust Enrichment
              Claim ...................................................................................................... 22

       G.     Plaintiffs' Florida DUTPA Claim Fails. .................................................. 24

              1.     Florida's DUTPA Does Not Apply Extraterritorially. ................. 24

              2.     Braun Fails to Plead Facts Supporting the Elements of a Florida
                     DUTPA Claim. ........................................................................... 25

       H.     Torretto's UCL Claim Fails. .................................................................... 26

              1.     The UCL Does Not Apply Extraterritorially. ............................... 26

              2.     Torretto Fails to Plead a Viable UCL Claim. ............................... 27

       I.     Torretto's CRA Claim Fails. ................................................................... 29

       J.     The Declaratory Judgment Claim Is Subject to Dismissal. ...................... 30

IV.    CONCLUSION .................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.,*
  750 N.E.2d 1097 (N.Y. 2001) ............................................................................................19

*In re Adobe Sys., Inc. Privacy Litig.,*
  66 F. Supp. 3d 1197 (N.D. Cal. 2014).............................................................................29

*Anderson v. Hannaford Bros. Co.,*
  659 F.3d 151 (1st Cir. 2011) .............................................................................................8

*Anderson v. Kimpton Hotel & Rest. Grp., LLC,*
  No. 19-CV-01860-MMC, 2019 WL 3753308 (N.D. Cal. Aug. 8, 2019) ................... 21, 30

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).........................................................................................................20

*Attias v. CareFirst, Inc.,*
  365 F. Supp. 3d 1 (D.D.C. 2019) ...................................................................................7, 14

*Barbagello v. Marcum LLP,*
  820 F. Supp. 2d 429 (E.D.N.Y. 2011)..............................................................................23

*Bass v. Facebook, Inc.,*
  394 F. Supp. 3d 1024 (N.D. Cal. 2019)............................................................................12

*Beck v. McDonald,*
  848 F.3d 262 (4th Cir. 2017)...................................................................................9, 10, 14

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) .................................................................................................. 20, 21

*Black Radio Network, Inc. v. NYNEX Corp.,*
  No. 96 CIV. 4138 (DC), 2000 WL 64874 (S.D.N.Y. Jan. 25, 2000).................................19

*Blahous v. Sarrell Reg'l Dental Ctr. for Pub. Health, Inc.,*
  No. 2:19-CV-798-RAH-SMD, 2020 WL 4016246 (M.D. Ala. July 16, 2020).................15

*Borenkoff v. Buffalo Wild Wings, Inc.,*
  16-cv-8532 (KBF), 2018 WL 502680 (S.D.N.Y. Jan. 19, 2018) ....................................7, 15

*Braun v. Mediant Commc'ns, Inc.,*
  No. 19-62563-CIV, 2020 WL 5038780 (S.D. Fla. Apr. 14, 2020).....................................24

*Bytemark, Inc. v. Xerox Corp.*,
   342 F. Supp. 3d 496 (S.D.N.Y. 2018)........................................................................................24

*Cannova v. Breckenridge Pharm., Inc.*,
   No. 08-81145-CIV, 2009 WL 64337 (S.D. Fla. Jan. 9, 2009) ...........................................25

*Car Carriers, Inc. v. Ford Motor Co.*,
   745 F.2d 1101 (7th Cir. 1984) ...............................................................................................12

*Carnival Corp. v. Rolls-Royce PLC*,
   No. 08-23318-CIV-SEITZ, 2009 WL 3861450 (S.D. Fla. Nov. 17, 2009)........................24

*Caronia v. Philip Morris USA, Inc.*,
   5 N.E.3d 11 (N.Y. 2013) ..........................................................................................8, 13, 14

*CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus.*,
   No. 3:16-CV-186-J-34JRK, 2018 WL 905752 (M.D. Fla. Feb. 15, 2018)........................26

*Cherny v. Emigrant Bank*,
   604 F. Supp. 2d 605 (S.D.N.Y. 2009) ..............................................................................11, 12

*Christian Sanchez v. United States*,
   No. 13-cv-2536, JPS, 2015 WL 667521, at *2 (S.D.N.Y. Feb. 17, 2015).............................6

*Clifford R. Gray, Inc. v. LeChase Const. Servs., LLC*,
   819 N.Y.S.2d 182 (2006) .........................................................................................................22

*Corona v. Sony Pictures Ent., Inc.*,
   No. 14-CV-09600 RGK EX, 2015 WL 3916744 (C.D. Cal. June 15, 2015) ....................29

*Cruz v. TD Bank, N.A.*,
   855 F. Supp. 2d 157 (S.D.N.Y. 2012), *aff'd and remanded*, 742 F.3d 520 (2d Cir.
   2013).........................................................................................................................................22

*Davis v. RiverSource Life Ins. Co.*,
   240 F. Supp. 3d 1011 (N.D. Cal. 2017)...................................................................................6

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ....................................................................................................15

*Dolphin LLC v. WCI Cmtys., Inc.*,
   715 F.3d 1243 (11th Cir. 2013) ...............................................................................................25

*Duckett v. Williams*,
   86 F. Supp. 3d 268 (S.D.N.Y. 2015).........................................................................................6

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
   No. 316CV00014GPCBLM, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) (CRA)......6, 29

*Fero v. Excellus Health Plan,*
    236 F. Supp. 3d 735 (W.D.N.Y. 2017)................................................................16

*Fresno Motors, LLC v. Mercedes Benz USA, LLC,*
    771 F.3d 1119 (9th Cir. 2014) ....................................................................28

*In re Gen Motors LLC Ignition Switch Litig.,*
    257 F. Supp. 3d 372 (S.D.N.Y. 2017), *modified on reconsideration,* No. 14-MC-2543
    (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) ..........................................24

*Georgia Malone & Co.,*
    973 N.E.2d at 516 .........................................................................................23

*Georgia Malone & Co. v. Rieder,*
    973 N.E.2d 743 (N.Y. 2012)............................................................................22

*Glob Tech LED, LLC v. Hilumz Int'l Corp.,*
    No. 2:15-CV-553-FTM-29CM, 2016 WL 3059390 (M.D. Fla. May 31, 2016) ...............26

*Goodbys Creek, LLC v. Arch Ins. Co.,*
    No. 307-CV-947-J-33HTS, 2008 WL 2950112 (M.D. Fla. July 31, 2008).....................25

*Great White N. Franchisee Ass'n-USA, Inc. v. Tim Hortons USA, Inc.,*
    No. 20-CV-20878, 2020 WL 8024349 (S.D. Fla. Dec. 21, 2020)...............................26

*Green v. City of Mt. Vernon,*
    96 F. Supp. 3d 263 (S.D.N.Y. 2015)..................................................................10

*Hakim-Daccach v. Knauf Int'l GmbH,*
    No. CV 17-20495-CIV, 2017 WL 5634629 (S.D. Fla. Nov. 22, 2017) .........................24

*Hammond v. The Bank of New York Mellon Corp.,*
    No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ..................20

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,*
    4 A.3d 492 (ME 2010)...................................................................................12

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,*
    613 F. Supp. 2d 108 (D. Me. 2009), *aff'd in part, rev'd in part sub nom. on other*
    *grounds,* Anderson v. Hannaford Bros. Co., 659 F.3d 151 (1st Cir. 2011) ................11

*I Tan Tsao v. Captiva MVP Rest. Partners, LLC,*
    No. 8:18-CV-1606-T-02SPF, 2018 WL 5717479 (M.D. Fla. Nov. 1, 2018) ...................11

*Igen, Inc. v. White,*
    672 N.Y.S.2d 867 (1998) .................................................................................8

*Jantzer v. Elizabethtown Cmty. Hosp.,*
    No. 819CV00791BKSDJS, 2020 WL 2404764 (N.D.N.Y. May 12, 2020)...................9, 14

*In re Jetblue Airways Corp. Privacy Litig.*,
   379 F. Supp. 2d 299 (E.D.N.Y. 2005)..................................................................................16

*Jones v. Micron Tech. Inc.*,
   400 F. Supp. 3d 897 (N.D. Cal. 2019)................................................................................27

*Katz v. Pershing, LLC*,
   672 F.3d 64 (1st Cir. 2012) ................................................................................................10

*Keach v. BST & Co. CPAs, LLP*,
   71 Misc. 3d 1204(A) (N.Y. Sup. Ct. 2021)..............................................................9, 15, 17

*Klein v. Chevron U.S.A., Inc.*,
   202 Cal. App. 4th 1342 (2012) ..........................................................................................27

*Krottner v. Starbucks Corp.*,
   406 F. App'x 129 (9th Cir. 2010) (unpublished).......................................................7, 8, 15

*Kuhns v. Scottrade, Inc.*,
   868 F.3d 711 (8th Cir. 2017)...............................................................................................8

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011) ...............................................................................................12

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   739 F.3d 45 (2d Cir. 2013) ...................................................................................................6

*MacMillan v. Kavanaugh*,
   701 N.Y.S.2d 198 (1999) ......................................................................................................8

*Mandarin Trading Ltd. v. Wildenstein*,
   944 N.E.2d 1104 (N.Y. 2011) .............................................................................................23

*Medina v. Safe-Guard Prod.*,
   164 Cal. App. 4th 105 (2008), *as modified* (July 11, 2008) (UCL)......................................6

*Midway Labs USA, LLC v. S. Serv. Trading, S.A.*,
   No. 19 24857 CIV, 2020 WL 2494608 (S.D. Fla. May 14, 2020) .....................................26

*Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney General*,
   761 So.2d 1256 (Fla. Dist. Ct. App. 2000)........................................................................25

*Moss v. Infinity Ins. Co.*,
   197 F. Supp. 3d 1191 (N.D. Cal. 2016)..............................................................................29

*Mullins v. Premier Nutrition Corp.*,
   No. 13-1271-RS, 2018 WL 510139 (N.D. Cal. Jan. 23, 2018)...........................................29

*Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.,*
    187 So. 3d 868 (Fla. Dist. Ct. App. 2016)......................................................................26

*Old Republic Nat. Title Ins. Co. v. Cardinal Abstract Corp.,*
    790 N.Y.S.2d 143 (2005) ..............................................................................................22

*Palmer v. Amazon.com, Inc.,*
    No. 20-CV-2468 (BMC), 2020 WL 6388599 (E.D.N.Y. Nov. 2, 2020) ...........................8

*Pareto v. F.D.I.C.,*
    139 F.3d 696 (9th Cir. 1998)..........................................................................................21

*Pica v. Delta Air Lines, Inc.,*
    No. CV 18-2876-MWF (EX), 2018 WL 5861362 (C.D. Cal. Sept. 18, 2018)..........21, 30

*Pictometry Int'l Corp. v. Air Am. Flight Ctr., LLC,*
    394 F. Supp. 3d 320 (W.D.N.Y. 2019)............................................................................26

*Pisciotta v. Old Nat. Bancorp,*
    499 F.3d 629 (7th Cir. 2007).............................................................................................8

*Pruchnicki v. Envision Healthcare Corp.,*
    No. 2:19-CV-1193-JCM (BNW), 2020 WL 853516 (D. Nev. Feb. 20, 2020), *aff'd,*
    No. 20-15460, 2021 WL 1564241 (9th Cir. Apr. 21, 2021) .......................................9, 16

*Randolph v. ING Life Ins. & Annuity Co.,*
    486 F. Supp. 2d 1 (D.D.C. 2007) ...................................................................................14

*Razuki v. Caliber Home Loans, Inc.,*
    No. 17CV1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) .......21, 29, 30

*Reading Int'l, Inc. v. Oaktree Cap. Mgmt. LLC,*
    317 F. Supp. 2d 301 (S.D.N.Y. 2003)...............................................................................6

*Reilly v. Ceridian Corp.,*
    664 F.3d 38 (3d Cir. 2011) .............................................................................................15

*Remijas v. Neiman Marcus Grp.,*
    794 F.3d 688 (7th Cir. 2015)......................................................................................9, 15

*Rock v. Nat'l Collegiate Athletic Ass'n,*
    928 F. Supp. 2d 1010 (S.D. Ind. 2013)......................................................................12, 13

*Rollins, Inc. v. Butland,*
    951 So.2d 860 (Fla. Dist. Ct. App. 2006).......................................................................25

*Sackin v. TransPerfect Glob., Inc.,*
    278 F. Supp. 3d 739 (S.D.N.Y. 2017).............................................................................14

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*,
     131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020) ..........................................................................10, 15, 17, 20

*Sonner v. Premier Nutrition Corp.*,
     971 F.3d 834 (9th Cir. 2020).....................................................................................................28

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
     903 F. Supp. 2d 942 (S.D. Cal. 2012) ......................................................................................12

*Stagl v. Delta Airlines, Inc.*,
     52 F.3d 463 (2d Cir. 1995) .........................................................................................................6

*Steven v. Carlos Lopez & Assocs., LLC*,
     422 F. Supp. 3d 801 (S.D.N.Y. 2019).....................................................................................9, 15

*Sun Microsystems, Inc. v. Microsoft Corp.*,
     188 F.3d 1115 (9th Cir. 1999) ...................................................................................................28

*In re SuperValu, Inc.*,
     870 F.3d 763 (8th Cir. 2017) ...............................................................................................10, 22

*In re SuperValu, Inc.*,
     925 F.3d at 961, 965...................................................................................................................12

*Terpin v. AT&T Mobility*,
     LLC, 399 F. Supp. 3d 1035 (C.D. Cal. 2019) .........................................................................26

*Toretto v. Mediant Commc'ns, Inc.*,
     No. 19-CV-05208-EMC, 2020 WL 1288478 (N.D. Cal. Mar. 18, 2020) .........................27

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*,
     734 F. Supp. 2d 368 (S.D.N.Y. 2010) .....................................................................................19

*Wallace v. Health Quest Sys., Inc.*,
     No. 20 .............................................................................................................................8, 14, 16

*Washington v. LaSalle Bank Nat'l Ass'n*,
     817 F. Supp. 2d 1345 (S.D. Fla. 2011) ..................................................................6, 24, 25, 26

*Wayne Thomas Salon, Inc. v. Moser*,
     No. 603632/092010, 2010 N.Y. Misc. LEXIS 5015 (N.Y.Sup. Ct. Oct. 12, 2010) .....................23

*West v. JPMorgan Chase Bank, N.A.*,
     154 Cal. Rptr. 3d 285 (2013)....................................................................................................28

*Whalen v. Michael Stores, Inc.*,
     153 F. Supp. 3d 577 (E.D.N.Y. 2015), *aff'd* 689 F.App'x 89 (2d Cir. 2017) ............................ 14, 16

**Statutes**

Cal. Bus. & Prof. Code § 17203...................................................................................................28

Cal Bus & Prof. Code § 17204.....................................................................................................6

Cal. Civ. Code § 1798.80(c).........................................................................................................29

California Civil Code § 1798.81.5.................................................................................................27

California Civil Code § 1798.82....................................................................................................27

California Customer Records Act.............................................................................................*passim*

California Unfair Competition Law ...............................................................................................5

Florida Deceptive and Unfair Trade Practices Act........................................................................5

FTC Act..................................................................................................................................20, 22, 27

UCL........................................................................................................................................*passim*

**Rules**

Fed. R. Civ. P. 12(b)(6)..........................................................................................................*passim*

Defendant Mediant Communications Inc. ("Mediant") respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiffs' Second Amended Class Action Complaint (the "SAC" or the "Complaint").

## I.   PRELIMINARY STATEMENT

Phillip Toretto ("Toretto"), Daniel C. King ("King"), and Sheri Braun ("Braun") ("Plaintiffs") bring this putative class action in response to cybercriminals allegedly obtaining access to several business e-mail accounts of Mediant (the "Incident"). Plaintiffs allege that Mediant is hired by public companies and mutual funds as a proxy agent to distribute materials to shareholders, coordinate shareholder votes, and tabulate results. Plaintiffs do not allege any direct relationship with Mediant.

Plaintiffs bring eight claims all based on three conclusory allegations: (1) Several Mediant e-mail accounts were accessed; such that, (2) Mediant must not have had industry standard security practices; and therefore (3) Plaintiffs may suffer damages in the future. In support of their claims, Plaintiffs allege that "industry standard" information security protocols generally exist and that a successful cyberattack occurred, impacting several Mediant e-mail accounts. From these allegations, Plaintiffs ask this Court to speculate that unknown criminal hackers, of unknown skill and sophistication, hacked into several Mediant e-mail accounts because and only because Mediant's information security was deficient, and with the sole purpose of stealing their personal information. These are the exact type of threadbare allegations that courts consistently reject as insufficient to satisfy basic federal pleading standards.

In addition, Plaintiffs fail to plausibly allege they suffered any cognizable damages. Despite the passage of *over two years* since the Incident, Plaintiffs' 57-page Complaint includes just a few general allegations purporting to describe the named plaintiffs' individual experiences after the Incident, such as indeterminate lost time, future risk of injury, credit monitoring expenses, and clearly unrelated fraud.

But these types of allegations do not disclose the kind of damages courts find sufficient to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Finally, Plaintiffs' claims fail as a matter of law for additional reasons. The economic loss doctrine bars Plaintiffs' negligence claims. Torretto's Unfair Competition Law ("UCL") claim should be dismissed because he fails to allege a predicate violation of a statute, fails to allege an unfair business practice, and fails to establish as a matter of law that Mediant is subject to the UCL in the first place. Torretto's California Customer Records Act ("CRA") claim fails for lack of actual injury, fails to allege Mediant violated the statute, and fails because he is not a Mediant customer as the statute defines that term. Furthermore, Plaintiffs' contract claims do not plead the existence of any contract with Mediant, and their negligence *per se* claim lacks the necessary statutory predicate. Finally, their request for declaratory relief fails for lack of redressability.

Based on these arguments, as described below, as well as the applicable arguments offered by Donnelley, Mediant respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety.

## II.    FACTUAL BACKGROUND[1]

### A.    The Proxy Services

Defendants Donnelley and Mediant are separate companies that provide certain proxy services to mutual funds and publicly owned companies. (SAC ¶¶ 1, 9–10.) The proxy services include printing and distributing materials to shareholders, coordinating shareholder votes, and tabulating voting results. *Id.* To effectuate the distribution of materials and coordinate shareholder votes, Mediant collects shareholder data from the proxy services customers. (*Id.* ¶¶ 1, 85.) Notably, the Complaint alleges that in providing proxy services, *Donnelley*, not Mediant, entered into contracts with the funds in which Plaintiffs invested. Torretto alleges the information at issue here came from Blackstone Real Estate Income Trust, Inc. (2017 annual meeting) ("Blackstone") and that "Donnelley had the direct

---

[1] Mediant incorporates by reference Donnelley's description of the procedural history of this case.

contractual relationship with Blackstone." (SAC, ¶ 30.) King alleges the information at issue here came from Ivy Natural Resources Fund's 2019 proxy ("Ivy") and that "Donnelley had the direct contractual relationship with Ivy." (*Id.*, ¶ 37.) Braun alleges the information at issue here came from a real estate investment trust, and that "Donnelley had the direct contractual relationship with this real estate trust." (*Id.*, ¶ 43.)

B.  **The Incident**

Plaintiffs allege that "[o]n April 1, 2019, hackers obtained unauthorized access to Mediant's business email accounts and exfiltrated the personal information of [its] customers' investors." (SAC, ¶ 2.) Plaintiffs allege that the Personal Information included "names, genders, physical addresses, email addresses, phone numbers, Social Security Numbers, tax identification numbers, and bank account numbers," and various other types of information. (*Id.*) Plaintiffs assert without elaboration that "Mediant . . . is responsible for allowing the breach to occur by failing to implement and maintain reasonable safeguards and failing to comply with industry-standard data security practices." (*Id.*, ¶ 3.) Plaintiffs do not allege any facts regarding what information security protocols Mediant has in place, nor do they allege what information security failure led to the Incident. Instead, Plaintiffs merely allege that Mediant announced after the Incident that it would strengthen its information security, and then assume that this commitment proves Mediant's security was "not sufficient[ ]" prior to this announcement. (*Id.*, ¶ 23.)

Plaintiffs also do not allege any facts in support of their claim that any information was viewed, much less "exfiltrated." (*Id.*, ¶ 2 (asserting, without facts, that "hackers . . . exfiltrated [ ] personal information.") Nor do Plaintiffs allege any facts indicating the purpose behind the Incident. (*See generally* SAC.) Instead, Plaintiffs speculate that: (1) because an unknown third party had temporary access to several Mediant e-mail accounts, that party must have scoured through them with a particular purpose, and this purpose included identifying whether the e-mail accounts had the kind of personal

3

information Plaintiffs fear has been stolen (as opposed to say, a phishing attack designed to discover payment card information, employee payroll information, and/or employee tax information, etc.); (2) the attacker discovered all personal information that happened to be buried within these e-mail accounts, including Plaintiffs' information in particular; (3) the attacker successfully accessed or otherwise stole the personal information, including Plaintiffs' information; and (4) the attacker now has the means and intent to misuse the information (including Plaintiffs') and/or intends to facilitate its misuse. These speculative leaps are not supported by any factual allegations.

C.      **Plaintiffs' Damages Allegations.**

Plaintiffs allege that their damages flow from two sources: the theft of their Personal Information; and the deficient notice provided by Mediant. As to the former source, Plaintiffs present several allegations that purport to describe their experiences after the Incident. Torretto alleges that he has "expended time and effort" monitoring his accounts, including spending "many hours checking his accounts," and continuing expenditure of unspecified time "checking his accounts . . . for unauthorized activity." (*Id.*, ¶ 32.) He further alleges that he has received "a significant increase in spam-related telephone calls," and that he has spent approximately $450 on various information security measures. (*Id.*, ¶¶ 33–34.)

King alleges he has "expended time and effort" monitoring his accounts after the Incident, including "several hours" checking his accounts and an unspecified amount of time spent "daily to ensure there have been no unauthorized" changes or charges to his accounts. (*Id.*, ¶ 39.) King further alleges he experienced fraud on a retail card for which he was reimbursed. (*Id.*, ¶ 40.) Plaintiffs do not explain how retail payment card fraud could conceivably be linked to this Incident. Instead, King addresses this deficiency by alleging he was "informed by the retail credit card that it seemed likely the fraud had been perpetrated by an individual who did not have access to the card number" but instead had access to certain personal information that the individual "used to look up and use the retail credit

card." (*Id.*) King also claims that his personal information is less valuable after the Incident. (*Id.*, ¶ 41.)

Braun alleges that in May 2019 (but no other month) she received "almost daily phone calls from credit card companies" asking her whether she had contacted them to open new accounts. (*Id.*, ¶ 45.) Braun does not allege any unauthorized account has been opened, but explains that she has had to spend time dealing with the calls and "investigating her credit report." (*Id.*) Braun does not allege that these "investigations" have revealed any actual fraud. Braun does allege that her credit and/or personal information has been "compromised" or "damaged," but the Complaint does not reveal a factual basis for this allegation. (*Id.*, ¶¶ 50–51.) Braun also alleges that she installed a home security system, and that her personal information is less valuable. (*Id.*, ¶¶ 52–53.) The Plaintiffs each allege they are at risk of future injury. (*Id.*, ¶¶ 35, 41, 54.)

As to the notification allegations, Mediant can discern no alleged damages resulting from its notification program.

## III.   ARGUMENT[2]

Plaintiffs' purported claims for relief for Negligence (Count I), Negligence *Per Se* (Count II), Breach of Contracts as to which Plaintiffs Are Third-Party Beneficiaries (Count III), Unjust Enrichment (Count IV), Declaratory Judgment (Count V), and Violations of the California Customer Records Act (Count VI), California Unfair Competition Law (Count VII), and Florida Deceptive and Unfair Trade Practices Act (VIII) should be dismissed under Rule 12(b)(6).

### A.   Choice of Law Analysis for the Common Law Claims.

As argued in Donnelley's brief, which Mediant incorporates here by reference, Plaintiffs' contract claim is governed by Illinois (or New York) law. That analysis does not change as it relates to Mediant because Plaintiffs' contract claim arises out of alleged contracts with Donnelley only. (SAC,

---

[2] Mediant incorporates the standard of review section in Donnelley's brief.

¶¶ 30, 37, 43.) Mediant is alleged to be liable under Plaintiffs' contract theory only by virtue of its alleged partnership with Donnelley.[3]

Counts I, II, IV, and V as alleged against Mediant are governed by New York law. Again, incorporating Donnelley's argument by reference, "it is the place of the allegedly wrongful conduct that generally has superior interests[.]" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 50–51 (2d Cir. 2013). Plaintiffs allege that Mediant's predicate conduct, to the extent not governed by contract, all took place in New York, where Plaintiffs admit Mediant is headquartered. (SAC, ¶ 10).

### B.   Plaintiffs Fail to Allege the Essential Element of Damages.

Over two years have passed since the Incident occurred, yet Plaintiffs still cannot plead even a single *plausible* instance of fraud or potential fraud occurring as a result. Seven of Plaintiffs' eight claims require pleading damages. *See Medina v. Safe-Guard Prod.*, 164 Cal. App. 4th 105, 115 (2008), *as modified* (July 11, 2008) (UCL); *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 316CV00014GPCBLM, 2016 WL 6523428, at *10 (S.D. Cal. Nov. 3, 2016) (CRA); *Duckett v. Williams*, 86 F. Supp. 3d 268, 272–73 (S.D.N.Y. 2015) (breach of contract as third-party beneficiary); *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 467 (2d Cir. 1995) (negligence); *Christian Sanchez v. United States*, No. 13-CV-2536 JPS, 2015 WL 667521, at *2 (S.D.N.Y. Feb. 17, 2015) (negligence *per se*); *Washington v. LaSalle Bank Nat'l Ass'n*, 817 F. Supp. 2d 1345, 1350 (S.D. Fla. 2011) (FDUTPA); *Reading Int'l, Inc. v. Oaktree Cap. Mgmt. LLC*, 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003) (unjust enrichment). And Toretto's UCL claim even requires him to plead a specific type of injury: "lost money or property." Cal Bus & Prof. Code § 17204; *see also Davis v. RiverSource Life Ins. Co.*, 240 F. Supp. 3d 1011, 1017 (N.D. Cal. 2017). The lone exception is Plaintiffs' claim for declaratory relief. However, declaratory relief cannot be a standalone claim. (*See infra*, section J.) Accordingly, Plaintiffs' failure to plead damages in support

---

[3] Mediant disputes that it is in a legal partnership with Donnelley, and joins and incorporates Donnelley's argument that there is no partnership between Mediant and Donnelley. Attached as Exhibit A is the Declaration of William Lauricella, submitted in support of this argument.

of their claims requires total dismissal of their Complaint.

Mediant notes that data privacy litigation has emerged over the past decade, with many litigants choosing to focus on both standing and Rule 12(b)(6) pleading issues. Consequently, key legal analysis on damages and injury has often arisen in the standing context. As discussed below, some of the standing case law, although arising under a different threshold standard than that required for pleading an element of a claim under Rule 12(b)(6), should still constitute strong persuasive authority for the Court here. Under Article III's *lower* threshold, courts have developed important rules regarding what kinds of allegations sufficiently allege injury, and what kinds of allegations do not. Here, certain of Plaintiffs' scant damages allegations teeter on the edge of alleging facts in support of standing, and therefore Mediant elected to move to dismiss them pursuant to Rule 12(b)(6)'s *higher* threshold. Since the standard for alleging damages is higher as an element of a claim, Mediant's reliance on Article III cases dismissing similar cases or claims for lack of standing should constitute persuasive authority to assist the Court here in evaluating whether Plaintiffs have adequately pled damages. *See e.g.*, *Borenkoff v. Buffalo Wild Wings, Inc.*, 16-cv-8532 (KBF), 2018 WL 502680, at *2 (S.D.N.Y. Jan. 19, 2018) (noting that "the Second Circuit has held that [i]njury in fact is a low threshold, which . . . need not be capable of sustaining a valid cause of action." (alteration and omission in original) (internal quotation marks and citation omitted)); *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 9 (D.D.C. 2019) ("The D.C. Circuit's standing ruling does not control whether plaintiffs have alleged actual harm for purposes of their state-law claims" because "Plaintiffs may satisfy the Article III injury-in-fact requirement and yet fail to adequately plead damages for a particular cause of action."); *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (unpublished) ("[O]ur holding that Plaintiffs-Appellants pled an injury-in-fact for purposes of Article III standing does not establish that they adequately pled damages for purposes of their state-law claims.")

7

1.    **Plaintiffs' Allegations That They Will Be Damaged in the Future Do Not Constitute Damages.**

Plaintiffs allege that some unknown third-party actor gained access to several random Mediant email accounts, and buried within them (either within an e-mail or an attachment thereto) was Plaintiffs' information, which the unknown actor must have stolen. (SAC, ¶¶ 16, 19, 134.) Plaintiffs allege that this theft subjects them to the prospect of future damages. (*Id.*, ¶¶ 32–35, 39–41, 45–50, 52–54, 99.) Outside the data privacy context, New York law is clear that the mere prospect of future damages does not constitute actual damages sufficient to state a claim. *See, e.g., Igen, Inc. v. White*, 672 N.Y.S.2d 867, 869 (1998) ("The threat of future harm, not yet realized, is not enough."); *MacMillan v. Kavanaugh*, 701 N.Y.S.2d 198, 198 (1999) (same); *Caronia v. Philip Morris USA, Inc.*, 5 N.E.3d 11, 15 (N.Y. 2013) ("the threat of future harm not yet realized are *not compensable. . . .*") (emphasis original); *see also Palmer v. Amazon.com, Inc.*, No. 20-CV-2468 (BMC), 2020 WL 6388599, at *11 (E.D.N.Y. Nov. 2, 2020) (rejecting future harm allegations, and finding that "[t]he requirement that a plaintiff sustain physical harm before being able to recover in tort is a fundamental principle of New York State's tort system") (internal citations and quotations omitted). In *Caronia*, the New York Court of Appeals found that the prospect of *cancer* was insufficient to convert future harm into actual damages. *Caronia,* 5 N.E. 3d at 15. It is inconceivable that the prospect of fraud would weigh more heavily.

In fact, in the data privacy context, courts consistently reject "future damages" allegations where, as here, Plaintiffs fail to provide any factual support that their information: (1) was actually targeted; and (2) was thereafter misused. *Wallace v. Health Quest Sys., Inc.*, No. 20 CV 545 (VB), 2021 WL 1109727, at *8 (S.D.N.Y. Mar. 23, 2021) (Under New York law, "allegations that plaintiffs are at risk of future harm are insufficient to plead cognizable damages"); *see also Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 166 (1st Cir. 2011) (approving the argument that, in absence of allegations of misuse, "plaintiffs . . . lacked a reasonable basis for fearing" future misuse) (12(b)(6)); *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017) ("Massive class action litigation should be based on more than

8

allegations of worry and inconvenience.") (12(b)(6)); *Krottner*, 406 F. App'x at 131 ("[M]ere danger of future harm, unaccompanied by present damage, will not support a negligence action") (12(b)(6)); *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 639 (7th Cir. 2007) ("Without more than allegations of increased risk of future identity theft, the plaintiffs have not suffered a harm.") (12(c)); *Pruchnicki v. Envision Healthcare Corp.*, No. 2:19-CV-1193-JCM (BNW), 2020 WL 853516, *4 (D. Nev. Feb. 20, 2020) (dismissing with prejudice a claim that relied, in part, on the risk of future damages), *aff'd,* No. 20-15460, 2021 WL 1564241 (9th Cir. Apr. 21, 2021) (12(b)(6)).

Indeed, even under the lower standard of Article III, only where a plaintiff can allege *facts* about an attack that permit the inference that a criminal was particularly after their personal information, *and* that they obtained it, are damages flowing therefrom are considered legitimate. *See, e.g., Jantzer v. Elizabethtown Cmty. Hosp.*, No. 819CV00791BKSDJS, 2020 WL 2404764, at *5 (N.D.N.Y. May 12, 2020) ("Whether a third party intentionally targeted sensitive information is a factor courts consider in determining whether the risk of identity theft constitutes an injury-in-fact.") (standing); *Steven v. Carlos Lopez & Assocs., LLC*, 422 F. Supp. 3d 801, 805 (S.D.N.Y. 2019) ("By contrast, in the absence of an allegation or evidence that an unauthorized third party intentionally stole the data at issue, courts have concluded that the risk of identity theft is too speculative . . . .") (standing); *Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017) (discussing the targeting and misuse requirements) (standing). These *facts* take the form of the *mechanism of the theft*, as, for example, when the thief uses a device specifically designed to pilfer payment card information, or in the form of post-theft misuse of the information supposedly targeted, as, for example, when payment card information is alleged to have been stolen, and is thereafter fraudulently misused. *See, e.g.*, *Remijas v. Neiman Marcus Grp.*, 794 F.3d 688, 693 (7th Cir. 2015) (plaintiffs successfully pled thieves used a mechanism to steal payment card information and alleged that over *nine thousand* instances of payment card fraud occurred shortly after the Incident). Indeed, in just the past year, New York courts have twice emphasized this rule,

9

adding that where, as here, two or more *years* pass without allegations of actual misuse of the allegedly stolen data, courts should find that such a passage of time "weighs heavily against finding" future damages. *Keach v. BST & Co. CPAs, LLP*, 71 Misc. 3d 1204(A) (N.Y. Sup. Ct. 2021) (indicating that under New York law, courts should consider whether facts indicate particular information was targeted and thereafter misused) (standing); *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 822 (N.Y. Sup. Ct. 2020) (same) (standing).

New York is not alone. In *Beck*, the Fourth Circuit held that the plaintiffs' "future damages" allegations untethered from any plausible allegations of targeting or post incident fraud were entirely speculative, and thus insufficient to allege injury. 848 F.3d at 274-75 (standing); *see also In re SuperValu, Inc.*, 870 F.3d 763, 770 (8th Cir. 2017) (the mere possibility of future harm, without more, cannot qualify as damages, and noting that of "the 24 largest data breaches . . . only four were known to have resulted in some form of identity theft") (standing); *Katz v. Pershing, LLC*, 672 F.3d 64, 79–80 (1st Cir. 2012) (upholding dismissal where claim rested "entirely on the hypothesis that at some point an unauthorized, as-yet unidentified, third party might access her data and then attempt to purloin her identity . . ." finding that "[t]he conjectural nature of this hypothesis renders the plaintiff's case readily distinguishable from cases in which confidential data actually has been accessed through a security breach and persons involved in that breach have acted on the ill-gotten information") (standing).

Here, Plaintiffs do not provide any *factual* allegations that the Incident was targeted at their information. Instead, they simply assert, in conclusory fashion, that their personal information motivated the attack. (SAC ¶¶ 2, 16.) This Court may disregard conclusory allegations. *Green v. City of Mt. Vernon*, 96 F. Supp. 3d 263, 302 (S.D.N.Y. 2015) ("[C]onclusory allegations must be disregarded." (internal quotation marks and citation omitted)). As discussed below, they also do not sufficiently allege that the supposedly targeted information was misused after the Incident. There are no additional facts suggesting a particular type or set of information was targeted (much less, that Plaintiffs'

information was targeted), and Plaintiffs fail to allege any plausible instances of post-incident fraud that would allow an inference in their favor that their information was actually impacted. Without these allegations, Plaintiffs have failed to allege that their threat of future harm allegations are anything more than speculation. And in any event, as noted above, even if future harm were imminent this would not be sufficient to plead the *actual* damages required to state a claim under Rule 12(b)(6).

### 2.   Plaintiffs' "Actual Fraud" Allegations are Insufficient.

Plaintiffs attempt to convince the Court that they have each suffered fraud as a result of the Incident. But Plaintiffs do not plausibly plead any actual fraud following the Incident, and their attempts to do so should be viewed through the lens of the multiple opportunities they have had to amend their complaint, their prior opportunity to review Mediant's arguments for dismissal (in California, these issues were all briefed), and the *two years* that have passed since the Incident occurred.

Torretto begins the effort, alleging he has received "spam calls." (SAC, ¶¶ 33–34.) But receiving spam is a part of modern life, and though a nuisance, does not constitute actual damages. *See, e.g.*, *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) ("The receipt of spam by itself, however, does not constitute a sufficient injury entitling Cherny to compensable relief.") (standing); *see also In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 613 F. Supp. 2d 108, 134 (D. Me. 2009), *aff'd in part, rev'd in part sub nom. on other grounds*, *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011) ("[T]here is no way to value and recompense the time and effort that consumers spent in reconstituting their bill-paying arrangements or talking to bank representatives to explain what charges were fraudulent. Those are the ordinary frustrations and inconveniences that everyone confronts in daily life with or without fraud or negligence."); *I Tan Tsao v. Captiva MVP Rest. Partners, LLC*, No. 8:18-CV-1606-T-02SPF, 2018 WL 5717479, *2 (M.D. Fla. Nov. 1, 2018) ("[I]nconvenience, hassle, and nuisance of monitoring the situation caused by the data breach . . . amount to speculation of future, potential injury at best. *De minimus non curat lex*.").

Moreover, a spam call requires only a telephone number, and neither Torretto nor any of the plaintiffs allege any facts tying some third party's possession of their phone number to the Incident. *See, e.g.*, *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036 (N.D. Cal. 2019) ("[S]pam e-mails . . . simply occur to most, if not all, e-mail . . . users. They are too common and therefore cannot on their own establish causation here.") (standing). Indeed, the plaintiff in *Cherny*, though unsuccessful, had much stronger allegations, claiming that the spam he received was to a "unique e-mail address" that he created explicitly for correspondence with the defendant. *Id.* at 609. Plaintiffs do not so much as allege that they make any effort to keep their phone numbers private, much less that only Mediant possessed their numbers.

King follows, alleging two post-incident fraudulent charges on retail cards that were reimbursed. (SAC, ¶ 40.) To begin with, a reimbursed charge does not constitute actual damages. *In re SuperValu, Inc.*, 925 F.3d at 961, 965 (noting that the reimbursement of a charge would be fatal under 12(b)(6)); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 963 (S.D. Cal. 2012) (reimbursed charges insufficient to state a claim); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 4 A.3d 492, 495 (ME 2010) (reimbursed charges are not damages).

But King has a bigger problem: retail cards were not impacted in the Incident. His attempt to address this problem depends upon utterly implausible factual allegations, and this Court is not required to accept implausible allegations and/or unreasonable inferences, in particular those that contradict the everyday experience of modern life. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (plausibility requires drawing on "judicial experience and common sense" and does not require courts to accept unreasonable inferences); *Rock v. Nat'l Collegiate Athletic Ass'n*, 928 F. Supp. 2d 1010, 1022 (S.D. Ind. 2013) ("Even at the motion to dismiss stage, the Court will not 'don blinders' and 'ignore commercial reality'") (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1110 (7th Cir. 1984)). King alleges some unidentified employee of an unidentified "retail card" suggested to him

12

that the fraudulent charges were occasioned by someone who had his information, rather than access to his card and pin numbers. (SAC, ¶ 41.) He alleges that he was informed by this intrepid investigator that some unknown criminal probably used his information to "look up and use the retail credit card" at an unidentified store. (*Id.*) This is implausible. Perhaps a retailer or credit card company will close or open a credit card with sufficient biographical information, but retailers (and in particular separate retail stores) do not simply hand out credit card and pin numbers to individuals with biographical information, however extensive. King's allegations are a transparent effort to place unrelated alleged instances of fraud at Mediant's doorstep. The Court should disregard them.

Finally, Braun uses phrases that suggest her information has been "damaged" or "compromised," but these allegations are entirely conclusory. (*Id.*, ¶¶ 50–51.) At most, they equate alleged *attempts* at fraud with actual fraud. (*Id.*) This is insufficient. Indeed, Braun alleges that she spends time investigating her accounts, but discloses no actual fraud, and therefore this Court should infer that there has been none. (*Id.*, ¶¶ 45, 50–51.)

It has been two years, and as the foregoing makes clear, Plaintiffs cannot allege any plausible instances of post-Incident fraud, let alone allege (as they must) that the fraud was unreimbursed. Their Complaint should be dismissed.

### 3.   Plaintiffs' Time and Expense Damages are Insufficient.

Plaintiffs also allege that they have spent time and money responding to the Incident. (SAC ¶¶ 32–35, 39, 41, 45, 50, 52, 54.) But under "fundamental principle[s]" of New York tort law, where there is no actual injury, time and expense incurred to prevent future injury is not actionable at common law. *Caronia*, 5 N.E.3d at 14–15. Thus, the New York Court of Appeals has rejected medical monitoring after exposure to a carcinogen as a compensable category of damages where no actual

injury had yet been suffered by the plaintiff. *Caronia,* 5 N.E.3d at 14–19.[4] If the prospect of developing cancer cannot convert monitoring damages into actual damages, the prospect of experiencing fraud *a fortiori* cannot. The principle relied upon in *Coronia,* which is the majority rule in the United States, has consistently been relied upon in data breach cases to find injury-prevention-costs *inactionable* at common law where no actual misuse of the data in question has occurred. *See CareFirst, Inc.,* 365 F. Supp. at 16 ("Consistent with the weight of authority on this issue, the remaining plaintiffs who have not alleged actual misuse of their exposed personal information may not plead actual damages under a mitigation-cost theory."). This Court should follow that principle here.[5]

Indeed, in the data privacy space, where, as here, a plaintiff fails to establish actual injury, courts consistently find time and expense incurred fighting the *mere prospect* of future injury insufficient even to create Article III injury in fact where, as here, that prospect is not alleged to be imminent. *See Whalen v. Michael Stores, Inc.,* 153 F. Supp. 3d 577, 581 (E.D.N.Y. 2015), *aff'd* 689 F. App'x 89 (2d Cir. 2017) (summary order) ("Whalen also argues that she has standing because she lost time and money associated with credit monitoring and other mitigation expenses. But the Supreme Court has dismissed this type of argument, explaining that plaintiffs 'cannot manufacture standing[.]'"); *Jantzer v.*

---

[4] Moreover, though *Caronia* dealt with monitoring *expenses,* the rule announced naturally includes "time;" and it would be impossible to reconcile *Caronia*'s holding with a holding that time spent monitoring the prospect of future harm is compensable but money spent doing so is not.

[5] Recent data-breach decisions from this District finding that mitigation costs are recoverable as damages in the absence of actual data misuse completely ignore the controlling state law precedent set forth in *Caronia. See Sackin v. TransPerfect Glob., Inc.,* 278 F. Supp. 3d 739, 749 (S.D.N.Y. 2017) (finding that plaintiffs faced an imminent threat of identity theft and could therefore recover mitigation costs, but failing to cite any supporting state authority); *Wallace v. Health Quest Sys., Inc.,* No. 20 CV 545 (VB), 2021 WL 1109727, at *9 (S.D.N.Y. Mar. 23, 2021) (same). *Caronia* plainly states that only plaintiffs who have suffered present injuries may recover monitoring costs. *Caronia,* 22 N.Y.3d at 452. There is no reason this rule should not be applied in the data breach context, and *Sackin* and *HealthQuest* offer none. In any event, unlike in *Sackin* and *HealthQuest,* for the reasons discussed above, the risk of future harm is not imminent here as it was in those cases. *See Sackin,* 278 F. Supp. 3d 739 at 746 (finding imminent threat of future harm where a hacker, disguised as the company's CEO, sent a targeted phishing e-mail which explicitly requested and ultimately obtained W-2 and payroll information); *Health Quest Sys., Inc.,* 2021 WL 1109727, at *5 (finding imminent threat of future harm where cyber criminals gained access to patient names, dates of birth, Social Security numbers, driver's license numbers, financial account information, PIN numbers and security codes, payment card information, the names of plaintiffs' healthcare providers, dates of treatment, diagnosis information, and health insurance claims information via phishing attack).

14

*Elizabethtown Cmty. Hosp.*, No. 819CV00791BKSDJS, 2020 WL 2404764, at *5 (N.D.N.Y. May 12, 2020) ("Mitigation expenses do not qualify as actual injuries where the harm is not imminent."); *Beck*, 848 F.3d at 276–77 ("[T]hese self-imposed harms cannot confer standing."); *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 8 (D.D.C. 2007) (courts "clearly reject the theory that a plaintiff is entitled to reimbursement for credit monitoring services or for time and money spent monitoring his or her credit"); *see also Blahous v. Sarrell Reg'l Dental Ctr. for Pub. Health, Inc.*, No. 2:19-CV-798-RAH-SMD, 2020 WL 4016246, at *8 (M.D. Ala. July 16, 2020) ("[D]ata breach mitigation costs do not create an Article III injury for plaintiffs who allege speculative harms resulting from the poaching of their personal data"); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694 (7th Cir. 2015) ("Mitigation expenses do not qualify as actual injuries where the harm is not imminent.") (standing); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 46 (3d Cir. 2011) (declining to find standing where plaintiffs "prophylactically spent money to ease fears of future third-party criminality" where they did not allege that any potential use was "imminent" as opposed to "only speculative). Likewise, New York law is clear that lost time and expense damages in the data privacy space cannot even establish standing where, as here, years have gone by without any instances of fraud. *See Keach*, 71 Misc. 3d 1204(A); *see also Smahaj*, 131 N.Y.S.3d at 822; *Steven*, 422 F. Supp. 3d at 805. If the time and expenses allegations described above are insufficient to establish injury for standing purposes, they are certainly insufficient to establish injury actionable at common law. *See, e.g., Krottner*, 406 F. App'x at 141 ("As an initial matter, [a] holding that Plaintiffs-Appellants pled an injury-in-fact for purposes of Article III standing does not establish that they adequately pled damages for purposes of their state-law claims."); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264–65 (2d Cir. 2006) (noting that "exposure to toxic or harmful substances" alone "has been held sufficient to satisfy the Article III injury-in-fact requirement," while "exposure alone may not provide sufficient ground for a claim under state tort law"); *Borenkoff*, 2018 WL 502680, at *2 ("[T]he Second Circuit has held that [i]njury in fact is a low threshold, which . . . need not be capable

of sustaining a valid cause of action." (alteration and omission in original) (internal quotation marks and citation omitted)).

### 4.    Plaintiffs' Loss of Value Allegations are Insufficient.

Plaintiffs also assert that their information has suffered some indeterminate loss in value. (SAC ¶¶ 35, 41, 54, 91, 97.) Plaintiffs do not plausibly allege that the Incident caused their information to lose any of its value, or that their information in fact lost any value. Instead, they generally allege the existence of a black market for private information. (*Id.* at ¶ 91.) And they assert, in conclusory fashion, that their information in general has value. (*Id.* at ¶¶ 91, 97.) This does not suffice.

Plaintiffs fail to allege that "they could have monetized their private information, nor do they claim their private information was actually monetized on the black market." *Wallace*, 2021 WL 1109727, at *8 (rejecting as insufficient plaintiffs' allegations that their PII "could be sold for up to $90 on 'the black market,' concluding that plaintiffs "provide only speculative allegations regarding the value of their [PII] on that black market" and did not "plausibly allege their [PII] lost value as a result of the Data Breach"). Because Plaintiffs fail to allege any facts identifying the supposed value of their information or how that value has actually diminished following the Incident, they have failed to allege a recognized damage. *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 328 (E.D.N.Y. 2005) ("[Plaintiffs] do not, however, allege that the quality or value of their [PII] was in any way diminished as a result of defendants' actions, nor do they allege any facts that could sustain such a showing."); *Fero v. Excellus Health Plan*, 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017) ("[B]ecause Plaintiffs have not alleged any facts regarding how the data breach has led to a diminution in value of their personal information, there can be no standing on this basis.") (standing); *Whalen*, 153 F. Supp. 3d at 582 ("Simply stated, Whalen has failed to allege how her credit card information or PII became less valuable after the Security Breach.") (standing); *Pruchnicki*, 2020 WL 853516, at *6 (dismissing

claims where plaintiff failed to make any "specific allegations suggesting how the value of her personal information has been reduced) (12(b)(6)).

Moreover, Plaintiffs loss of value allegations place a different name on the same problem. As described above, Plaintiffs have failed to allege any facts suggesting their information was even targeted, much less stolen. (*Supra*, p. 2–5, 11–13.) If they fail to plead facts sufficient to indicate their information has been stolen, they likewise fail to plead that their information has lost value.

5.    **Plaintiffs' Notification Damages Allegations are Insufficient.**

Plaintiffs vaguely allege that Mediant delayed in providing notice of the Data Incident (SAC ¶¶ 5, 26, 177.). Braun adds that she spent time investigating the source of alleged attempts to open accounts in her name which, she claims, she would not have done had she received Mediant's notice sooner. (*Id.*, ¶47.) There are several problems with this "damages" theory.

First, Braun's lost time allegation does not constitute damages because lost time, standing alone, does not adequately allege damages. *Smahaj,* 131 N.Y.S.3d at 822; *Keach*, 71 Misc. 3d 1204(A).

Second, Plaintiffs do not allege that any fraud or other type of damage occurred because of any supposed delay in notification. Instead, they each allege that once they received notice, they all "expended time and effort regularly monitoring [their] financial and credit accounts in order to mitigate against potential harm." (*Id.*, ¶¶ 32, 39; *see also id.,* ¶¶ 47, 50.) Torretto and Braun, having every incentive to plead any fraud that they have discovered, have not done so. Only King alleges that he experienced any reimbursed fraudulent charges, but these charges came in July, two months after Mediant provided notification. (*Id.*, ¶ 40.) And he makes no allegations that these allegedly fraudulent charges were caused *by* any delayed notification. (*See id.*, ¶¶ 36–41.) Moreover, King admits he was reimbursed for these charges, and as discussed above, King does not plausibly connect these charges to the Incident. (*See id.*, ¶ 40.) Plaintiffs have failed to plead any damages associated with any delayed notification.

17

### C.     Plaintiffs Fail to Plead a Contract Claim Against Mediant.

As explained in Donnelley's brief, Plaintiffs fail to plausibly allege a contract claim against the supposed "Partnership." To the extent Plaintiffs intended to assert that claim against Mediant in its individual capacity, the claim likewise fails. Plaintiffs each allege that they are third-party beneficiaries to contracts between Donnelley and the funds in which they invested. Toretto alleges the information at issue here came from Blackstone Real Estate Income Trust, Inc. (2017 annual meeting) ("Blackstone") and that "Donnelley had the direct contractual relationship with Blackstone." (SAC, ¶ 30.) King alleges the information at issue here came from Ivy Natural Resources Fund's 2019 proxy ("Ivy") and that "Donnelley had the direct contractual relationship with Ivy." (Id., ¶ 37.) Braun alleges the information at issue here came from a real estate investment trust, and that "Donnelley had the direct contractual relationship with this real estate trust." (Id., ¶ 43.) Later, as part of their contract claim, Plaintiffs allege that "[i]n some instances . . . Mediant also directly contracted with public companies." (*Id.*, ¶ 145.) However, Plaintiffs' contract claim incorporates by reference Paragraphs 30, 37, and 43 of the Complaint, and Plaintiffs never clarify or correct their allegation that Donnelley, not Mediant, had the direct contractual relationships with the funds at issue in this litigation; i.e., the funds to which the named plaintiffs provided their information. And the named Plaintiffs cannot rely on the general allegations of absent class members to save their claims. *See e.g., Gentry v. Hyundai Motor Am., Inc.*, No. 3:13-CV-00030, 2017 WL 1289050, at *3 (W.D. Va. Apr. 6, 2017).

As a result of the foregoing, Plaintiffs have no independent third-party beneficiary claim against Mediant because Plaintiffs do not allege that a first-party contract exists between Mediant and Blackstone, Ivy, and/or the real estate investment trust. *See Stevens v. Goord*, 535 F. Supp. 2d 373, 390 (S.D.N.Y. 2008) ("Under New York State law, a party claiming rights as a third-party beneficiary must [first] demonstrate . . . the existence of a valid and binding contract between other parties[.]"); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 419 (S.D.N.Y. 2010) ("[T]he [e]xistence of a valid and

binding contract is, thus, a sine qua non" to a third-party beneficiary breach of contract claim.); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 451 N.E.2d 459, 470 (N.Y. 1983) (same). Accordingly, Plaintiffs' contract claim depends entirely on Plaintiffs' ability to establish joint liability between Mediant and Donnelley via their partnership theory, which they cannot do. (*See* fn 3.) Donnelley addresses this issue in its briefing, and Mediant incorporates those arguments by reference. (*Id.*)

### D.   The Economic Loss Doctrine Bars Plaintiffs' Negligence Claims.

New York's economic loss doctrine is clear that purely economic losses are not recoverable in negligence absent a "special relationship," which is not created by the mere foreseeability of harm. *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1101 (N.Y. 2001). Here, Plaintiffs seek only economic loss, and they do not allege any "special relationship" with Mediant. (SAC, ¶¶ 32–34, 39–40, 47, 49–50, 52, 99; *see, generally* SAC.) Indeed, Plaintiffs have no relationship with Mediant and have admitted before this Court that, prior to the incident, they had never *heard* of Mediant. (Dkt. 47, p. 9.) Accordingly, under clear and controlling New York law, Plaintiffs cannot assert their negligence claims against Mediant.

Additionally, while contractual privity is not enough to establish a special relationship, the fact that there is no privity between Plaintiffs and Mediant further establishes that there is no basis for Plaintiffs to avoid application of the economic loss doctrine. *Black Radio Network, Inc. v. NYNEX Corp.*, No. 96 CIV. 4138 (DC), 2000 WL 64874, at *4 (S.D.N.Y. Jan. 25, 2000) ("[W]here a plaintiff alleges only economic damages resulting from a defendant's alleged negligence, the plaintiff may not recover from the defendant if they are not in contractual privity."); *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*, 734 F. Supp. 2d 368, 379 (S.D.N.Y. 2010) ("New York Courts have concluded that '[a]bsent a duty running directly to the injured person there can be no liability in damages, **however careless** the conduct **or foreseeable** the harm," noting that Plaintiffs should have brought

a breach-of-contract claim against "its counterparty, DASNY, rather than against parties with whom [it] did not enter into contract.") (emphasis added).

### E.   Plaintiffs' Negligence Claims Fail for Failure to Plead Duty and Breach.

Plaintiffs' negligence claim fails because Plaintiffs failed to plead damages and/or it is barred by the economic loss doctrine. (*See supra*, sections B, D.) In addition, Plaintiffs' negligence claim requires pleading the breach of a legal duty owed to plaintiffs. *Smahaj*, 131 N.Y.S.3d at 824. Plaintiffs have failed to adequately plead these elements. Plaintiffs allege Mediant breached its "common law, statutory, and other duties" to Plaintiffs by "failing to implement security systems . . . sufficient to protect Plaintiffs' . . . information . . . failing to comply with industry data security standards . . . [and] failing to comply with statutory . . . safeguards." (SAC, ¶ 128(a)-(c)).[6]

To begin with, Plaintiffs had no direct dealings (or any form of relationship) with Mediant, and therefore Mediant did not owe them any common law duty to protect their information. *Hammond v. The Bank of New York Mellon Corp.*, No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307, at *9 (S.D.N.Y. June 25, 2010) (no duty to protect plaintiffs' data where plaintiffs had given their personal information to institutional clients of defendant, which in turn transferred data to defendant). Plaintiffs also arguably attempt to base their negligence claims on statutory duties, but this effort fails. Plaintiffs cite the FTC Act, but it does not contain a private right of action, and therefore cannot provide the basis for a negligence claim. *See, e.g.*, *Smahaj*, 131 N.Y.S.3d at 827. Plaintiffs cite to other California and Florida statutes, but those efforts also fail for the reasons discussed below.

Additionally, Plaintiffs fail to plead a breach, and instead present conclusory allegations that Mediant must have breached a duty because the Incident occurred. Courts considering nearly identical allegations have concluded that they are no more than "[t]hreadbare recitals" and "conclusory

---

[6] Plaintiffs also allege that Mediant's supposed untimely disclosure constitutes a breach of its duties, but they do not allege how, and in any event, they fail to allege any damages associated with the timing of the disclosure.

allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). In *Razuki*, identical allegations were rejected under the *Twombly* standard, with the court finding that the plaintiff failed to plead "what made [the defendant's] security measures unreasonable" and/or "[w]hat facts lead [the plaintiff] to believe [the defendant] didn't comply with industry standards." *Razuki v. Caliber Home Loans, Inc.*, No. 17CV1718-LAB (WVG), 2018 WL 6018361, at *1 (S.D. Cal. Nov. 15, 2018); *see also Anderson v. Kimpton Hotel & Rest. Grp., LLC*, No. 19-CV-01860-MMC, 2019 WL 3753308, at *5 (N.D. Cal. Aug. 8, 2019) (dismissing CRA claim because "plaintiffs fail to allege any facts in support of their conclusory assertion that [defendant] fail[ed] to implement and maintain reasonable security procedures and practices"). The *Razuki* court found that these pleading deficiencies amounted to "basic questions," and that by simply citing industry standards and asserting noncompliance with those standards, as Plaintiffs do here, the plaintiff was "simply recit[ing] a few buzz words with the hope that he may be able to figure out later what, if anything, [the defendant] has done wrong." *Id.* at *2. At minimum, the court found, a data breach plaintiff must plead facts "lead[ing] [them] to believe [the defendant] didn't comply with industry standards." *Id.* Without requiring such facts, the court continued, data breach plaintiffs would be free to assert "largely groundless claim[s]," thereby exposing defendants to "enormous expense" and "without a . . . showing from the [p]laintiff that [they] have a plausible case." *Id. Twombly* requires more, especially with the looming costs and complexities attendant to a "large-scale class action." *Id.* Similarly, another federal court found that the "conclusory assertion[s]" that a defendant "fail[ed] to implement and maintain reasonable security procedures and practices" are precisely the kind of allegations that *Twombly* prohibits. *Anderson*, 2019 WL 3753308, at *5; *see also Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF (EX), 2018 WL 5861362, at *7 (C.D. Cal. Sept. 18, 2018) (finding plaintiff failed to plead with "sufficient particularity [regarding] how and why [a] [d]efendant's security practices and procedures [were] sub-standard").

21

Here, like in those cases, Plaintiffs' allegations are boilerplate, alleging Mediant breached its common law duties to Plaintiffs simply because the Incident occurred. There is no absolute duty to prevent third-party criminal conduct, and Plaintiffs' allegations provide no *facts* regarding Mediant's supposed insufficient data security.

Moreover, "[w]here a statute does not imply a private right of action for money damages, the plaintiff may not restate the identical claim under a negligence theory." *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 178 (S.D.N.Y. 2012), *aff'd and remanded*, 742 F.3d 520 (2d Cir. 2013). Accordingly, to the extent Plaintiffs predicate their negligence claim on alleged statutory duties imposed by the FTC Act, such an effort must fail because the FTC Act does not permit a private right of action. *See SuperValu Inc.*, 925 F.3d at 963–64 (rejecting negligence-based duty under FTC Act for this reason).

### F.      Plaintiffs Fail to Allege Facts Sufficient to Support an Unjust Enrichment Claim.

As explained in Donnelley's brief, Plaintiffs fail to plausibly allege unjust enrichment against the supposed "Partnership." To the extent Plaintiffs intended to assert that claim against Mediant in its individual capacity, the claim likewise fails. Unjust enrichment claims require alleging: (1) Mediant was enriched; (2) at Plaintiffs' expense; and (3) it would be "against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743 (N.Y. 2012). At its core, an unjust enrichment claim arises out of a defendant's possession "of money or property that rightly belongs to" the plaintiff." *See Clifford R. Gray, Inc. v. LeChase Const. Servs., LLC*, 819 N.Y.S.2d 182, 187 (2006). Plaintiffs have not alleged these elements.

First, Plaintiffs allege, without any factual support, that because they "have an interest, both equitable and legal, in" their PII, Mediant has been "unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class Members" by Plaintiffs' "conferral upon the Partnership" of the PII. (SAC ¶¶ 152–56.) But bare allegations that Mediant "received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment." *Old Republic Nat. Title Ins.*

*Co. v. Cardinal Abstract Corp.*, 790 N.Y.S.2d. 143, 145 (2005). Plaintiffs do not set forth any allegation that indicates Mediant was enriched *by their information*.

Second, Plaintiffs fail to allege that Mediant was enriched *at their expense*, because they fail to allege that they have a relationship with Mediant. Instead, Plaintiffs concede that they did not pay anything to Mediant nor did the funds in which they invest contract with Mediant. (*See* SAC, ¶¶ 145–147 (admitting that any alleged contracts were between Donnelley and/or Mediant and various "public companies and mutual funds," not with Plaintiffs); *see id.*, ¶¶ 30, 37, 43 (conceding that the named Plaintiffs did not invest in any funds which had any alleged contracts with Mediant).) And, an unjust enrichment claim will not lie "unless [plaintiffs establish they] ha[ve] a sufficiently close relationship with the other party." *Georgia Malone & Co.*, 973 N.E.2d at 516; *see also Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1111 (N.Y. 2011) ("Mandarin's unjust enrichment claims for the same deficiency as its other claims—the lack of allegations that would indicate a relationship between the parties, or at least an awareness by" the defendant of the plaintiff's existence.). "Although privity is not required for an unjust enrichment claim," a claim for unjust enrichment "will not be supported if the connection between the parties is too attenuated. . . . It is not enough for a plaintiff to allege that a defendant 'simply knew of the plaintiff's existence' or 'may have profited, in one form or another, from plaintiff's work." *See Barbagello v. Marcum LLP*, 820 F. Supp. 2d 429, 447–48 (E.D.N.Y. 2011) (internal citations omitted); *see also Wayne Thomas Salon, Inc. v. Moser*, No. 603632/092010, 2010 N.Y. Misc. LEXIS 5015, *12–13 (N.Y.Sup. Ct. Oct. 12, 2010) (dismissing unjust enrichment claim where plaintiffs alleged the defendants had "improperly reaped significant benefits" because the plaintiffs failed to allege "that the *plaintiff itself* conferred any benefit upon the [] defendants") (emphasis added).

Because Plaintiffs do not allege that they had even heard of Mediant prior to the Incident, much less contracted with Mediant, any alleged relationship between Mediant and Plaintiffs is too

attenuated to support their unjust enrichment claim.[7]

G.     **Braun's Florida DUTPA Claim Fails.**

1.     **Florida's DUTPA Does Not Apply Extraterritorially.**

Florida's DUTPA only applies to conduct that occurred in Florida. *Hakim-Daccach v. Knauf Int'l GmbH*, No. CV 17-20495-CIV, 2017 WL 5634629, at *7 (S.D. Fla. Nov. 22, 2017) (dismissing claim where plaintiff failed to allege "that any of the complained of acts occurred in Florida," because the "FDUTPA applies only to action that occurred within the state of Florida"). The United States District Court for the Southern District of Florida has already held that none of the conduct that gives rise to this action occurred in Florida. *Braun v. Mediant Commc'ns, Inc.*, No. 19-62563-CIV, 2020 WL 5038780, at *3 (S.D. Fla. Apr. 14, 2020) (dismissing for lack of personal jurisdiction). And that court had the benefit of reviewing evidence. *Id.* (indicating "Defendant has presented evidence that its business email is supported, staffed, and maintained in North Carolina.") Moreover, Plaintiffs' complaint in this case is devoid of any facts supporting that any alleged conduct on the part of Mediant occurred in Florida.

The only allegation that even arguably suggests a connection to Florida is Plaintiffs' allegation that Mediant "advertised, offered, or sold goods or services in Florida," but this misunderstands the Act's application. It is not enough for Plaintiffs to allege that Mediant has some contacts in Florida. Instead, they must allege that the complained-of acts took place in Florida. *See, e.g., Carnival Corp. v. Rolls-Royce PLC*, No. 08-23318-CIV-SEITZ, 2009 WL 3861450, at *6 (S.D. Fla. Nov. 17, 2009) (allegations that the "Defendant conducted trade or commerce in the state of Florida," was not enough

---

[7] In any event, this claim should be dismissed as entirely duplicative. *See e.g., Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 511–12 (S.D.N.Y. 2018) ("[U]njust enrichment is not a catchall cause of action to be used when other fail," and "is not available where it simply duplicates, or replaces, a conventional contract or tort claim."); *In re Gen Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 433–34 (S.D.N.Y. 2017) (dismissing plaintiffs' unjust enrichment claim "[b]ecause they ha[d] adequate remedies at law, noting "[t]he Second Circuit has repeatedly reaffirmed that unjust enrichment under New York law 'is an equitable claim that is unavailable where an adequate remedy at law exists'"), *modified on reconsideration*, No. 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017). It is not a requirement that Plaintiffs other claims must succeed, just that the legal remedy is available. *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 433 (S.D.N.Y. 2017), *modified on reconsideration*, No. 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017).

because the "FDUTPA applies only to action that occurred within the state of Florida," requiring plaintiffs to allege that any violation of the Act was "based entirely on actions that occurred within Florida"); *Millennium Comm'ns & Fulfillment, Inc. v. Office of Attorney General*, 761 So.2d 1256, 1262 (Fla. Dist. Ct. App. 2000) ("FDUTPA applies only to action that occurred within the state of Florida. Consequently, Plaintiffs' claim that Defendants violated FDUTPA must be based entirely on actions that occurred within Florida." (internal citations omitted)).

### 2.   Braun Fails to Plead Facts Supporting the Elements of a Florida DUTPA Claim.

Even if Florida's DUTPA applied to the conduct at issue here, Braun nevertheless fails to allege an actual violation of the Act. To allege a violation, a plaintiff "must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *See Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). Braun's claim fails for three reasons.

First, Braun has not alleged facts which could plausibly establish that Mediant engaged in any "unfair trade practice." (*See* SAC, ¶ 191.) An unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006) (internal citation omitted). Aside from reciting the definition of an unfair practice in conclusory fashion, Braun provides no facts which could plausibly support such an inference.

Second, Braun does not allege that she purchased any goods or services from Mediant. (*See* SAC, ¶¶ 42–43, 190.) "Only consumers may bring a private suit under FDUTPA," and "Florida courts have interpreted 'consumer' to mean an individual or entity that is a 'purchaser' of goods or services." *Goodbys Creek, LLC v. Arch Ins. Co.*, No. 307-CV-947-J-33HTS, 2008 WL 2950112, at *9 (M.D. Fla. July 31, 2008). Braun's failure to provide any facts establishing that she purchased any goods or services *from* Mediant requires dismissal of her claim. *See, e.g., Cannova v. Breckenridge Pharm., Inc.*, No. 08-81145-CIV, 2009 WL 64337, at *3 (S.D. Fla. Jan. 9, 2009) ("Florida case law since the 1993

amendments still requires the plaintiff act in some manner as a consumer in the conduct of trade or commerce.").[8]

Finally, as discussed above, Braun fails to allege any "actual damages." (*See supra,* section B.) And her allegations of hypothetical future losses are not recognized damages under the Florida DUTPA. *See Midway Labs USA, LLC v. S. Serv. Trading, S.A.*, No. 19 24857 CIV, 2020 WL 2494608, at *4 (S.D. Fla. May 14, 2020) ("While Exicon claims that it 'will continue to suffer' lost profits, future lost profits are consistently considered to be consequential damages that cannot be recovered under FDUTPA."); *see also Glob Tech LED, LLC v. Hilumz Int'l Corp.*, No. 2:15-CV-553-FTM-29CM, 2016 WL 3059390, at *3 (M.D. Fla. May 31, 2016) ("For the purpose of recovery under FDUTPA, 'actual damages' do not include consequential damages, precluding recovery of lost profits."). Nor does Braun plead a likelihood of future harm as required for injunctive or declaratory relief. *See Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.*, 187 So. 3d 868, 870 (Fla. Dist. Ct. App. 2016); *Great White N. Franchisee Ass'n-USA, Inc. v. Tim Hortons USA, Inc.*, No. 20-CV-20878, 2020 WL 8024349, at *5 (S.D. Fla. Dec. 21, 2020). This Court should dismiss Braun's Florida DUTPA claim.

## H.     Torretto's UCL Claim Fails.

### 1.     The UCL Does Not Apply Extraterritorially.

Torretto's UCL claim fails because he does not allege that any of Mediant's purportedly unlawful conduct occurred in California; the UCL does not have extraterritorial effect. *See Terpin v. AT&T Mobility*, LLC, 399 F. Supp. 3d 1035, 1047 (C.D. Cal. 2019) (dismissing UCL claim based on

---

[8] Though some courts have allowed Florida DUTPA claims where the plaintiff itself was not the consumer, these courts still require plaintiffs to allege that there was a "consumer injury." See *Pictometry Int'l Corp. v. Air Am. Flight Ctr., LLC*, 394 F. Supp. 3d 320, 340 (W.D.N.Y. 2019) (dismissing FDUTPA claim where plaintiff failed to allege it was a "consumer" or that there was a "consumer injury" "to any entity other than itself"); *see also CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus.*, No. 3:16-CV-186-J-34JRK, 2018 WL 905752, at *15 (M.D. Fla. Feb. 15, 2018) ("That an entity other than a consumer can bring a FDUTPA claim does not mean, however, that harm to consumers is not required." (internal quotation marks and alteration omitted)). Braun's allegations are devoid of any facts establishing that there was harm to any of Mediant's consumers, as such, her claim must fail. See *Pictometry Int'l Corp.*, 394 F. Supp. 3d at 340 ("Here, Air America has not alleged injury . . . to any entity other than itself . . . [a]ccordingly, the Court finds that Air America has not stated a viable FDUTPA claim.").

phone-hacking incident because California plaintiff did not adequately allege that the liability-creating conduct occurred in California). Indeed, and as with Braun's claim, a federal district court has already found that Torretto's claims "have no casual or proximate relationship to Mediant's indirect contact with California companies" and that his claims do not arise out of any conduct by Mediant occurring in California *Torretto v. Mediant Commc'ns, Inc.*, No. 19-CV-05208-EMC, 2020 WL 1288478, at *6 (N.D. Cal. Mar. 18, 2020).

Here, Torretto does not allege otherwise and how could he: Mediant is in New York; it has never had any contact with Torretto; and Torretto alleges Mediant received his information from Blackstone, which maintains its headquarters in New York. *Id.* at *6.

### 2.    Torretto Fails to Plead a Viable UCL Claim.

Even if the UCL did apply to conduct occurring outside California, Torretto fails to plead facts showing that Mediant committed "unfair" or "unlawful" conduct within the meaning of the UCL. Where, as here, a complaint asserts a claim under the "unlawful" prong, the law "borrows violations of other laws" and "makes those unlawful practices actionable under the UCL." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012) (internal quotation marks and citation omitted). Such a claim is "predicated on a violation of a separate statute or common law regime" and if such "violations are insufficiently pled, it follows that Plaintiffs have failed to sufficiently plead a violation of the UCL." *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 923 (N.D. Cal. 2019). Here, Torretto premises his UCL unlawfulness claim on the alleged violation of California Civil Code § 1798.81.5 and California Civil Code § 1798.82 as well as the FTC Act, and "California common law." (SAC, ¶ 184.) However, as discussed in Section E *supra,* Plaintiffs fail to adequately allege that Mediant violated any common laws, and their allegations of breach are entirely conclusory as discussed in Section E. Moreover, to the extent this claim is predicated on Torretto's CRA claim, it fails for the reasons discussed in Section H.2.I *infra.*

27

Nor does Torretto allege sufficient facts to establish the elements of any of the tests for "unfairness" utilized by California courts. California utilizes three different tests for "unfairness" under the UCL: (1) "the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided[;]" (2) the practice "offends an established public policy or … the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers[;]" and (3) "the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." *West v. JPMorgan Chase Bank, N.A.*, 154 Cal. Rptr. 3d 285, 305 (2013). Torretto does not plead any facts in support of these elements.

Moreover, a plaintiff bringing an action under the UCL is permitted to obtain as a remedy only injunctive and restitutionary relief. *See* Cal. Bus. & Prof. Code § 17203; *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014). Here, even assuming the SAC alleged some loss of money or property by Plaintiff Toretto, it alleges no such loss by Plaintiff Torretto *to Defendants*. That being the case, restitution is unavailable. *See Fresno Motors*, 771 F.3d at 1135 ("The restitutionary relief is limited to money or property lost by the plaintiff and acquired by the defendant.") (emphasis added).

Plaintiff Torretto is likewise not entitled to an injunction under the UCL. All the activity he alleges to have been unlawful and unfair occurred in the past. Under the UCL, "a plaintiff cannot receive an injunction for past conduct unless he shows that the conduct will probably recur." *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1123 (9th Cir. 1999). The SAC contains no allegations showing that Donnelley currently is, or in the future will be, engaging in unlawful activity.

Moreover, Plaintiffs cannot obtain the equitable remedies called for by the UCL because Plaintiffs have an adequate remedy at law, *see Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), and this is true even though plaintiffs' claims for money damages should be dismissed as

well, since the question is not whether Plaintiff is likely to be "successful" in his legal claims, but whether—assuming the claims could prevail—the available remedy would be "adequate." *Mullins v. Premier Nutrition Corp.*, No. 13-1271-RS, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018), *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016).

I.      **Torretto's CRA Claim Fails.**

The CRA creates a private right for customers damaged by untimely breach notifications. *Corona v. Sony Pictures Ent., Inc.*, No. 14-CV-09600 RGK EX, 2015 WL 3916744, at *6–7 (C.D. Cal. June 15, 2015). Here, Torretto is not a Mediant customer, he suffered no damages, and he fails to allege a violation of the statute.

The CRA defines "customer" as "an individual who provides personal information to a business for the purpose of purchasing or leasing a product or obtaining a service from the business." Cal. Civ. Code § 1798.80(c). Torretto alleges he is a Blackstone customer, and concedes Mediant had no relationship with Blackstone. (SAC, ¶¶ 30.) He does not allege that he is a Mediant customer, or that he provided Mediant anything for any purpose. Accordingly, Torretto's CRA claim fails. *Corona*, 2015 WL 3916744, at *7 (finding it "clear that the statute intends to protect California residents in their role [sic] customers," and dismissing with prejudice a CRA claim where plaintiffs did not allege they were a customer).

Torretto's CRA claim also fails because he cannot connect any of his alleged damages to any alleged delay in notification, and in general, he has suffered no actual damages. (SAC, ¶¶ 145–147.) "[P]roof of damages is a threshold hurdle" for CRA claims. *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 316CV00014GPCBLM, 2016 WL 6523428, at *10 (S.D. Cal. Nov. 3, 2016); *Razuki*, 2018 WL 6018361, at *2 (five-month delay, without proof of damages, does not state a CRA claim); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1218 (N.D. Cal. 2014) (CRA plaintiff must plead an injury stemming from delay).

Here, Torretto actually pleads himself out of a claim. Torretto claims that, as a result of Mediant's notification, Torretto spent time and effort monitoring his accounts. (SAC, ¶ 32.) Yet, he has not discovered any fraud. Accordingly, Torretto cannot claim any damages from a supposed notification delay. Even if his information is eventually misused, such misuse will not result from any delay. Moreover, to the extent Torretto is claiming mitigation expenses, loss of value, or spam calls as damages, Torretto likewise does not connect any of these categories of supposed damages to delay. And in any event, Torretto has not pled any actual damages. (*See supra*, section B.3.)

Lastly, Torretto alleges that Mediant's unreasonable security measures are actionable under the CRA. (SAC, ¶¶168–76.) But Torretto does not allege how and why Mediant's security was sub-standard. *See Razuki*, 2018 WL 6018361, at *1 (dismissing plaintiff's CRA claim as it was premised on identically pled "threadbare" recitals); *Anderson*, LLC, 2019 WL 3753308, at *5 (same); *see also Pica*, 2018 WL 5861362, at *7 (dismissing a UCL claim on the same basis). Torretto's pleading is insufficient to state a CRA claim.

**J.      The Declaratory Judgment Claim Is Subject to Dismissal.**

Plaintiffs' claim for "Declaratory Judgment" fails for the reasons articulated in Donnelley's brief, which Mediant incorporates here by reference.

## IV.      <u>CONCLUSION</u>

For the forgoing reasons, the Court should dismiss with prejudice the claims against Mediant and the supposed "Partnership" pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Dated:  May 3, 2021

/s/ Casie D. Collignon
Casie D. Collignon, Esq.
Baker & Hostetler LLP
1801 California Street, Suite 4400
Denver, CO 80202-2662
Telephone: 303-861-0600
Facsimile: 303-861-7805
ccollignon@bakerlaw.com

*Attorneys for Defendant*

31

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a true and correct copy of the foregoing Motion to Dismiss was filed and

served on all counsel of record on this 3rd day of May, 2021, via the Court's ECF system.


*/ s/ Casie D. Collignon*