UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILLIP TORRETTO, DANIEL C. KING, and SHERI BRAUN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DONNELLEY FINANCIAL SOLUTIONS, INC. and MEDIANT COMMUNICATIONS, INC.,<br><br>Defendants. | Case No. 1:20-cv-02667-GHW |

## DEFENDANT DONNELLEY FINANCIAL SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

**TABLE OF CONTENTS**

**PAGE**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   RELEVANT BACKGROUND ................................................................. 2

    A.    The Proxy Services ................................................................. 2

    B.    The Mediant Intrusion ................................................................. 3

    C.    Procedural History ................................................................. 3

III.  STANDARD OF REVIEW ................................................................. 6

IV.  ARGUMENT ................................................................. 6

    A.    Plaintiffs' Claims That Donnelley Is Directly Liable for the Mediant Intrusion All Fail as a Matter of Law .................................................... 6

        1.    Plaintiffs Fail to State a Claim for Negligence or Negligence *Per Se* ................................................................. 7

            a.    Plaintiffs' Negligence Claims Are Governed by Illinois Law ................................................................. 7

            b.    Donnelly Owed Plaintiffs No Duty in Negligence to Protect Their Personal Information ................................................................. 8

            c.    Plaintiffs Fail to Allege Cognizable Injury ................................. 12

            d.    Plaintiffs' Negligence Claim Is Barred by the Economic Loss Doctrine ................................................................. 14

            e.    Plaintiffs' Reliance on Negligence *Per Se* Is Unavailing ........... 15

        2.    The Unfair Competition Law Claim Must Be Dismissed ....................... 16

        3.    The FDUTPA Claim Fails ................................................................. 17

    B.    Plaintiffs' Claims Based on a Supposed "Partnership" Between Donnelley and Mediant Are Unavailing ................................................................. 18

        1.    Plaintiffs Fail to Plead That Donnelley Is Vicariously Liable for Mediant's Legal Violations ................................................................. 18

        2.    Plaintiffs' Claims Against the Unpleaded "Partnership" Fail ................. 24

            a.    Plaintiffs Fail to State a Claim for Breach of Contracts as to Which They Are Purportedly Third-Party Beneficiaries ............ 24

            b.    The SAC Fails to Plead Unjust Enrichment ................................. 27

            c.    The Declaratory Judgment Claim Is Subject to Dismissal .......... 30

V.   CONCLUSION ................................................................. 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assur. Co.*,
   96 F. Supp. 3d 182 (S.D.N.Y. 2015)......................................................................27

*Abbasi ex rel. Abbasi v. Paraskevoulakos*,
   718 N.E.2d 181 (Ill. 1999).....................................................................................15

*Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*,
   651 F. Supp. 2d 155 (S.D.N.Y. 2009)..........................................................24, 26, 27

*AIU Ins. Co. v. TIG Ins. Co.*,
   577 F. App'x 24 (2d Cir. 2014) ..............................................................................25

*Alicea v. City of N.Y.*,
   145 A.D.2d 315 N.Y.S.2d 983 (1988) .....................................................................26

*Alphonse Hotel Corp. v. Tran*,
   No. 13 CIV. 7859, 2014 WL 3801230 (S.D.N.Y. Aug. 1, 2014), *aff'd sub*
   *nom. Alphonse Hotel Corp. v. Tran*, 828 F.3d 146 (2d Cir. 2016) ..........................19

*American Bar Association v. Federal Trade Commission*,
   430 F.3d 457 (D.C. Cir. 2005)................................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................5, 6

*Autotech Techs. LP v. Automationdirect.com, Inc.*,
   No. 05 C 5488, 2005 WL 3180147 (N.D. Ill. Nov. 23, 2005), *aff'd sub nom.*
   *Autotech Tech. LP v. Automationdirect.com*, 471 F.3d 745 (7th Cir. 2006) .........23

*Bank of N.Y. v. Yugoimport*,
   745 F.3d 599 (2d Cir. 2014)....................................................................................25

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ..................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................6, 25

*Braun v. Mediant Commc'ns Inc.*,
   No. 19-CV-62563 (S.D. Fla. Apr. 14, 2020) ............................................................4

*Braun v. Mediant Commc'ns Inc.*,
    No. CV-16-02696 (D. Ariz. Aug. 7, 2018) ............................................................27

*Bristol–Myers Squibb Co. v. Matrix Labs. Ltd.*,
    655 F. App'x 9 (2d Cir. 2016) ...............................................................................8

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ..................................................................................2

*Chen v. United States*,
    854 F.2d 622 (2d Cir.1988) ...................................................................................15

*Choi v. Chase Manhattan Mortg. Co.*,
    63 F. Supp. 2d 874 (N.D. Ill. 1999) ......................................................................25

*Cmty. Bank v. Schnuck Mkts., Inc.*,
    887 F.3d 803 (7th Cir. 2018) ...........................................................................9, 15

*Conte v. Cnty. of Naussau*,
    596 F. App'x 1 (2d Cir. 2014) ...............................................................................18

*Cooney v. Chicago Public Schools*,
    943 N.E.2d 23 (Ill. App. Ct. 2010) ..................................................................8, 9, 13

*Cummins v. Select Portfolio Servicing, Inc.*,
    No. 14-CV-5121, 2016 WL 4766237 (E.D.N.Y. Sept. 13, 2016) ...........................30

*Dachev v. Rich Am., Inc.*,
    No. 17-CV-5729, 2019 WL 423192 (N.D. Ill. Feb. 4, 2019) ...........................25, 26

Davis v. Marathon Oil Co.,
    356 N.E.2d 93, 97 (Ill. 1976) ...............................................................................15

*DiBella v. Hopkins*,
    403 F.3d 102 (2d Cir. 2005) ..................................................................................8

*Dinaco, Inc. v. Time Warner, Inc.*,
    346 F.3d 64 (2d Cir.2003) ....................................................................................21

*Dwyer v. Am. Express Co.*,
    652 N.E.2d 1351 (Ill. App. Ct.1995) ....................................................................14

*Flynn v. FCA US LLC*,
    No. 15-cv-0855, 2016 WL 5341749 (S.D. Ill. Sept. 23, 2016).............................15

*Fox v. Cohen*,
    406 N.E.2d 178 (Ill. App. Ct. 1980) ......................................................................8

*Hammond v. Bank of N.Y. Mellon Corp.*,
  No. 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ............................................9

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  613 F. Supp. 2d 108 (D. Me. 2009), *rev'd on other grounds sub nom.*,
  *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011) ...........................................13

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
  545 N.E.2d 672 (Ill. 1989) .............................................................................................28, 30

*Irwin v. Jimmy John's Franchise, LLC*,
  175 F. Supp. 3d 1064 (C.D. Ill. 2016) ........................................................................15, 29

*James v. SCR Med. Transp., Inc.*,
  61 N.E.3d 1043 (Ill. App. Ct. 2016) ...................................................................................25

*Jetro Holdings, LLC v MasterCard Int'l, Inc..*,
  No. 60374/2015, 2016 WL 1761971 (N.Y. Sup. Ct., May 03, 2016), *aff'd*, 88
  N.Y.S.3d 193 (N.Y. App. Div. 2d Dept. 2018) ..................................................................28

*Jetro Holdings, LLC v. MasterCard Intl., Inc.*,
  88 N.Y.S.3d 193 (N.Y. App. Div. 2d Dept. 2018) .............................................................29

*John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*,
  No. 11-CV-5453, 2011 WL 5245192 (S.D.N.Y. Nov. 2, 2011)..........................................30

*In re Joint E. & S. Dist. Asbestos Litig.*,
  14 F.3d 726 (2d Cir. 1993)...................................................................................................30

*Jones v. Micron Tech. Inc.*,
  400 F. Supp. 3d 897 (N.D. Cal. 2019) .................................................................................16

*Junger v. John V. Dinan Associates, Inc.*,
  84 N.Y.S.3d 574 (N.Y. App. Div. 2d Dept. 2018) .............................................................25

*Kerner v. Kinsey*,
  51 N.E.2d 126 (Ill. 1943) .....................................................................................................12

*Kidz Cloz, Inc. v. Officially for Kids, Inc.*,
  320 F. Supp. 2d 164 (S.D.N.Y.2004).................................................................................19

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal. App. 4th 1342 (2012) ............................................................................................16

*Kosower v. Gutowitz*,
  No. 00 CIV. 9011, 2001 WL 1488440 (S.D.N.Y. Nov. 21, 2001) ...................................20, 21

*LabMD, Inc. v. FTC*,
    894 F.3d 1221 (11th Cir. 2018) ........................................................................12

*Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*,
    No. 16-cv-7619, 2016 WL 7409916 (N.D. Ill. Dec. 22, 2016)................................9

*Landers-Scelfo v. Corp. Office Sys., Inc.*,
    827 N.E.2d 1051 (Ill. App. Ct. 2005) ...................................................................19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    672 F.3d 155 (2d Cir. 2012)..............................................................................7, 8

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    739 F.3d 45 (2d Cir. 2013)...................................................................................7

*Malik v. Ultraline Med. Testing, P.C.*,
    177 A.D.3d 515 N.Y.S.3d 226 [1st Dept. 2019].....................................................9

*Martis v. Grinnell Mut. Reinsurance Co.*,
    905 N.E.2d 920 (Ill. App. Ct. 2009) .....................................................................26

*Martis v. Pekin Mem'l Hosp. Inc.*,
    917 N.E.2d 598 (Ill. App. Ct. 2009) .....................................................................29

*Meyer v. A & A Logistics, Inc.*,
    No. 13 CV 0225, 2014 WL 3687313 (N.D. Ill. July 24, 2014) .......................19, 21

*In re Michaels Stores Pin Pad Litig.*,
    830 F. Supp. 2d 518 (N.D. Ill. 2011) ...................................................................15

*Noyola v. Bd. of Educ.*,
    688 N.E.2d 81 (Ill. 1997) ...................................................................................10

*Osan Ltd. v. Accenture LLP*,
    454 F.Supp.2d 46 (E.D.N.Y. 2006) ......................................................................29

*Papasan v. Allain*,
    478 U.S. 265 (1986)............................................................................................6

*Pasternack v. Lab'y Corp. of Am.*,
    892 F. Supp. 2d 540 (S.D.N.Y. 2012)..................................................................15

*Pena v. Brit. Airways, PLC (UK)*,
    No. 18-cv-6278, 2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020)............................14

*Perdue v. Hy-Vee, Inc.*,
    455 F. Supp. 3d 749 (C.D. Ill. 2020) ......................................................14, 15, 29

*Pisciotta v. Old Nat'l Bancorp,*
499 F.3d 629 (7th Cir. 2007) ......................................................................8

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.,*
842 So. 2d 773 (Fla. 2003).........................................................................18

*Quadro Enters., Inc. v. Avery Dennison Corp.,*
No. 97 C 5402, 1997 WL 769345 (N.D. Ill. Dec. 5, 1997) ........................20, 21, 22

*Razor Capital v. Antaal,*
972 N.E.2d 1238 (Ill. App. Ct. 2012) ......................................................25

*Rogers v. Grimaldi,*
875 F.2d 994 (2d Cir. 1989)........................................................................7

*Rolon v. Henneman,*
517 F.3d 140 (2d Cir. 2008)........................................................................6

*Scholastic, Inc. v. Harris,*
259 F.3d 73 (2d Cir.2001)..........................................................................19

*Slate Printing Co. v. Metro Envelope Co.,*
532 F. Supp. 431 (N.D. Ill. 1982) ............................................................26

*Slip-N-Slide Records, Inc. v. Island Def Jam Music Grp.,*
No. 13-CV-04450 ALC, 2014 WL 2119857 (S.D.N.Y. May 21, 2014) ................23

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.,*
131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020) ................................................9, 15

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,*
903 F. Supp. 2d 942 (S.D. Cal. 2012) ......................................................13

*Stanley Gudyka Sales Co., Inc. v. Lacy Forest Products Co.,*
686 F. Supp. 1301 (N.D. Ill. 1988) ..........................................................22

*In re Supervalu, Inc.,*
925 F.3d 955 (8th Cir. 2019) ............................................................ *passim*

*In re Syngenta Mass Tort Actions,*
No. 16-CV-00255, 2017 WL 54345 (S.D. Ill. Jan. 4, 2017).........................20

*In re Target Corp. Customer Data Sec. Breach Litig.,*
66 F. Supp. 3d 1154 (D. Minn. 2014)........................................................15

*Toretto v. Mediant Commc'ns, Inc.,*
No. 19-CV-05208, 2020 WL 1288478 (N.D. Cal. Mar. 18, 2020)..........................3

*New York ex rel. TZAC, Inc. v. New Israel Fund*,
  No. 20-CV-02955, 2021 WL 603149 (S.D.N.Y. Feb. 16, 2021)............................................11

*United States v. Ramos*,
  685 F.3d 120 (2d Cir. 2012).................................................................................................11

*USAA Fed. Sav. Bank v. PLS Fin. Servs., Inc.*,
  260 F. Supp. 3d 965 (N.D. Ill. 2017) ..................................................................................8, 9

*USAA Fed. Sav. Bank v. PLS Fin. Servs., Inc.*,
  340 F. Supp. 3d 721 (N.D. Ill. 2018) .......................................................................................9

*Vides v. Advocate Health and Hosps. Corp.*,
  No. 13CH2701, 2014 WL 4262215 (Ill. Cir. Ct. May 27, 2014) ..........................................15

*Village of Wellsville v. Village of Andover*,
  647 N.Y.S.2d 606 (N.Y. App. Div. 4th Dept. 1996) .......................................................20, 21

*West v. JPMorgan Chase Bank, N.A.*,
  214 Cal. App. 4th 780, 154 Cal. Rptr. 3d 285 (2013)............................................................17

*Whalen v. Michael Stores, Inc.*,
  153 F. Supp. 3d 577 (E.D.N.Y. 2015) ..................................................................................14

*Wheeling Trust & Savings Bank v. Tremco Incorp.*,
  505 N.E.2d 1045 (Ill. App. Ct.1987) ...................................................................................26

*Williams v. Calderoni*,
  No. 11 Civ. 3020, 2012 WL 691832 (S.D.N.Y. Mar. 1, 2012), *aff'd sub nom.*
  *Williams v. Schwartz,* 529 F. App'x 89 (2d Cir. 2013)...........................................................25

*Worix v. MedAssets, Inc.*,
  869 F. Supp. 2d 893 (N.D. Ill. 2012) .....................................................................................9

*Yu v. Int'l Bus. Machs. Corp.*,
  732 N.E.2d 1173 (Ill. App. Ct. 2000) ...................................................................................12

*Zeising v. Kelly*,
  152 F.Supp.2d 335 (S.D.N.Y.2001)......................................................................................19

**Statutes**

15 U.S.C. § 45(n) ......................................................................................................................11

28 U.S.C. § 2201(a) ..................................................................................................................30

California Civil Code § 1798.81.5.............................................................................................16

California Civil Code §§ 1798.81.5(a)(1)-(2).............................................................................17

California Civil Code § 1798.82 ...........................................................................................16

California Civil Code § 1798.82(a) ......................................................................................17

California Customer Records Act ...........................................................................1, 5, 6, 18

California Unfair Competition Law ............................................................................ *passim*

Declaratory Judgment Act ....................................................................................................30

Fed. R. Civ. P. 12(b)(1)....................................................................................................4, 25

Fed. R. Civ. P. 12(b)(6) ............................................................................................ *passim*

Florida Deceptive and Unfair Trade Practices Act .....................................1, 5, 6, 17, 18

FTC Act ...................................................................................................................... *passim*

Gramm-Leach Bliley Act.................................................................................9, 10, 15, 16

Section 1843(k) of Title 12 of the U.S. Code ...................................................................10

Section 80a–3 of Title 15 of the U.S. Code .....................................................................10

**Other Authorities**

16 C.F.R. § 314.1 .................................................................................................................10

16 C.F.R. § 314.4 .................................................................................................................15

Black's Law Dictionary (9th ed. 2009).............................................................................11

M. Olhausen, Acting Chairman, Fed. Trade Cmm'n, *Prepared Statement of the
    Fed. Trade Comm'n on Small Business Cybersecurity: Federal Resources and
    Coordination* at 3–4 (Mar. 8, 2017), *available at*
    https://www.ftc.gov/system/files/documents/public_statements/1174903/p072
    104_commission_testimony.pdf ............................................................................11

Defendant Donnelley Financial Solutions, Inc. ("Donnelley") respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiffs' Second Amended Class Action Complaint (the "SAC").

I.   **PRELIMINARY STATEMENT**

Plaintiffs bring this putative class action against Donnelley and Mediant Communications Inc. ("Mediant") seeking recovery for injuries allegedly stemming from a criminal cyber intrusion that affected Mediant's email system and allegedly resulted in the compromise of Plaintiffs' personal information (the "Mediant Intrusion").  Donnelley's network was not impacted by the Mediant Intrusion, and no information in Donnelley's possession was compromised.  Nonetheless, Plaintiffs claim that Donnelley is somehow legally responsible for the Mediant Intrusion, first because, after having agreed with Mediant that Mediant would supply the proxy services that led to Mediant's obtaining Plaintiffs' personal information, Donnelley then allegedly failed to exercise proper oversight of Mediant's data security practices in regard to that information; and second because the agreement formed by Donnelley and Mediant allegedly created a legal "partnership" to provide the proxy services in question, making Donnelley vicariously liable for Mediant's actions falling within the scope of that supposed partnership.  SAC ¶¶ 1, 4, 85, 122, 130.  Based on these two theories, Plaintiffs assert claims against Donnelley for negligence, negligence *per se*, and violations of the California Customer Records Act, California Unfair Competition Law, and Florida Deceptive and Unfair Trade Practices Act.  SAC ¶¶ 121-43, 168-94.  Plaintiffs also assert claims against the supposed "partnership" itself, namely, for breach of contracts as to which Plaintiffs are allegedly third-party beneficiaries, unjust enrichment, and declaratory judgment.  SAC ¶¶ 144-67.  But the SAC does not allege sufficient facts or establish a legal basis for any of these causes of action.  As a result, the SAC should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

1

## II.      RELEVANT BACKGROUND

### A.      The Proxy Services

Donnelley and Mediant are separate companies that provide certain proxy services to mutual funds and publicly owned companies. SAC ¶¶ 1, 9-10. The proxy services include printing and distributing materials to shareholders, coordinating shareholder votes, and tabulating voting results. *Id.* To effectuate the distribution of materials and coordinate shareholder votes, Mediant collects shareholder data from the proxy services customers. *Id.* ¶¶ 1, 85.

Notably, the SAC does not allege that Donnelley *itself* ever collected, possessed, stored, or transferred investors' personal information in connection with its provision of the proxy services. *See id.* ¶¶ 85, 122. Instead, it alleges only that Donnelley collected personal information "through its partner Mediant" and "through their Partnership." *See id.* However, despite referring to the business relationship between Donnelley and Mediant throughout as the "Partnership," the SAC contains no allegations showing that Donnelley and Mediant (i) shared profits and losses generated by their relationship; (ii) jointly controlled one another's actions pursuant to their relationship; (iii) contributed resources for the benefit of the relationship beyond the level of contribution that would be inherent in any agreement for providing services to third parties; or (iv) intended for their relationship to be a legal partnership. Indeed, the Supplier Agreement between Donnelley and Mediant plainly shows that the parties did not by means of that agreement form a legal partnership for the provision of proxy services, but rather created an ordinary contractor-subcontractor relationship. *See* Declaration of Craig Clay in Supp. of Donnelley's Mot. to Dismiss SAC Pursuant to Fed. R. Civ. P. 12(b)(6) ("Clay Decl.") Ex. A; Declaration of William Lauricella in Supp. of

Mediant's Mot. to Dismiss SAC Pursuant to Fed. R. Civ. P. 12(b)(6) ("Lauricella Decl.") Ex. A.[1]

### B.   The Mediant Intrusion

Each Plaintiff was a shareholder in a different fund to which Mediant and Donnelly provided proxy services.  In the course of providing its portion of the proxy services, Mediant collected from the fund in which each Plaintiff had invested personal information of that Plaintiff. On April 1, 2019, Mediant suffered the Mediant Intrusion, in which hackers purportedly exfiltrated certain of the personal information of Plaintiffs that Mediant had collected from their funds.  SAC ¶¶ 2, 6-8, 16, 18.  Mediant commenced an investigation into the Mediant Intrusion and notified shareholders whose information may have been involved at the end of May 2019.  SAC ¶¶ 16, 17, 21.  Donnelley's network was not impacted, and Donnelley did not duplicate Mediant's efforts to provide notice to individuals whose information may have been involved.  SAC ¶ 26.

No Plaintiff alleges that he or she suffered any unreimbursed fraudulent misuse of his or her personal information as a result of the Mediant Intrusion.  Instead, Plaintiffs assert several other types of purported "injury" from the Mediant Intrusion.  They allege that the value of their personal information decreased as a result of criminals having possession of it.  SAC ¶¶ 35, 41, 54.  They allege measures that Plaintiffs voluntarily undertook themselves, such as spending time and money addressing alleged actual or attempted misuse of their personal information or the purported risk of future harm.  SAC ¶¶ 32-34, 39-40, 45-47, 49-51, 53.  And they allege harms that lack any plausible—and certainly any reasonable—causal relationship to the Mediant Intrusion, such as the purchase of home security equipment. SAC ¶¶ 34, 52.

### C.   Procedural History

---

[1] The Court may consider the Supplier Agreement because it is integral to the SAC and Plaintiffs' partnership allegations therein.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[T]he court may . . . consider [a document not incorporated by reference] where the complaint relies heavily upon its terms and effect[.]") (internal quotations omitted).

Plaintiffs brought class actions against Mediant alleging injuries caused by the Mediant Intrusion in the Northern District of California and the Southern District of Florida, but these actions were dismissed for lack of personal jurisdiction. *Toretto v. Mediant Commc'ns, Inc.*, No. 19-CV-05208, 2020 WL 1288478, at *6 (N.D. Cal. Mar. 18, 2020); Order Granting Mot. to Dismiss, *Braun v. Mediant Commc'ns Inc.*, No. 19-CV-62563 (S.D. Fla. Apr. 14, 2020), ECF No. 27. Now, notwithstanding that Mediant alone was subject to the Mediant Intrusion, Plaintiffs have refiled their class actions in this Court against not only Mediant, but also Donnelley, contending that somehow Donnelley was responsible for Mediant's alleged security vulnerabilities and purported delay in notification. SAC ¶ 4.

In their First Amended Complaint, Plaintiffs' theory for adding Donnelley hinged on Donnelley's allegedly having possessed investor data before it was transferred to Mediant. Plaintiffs asserted that (1) Donnelley collected and then shared some investors' personal information with Mediant; and (2) having done so, Donnelley failed to exercise adequate oversight to ensure that such information was securely protected by Mediant. FAC ¶¶ 4, 76, 81. Donnelley moved to dismiss Plaintiffs' First Amended Complaint under Fed. R. Civ. P. 12(b)(1) for lack of Article III standing, noting among other things that Plaintiffs failed to allege that Donnelley ever possessed Plaintiffs' personal information, and that in fact Donnelley never possessed any shareholder personal information associated with the proxy services. Mem. of Law in Supp. of Mot. to Dismiss First Am. Compl., ECF No. 50.

In response to Donnelley's motion, Plaintiffs filed the SAC. The SAC drops the fallacious allegation as to Donnelley's prior possession of certain of the information compromised in the Mediant Intrusion. Rather than dropping Donnelley from the case altogether as they should have, however, Plaintiffs concocted a new theory to keep Donnelley in the mix. Specifically, Plaintiffs

4

now contend that Donnelley is directly responsible for the Mediant Intrusion because, having agreed with Mediant that Mediant would supply the proxy services that led to Mediant's obtaining Plaintiffs' personal information, Donnelley then failed to exercise proper oversight of Mediant's data security practices as to that information.  Alternatively, Plaintiffs contend that Donnelley formed a legal partnership with Mediant to provide the proxy services, making Donnelley vicariously liable for Mediant's actions in the scope of the partnership.  SAC ¶¶ 1, 4, 85, 122, 130. Based on these two theories, Plaintiffs assert claims against Donnelly for negligence, negligence *per se*, and violations of the California Customer Records Act, California Unfair Competition Law, and Florida's Deceptive and Unfair Trade Practices Act.  SAC ¶¶ 121-43, 168-94.  Plaintiffs also assert claims against the supposed "partnership" itself, and thereby against Donnelly as a member of the "partnership," for breach of contracts as to which Plaintiffs are allegedly third-party beneficiaries, unjust enrichment, and declaratory judgment.  SAC ¶¶ 144-67.[2]

Donnelley moved to dismiss the SAC for lack of Article III standing on August 26, 2020. On March 8, 2021, the Court held that Plaintiffs' allegations meet the "modest burden" to show "that allowing [Plaintiffs] to *raise* [their] claim in federal court would not move so beyond the court's ken as to usurp the power of the political branches," but noted that to survive a Rule 12(b)(6) challenge they must "possess enough heft to show that [Plaintiffs are] *entitled to relief*." Mem. Op. and Order 18, ECF No. 76.  The Court stated that "[t]o the extent that Plaintiffs have failed to plead a cause of action, that issue is properly raised in the context of a motion under Rule 12(b)(6)." *Id*. at 16.

---

[2]  The First Amended Complaint also included counts asserting that Donnelley and Mediant breached "contracts" they had entered into directly with Plaintiffs and "deceived" Plaintiffs about data security, even though Plaintiffs undisputedly never had any communications or relationship with Donnelley or Mediant prior to the Mediant Intrusion.  *See* FAC ¶¶ 1, 20, 30, 37, 43; SAC ¶¶ 1, 20, 30, 37, 43.  Plaintiffs dropped these claims after the Court raised the possibility of Rule 11 sanctions.  Pre-Mot. Hr'g Tr. 25:19-26:1, June 23, 2020.

## III.   STANDARD OF REVIEW

In order to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility requires that there be sufficient factual allegations from which "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[L]abels and conclusions, and a formulaic recitation of the elements" of claims will not suffice.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   While a court must take all the well-pleaded factual allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (district court is not "bound to accept 'conclusory allegations or legal conclusions masquerading as factual conclusions'").

## IV.   ARGUMENT

Plaintiffs' purported claims for Negligence (Count I), Negligence *Per Se* (Count II), Breach of Contracts as to which Plaintiffs Are Third-Party Beneficiaries (Count III), Unjust Enrichment (Count IV), Declaratory Judgment (Count V), and Violations of the California Customer Records Act (Count VI), California Unfair Competition Law (Count VII), and Florida Deceptive and Unfair Trade Practices Act (VIII) should be dismissed as to Donnelly under Rule 12(b)(6).

### A.   Plaintiffs' Claims That Donnelley Is Directly Liable for the Mediant Intrusion All Fail as a Matter of Law

Even though Donnelley undisputedly was not subject to the Mediant Intrusion and never possessed the personal information of Plaintiffs allegedly compromised in the Mediant Intrusion, the SAC asserts claims against Donnelley for negligence and negligence *per se*, as well as for violations of California's Unfair Competition Law and Florida Deceptive and Unfair Trade

Practices Act (SAC ¶¶ 121-43, 168-94) on the theory that Donnelley is *directly* liable for the Mediant Intrusion.  However, each of the SAC's direct liability claims is devoid of any support in the law or in the underlying factual allegations and must be dismissed under Rule 12(b)(6).

### 1.      Plaintiffs Fail to State a Claim for Negligence or Negligence *Per Se*

#### a.      Plaintiffs' Negligence Claims Are Governed by Illinois Law

Plaintiffs' negligence and negligence *per se* claims against Donnelley are governed by Illinois law.  "A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state," *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989)—here, New York.  "New York conflicts law directs that the law of the jurisdiction having the greatest interest in the litigation will be applied."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 672 F.3d 155, 157-58 (2d Cir. 2012)*.*  And "[i]n tort-law disputes, interest analysis distinguishes between two sets of rules: conduct-regulating rules and loss-allocating rules."  *Id.*  "Conduct-regulating rules are those that 'people use as a guide to governing their primary conduct,' while 'loss allocating rules . . . are laws that prohibit, assign, or limit liability after the tort occurs.'"  *Id.* (internal citation omitted).  With regard to conduct-regulating rules, when the allegedly wrongful conduct and the alleged injury take places in different jurisdictions, "it is the place of the allegedly wrongful conduct that generally has superior interests[.]"  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 50-51 (2d Cir. 2013).

Here, Plaintiffs' negligence and negligence *per se* claims asserted directly against Donnelley involve conduct-regulating rules, *i.e.*, whether Plaintiffs have pleaded tortious conduct by Donnelley.  In this context, as *Licci* instructs, the law of the place of the defendant's conduct will apply.  The SAC indicates that this place is Illinois: regardless where the Mediant Intrusion

occurred, the *Donnelley conduct* that Plaintiffs challenge—Donnelley's purported failure to take action to oversee Mediant's security and/or to notify others of the Mediant Intrusion—necessarily occurred where Donnelley is located, and the SAC admits Donnelley is headquartered in Illinois. SAC ¶ 9.[3] It is immaterial that Plaintiffs' injuries may have occurred outside Illinois. *See Licci,* 672 F.3d at 158 (negligence law of defendant's home state, where conduct occurred, governed for purposes of Rule 12(b)(6) motion, even though the plaintiff's injury occurred elsewhere).

**b.    Donnelly Owed Plaintiffs No Duty in Negligence to Protect Their Personal Information**

To plead negligence under Illinois law, a complaint must state facts demonstrating a duty owed from the defendant to the plaintiff, a breach of duty, and damages as a result. *Fox v. Cohen*, 406 N.E.2d 178, 179 (Ill. App. Ct. 1980). Here, the Court's inquiry can begin and end with the duty element, because "Illinois does not recognize a common law duty to safeguard personal information[.]" *USAA Fed. Sav. Bank v. PLS Fin. Servs., Inc.*, 260 F. Supp. 3d 965, 970 (N.D. Ill. 2017). In *Cooney v. Chicago Public Schools*, the Illinois Appellate Court declined to create a common-law duty to safeguard personal information. 943 N.E.2d 23, 28–29 (Ill. App. Ct. 2010). "[W]hen the intermediate appellate courts of the state have spoken to the issue," federal courts "give great weight to their determination about the content of state law, absent some indication that the highest court of the state is likely to deviate from those rulings." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007); *see also DiBella v. Hopkins*, 403 F.3d 102, 112 (2d

---

[3] While a complaint can survive a motion to dismiss if it states a claim under one of multiple potentially applicable states' laws in a situation where the allegations in the complaint suffice to support an argument that two or more states' laws could potentially apply but do not suffice to conduct a choice of law analysis as between those states, *see Bristol–Myers Squibb Co. v. Matrix Labs. Ltd.*, 655 F. App'x 9, 13 (2d Cir. 2016), here Illinois is the only potentially applicable law because the SAC does not allege facts suggesting that the law of any state other than Illinois may apply to the negligence claims against Donnelly. In their response to Donnelley's premotion letter in connection with this motion to dismiss, Plaintiffs cited to New York law, but without explanation as to why that law may apply to claims asserted against Donnelley. ECF No. 86, at 3. In any event, as discussed herein, Plaintiffs' common-law claims fail under New York law, as well.

Cir. 2005). Thus, all federal courts to address the issue under Illinois law since *Cooney* have followed its holding. *In re Supervalu, Inc.*, 925 F.3d 955, 963 (8th Cir. 2019) ("The failure of Illinois law to impose this type of common-law duty on merchants mandates dismissal of Holmes's negligence claim."); *Cmty. Bank v. Schnuck Mkts., Inc.*, 887 F.3d 803, 817 (7th Cir. 2018) ("*Cooney* shows that Illinois has not recognized an independent common law duty to safeguard personal information."); *USAA Fed. Sav. Bank*, 260 F. Supp. 3d at 970; *accord Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*, No. 16-cv-7619, 2016 WL 7409916, at *3 (N.D. Ill. Dec. 22, 2016); *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 898 (N.D. Ill. 2012).[4]

In an effort to overcome the absence of any support in the common law for the requisite duty, Plaintiffs cite the prohibition on "unfair" practices in Section 5 of the FTC Act as well as the Gramm-Leach Bliley Act ("GLBA") and its Safeguards Rule as the source of the alleged duty to safeguard information. SAC ¶ 126. But as the Eighth Circuit noted in *Supervalu*, Illinois law prohibits plaintiffs from relying on statutes that lack a private right of action to create a negligence-based duty, because "[i]mplying a cause of action would be inconsistent with Congress's anticipated enforcement scheme." 925 F.3d at 963-64. Neither the FTC Act nor the GLBA provide a private right of action. *See id.* (rejecting negligence-based duty under FTC Act for this reason); *USAA Fed. Sav. Bank v. PLS Fin. Servs., Inc.*, 340 F. Supp. 3d 721, 725 (N.D. Ill. 2018)

---

[4] Similarly, under New York law, there is no common-law duty in negligence to protect data in the possession of a third party, even where (unlike here) a defendant transferred the data at issue to the third party in the first instance. *See Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 824–26 (N.Y. Sup. Ct. 2020) (declining to recognize duty to protect data that defendant had transferred to, and was stored by, a third party) (citing *Malik v. Ultraline Med. Testing, P.C.*, 177 A.D.3d 515, 515-516, 115 N.Y.S.3d 226 [1st Dept. 2019]). Furthermore, a defendant does not owe a duty of data protection to plaintiffs with whom the defendant had no direct dealings. *See Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *9-10 (S.D.N.Y. June 25, 2010) (no duty to protect plaintiffs' data where plaintiffs had given their personal information to institutional clients of defendant, which in turn transferred data to defendant). Here, Plaintiffs do not allege that they had any sort of dealings with Donnelley, much less direct ones. There is, accordingly, no basis to find that Donnelley owed Plaintiffs a duty to protect their data, even if New York law might be found to apply.

(rejecting negligence claim based on alleged GLBA violation because GLBA lacks a private right of action).

Moreover, a statute can "fix the measure of legal duty" in a negligence action only if it is "designed to protect human life or property," *Noyola v. Bd. of Educ.*, 688 N.E.2d 81, 84-85 (Ill. 1997), and if "the plaintiff's injury is one the statute was designed to prevent," *Supervalu,* 925 F.3d at 963. Plaintiffs allege no death or harm to property here.

In any event, these statutes cannot supply any relevant duty here because Plaintiffs fail to plead that Donnelley violated either of the statutes. For starters, the GLBA applies only to "financial institutions," defined as institutions "the business of which is engaging in financial activities as described in section 1843(k) of Title 12" of the U.S. Code. As summarized by the D.C. Circuit in *American Bar Association v. Federal Trade Commission*, 430 F.3d 457, 459–60 (D.C. Cir. 2005), the activities referenced in section 1843(k) of Title 12 are "(A) Lending, exchanging, transferring, investing for others, or safeguarding money or securities; (B) Insuring, guaranteeing, or indemnifying against loss, harm, damage, illness, disability, or death, or providing and issuing annuities, and acting as principal, agent, or broker for purposes of the foregoing, in any State; (C) Providing financial, investment, or economic advisory services, including advising an investment company (as defined in [section 80a–3 of Title 15] ); (D) Issuing or selling instruments representing interests in pools of assets permissible for a bank to hold directly; (E) Underwriting, dealing in, or making a market in securities." None of these activities is alleged to have been engaged in by Donnelley.

Moreover, the GLBA regulations cited in the SAC apply only to customer information in the "possession" of the financial institution. 16 C.F.R. § 314.1. Here, Plaintiffs have abandoned any claim that Donnelley itself ever possessed the personal information in question. Their

allegation that Donnelley collects such information "through its partner Mediant" (SAC ¶ 85) is insufficient both because the SAC fails to allege the elements of a partnership (*see* Section IV.B.1, *infra*), and because an entity does not "possess" information merely because its partner does.

Plaintiffs' allegation that Donnelley violated the unfairness prong of Section 5 of the FTC Act fares no better. The FTC Act's prohibition on "unfair" acts or practices only applies to acts or practices that injure or are likely to injure "consumers." 15 U.S.C. § 45(n). Under the plain meaning of the term, a consumer is an individual in his or her capacity as a purchaser or user of products or services for personal purposes, which is not alleged here.[5] Even if the law applied, the FTC itself has recognized that Section 5 "does not require perfect security" and "the mere fact that a breach occurred does not mean that a company has violated" Section 5. M. Olhausen, Acting Chairman, Fed. Trade Cmm'n, *Prepared Statement of the Fed. Trade Comm'n on Small* Business *Cybersecurity: Federal Resources and Coordination* at 3–4 (Mar. 8, 2017), *available at* https://www.ftc.gov/system/files/documents/public_statements/1174903/p072104_commission_t estimony.pdf. Rather, Section 5 data security violations involve "data security failures . . . [that are] multiple and systemic." *Id.* No such failures on Donnelley's part are alleged in the SAC; at most, it pleads a discrete failure to oversee a single separate entity. In addition, Plaintiffs have not alleged any facts suggesting that Donnelley's practices caused "*substantial injury* to consumers which [was] *not reasonably avoidable* by consumers themselves and *not outweighed* by countervailing benefits to consumers or to competition"—all of which are necessary elements of an unfairness-based Section 5 violation. *See* 15 U.S.C. § 45(n) (emphasis added). Finally,

---

[5] Because the FTC Act does not define consumer, the plain meaning of the term would apply. *See United States v. Ramos*, 685 F.3d 120, 131 (2d Cir. 2012); *New York ex rel. TZAC, Inc. v. New Israel Fund*, No. 20-CV-02955, 2021 WL 603149, at *13 (S.D.N.Y. Feb. 16, 2021). The plain meaning of consumer is a purchaser or user of goods or services for personal use. *E.g.,* Black's Law Dictionary (9th ed. 2009) (definition of "consumer": "[a] person who buys goods or services for personal, family, or household use, with no intention of resale; a natural person who uses products for personal rather than business purposes.").

Plaintiffs have not alleged facts establishing the culpability element of an unfairness-based Section 5 violation, under which the defendant's conduct must be shown to have violated some independent constitutional, statutory, or common-law principle.  *LabMD, Inc. v. FTC*, 894 F.3d 1221, 1231 (11th Cir. 2018).  Indeed, the SAC's insufficiency on these fronts is underscored by the attenuated relationship it alleges between Donnelley and the personal information at issue: Donnelley's own network undisputedly was not attacked, Donnelley is not alleged to have ever possessed the personal information in question, and Donnelley's relationship with Mediant merely involved the provision of proxy services to third parties.  Donnelley is not aware of any decision holding that such circumstances can give rise to a data security-based violation of Section 5's unfairness prohibition.

### c.        Plaintiffs Fail to Allege Cognizable Injury

Plaintiffs' negligence claim fails for the additional and independent reason that Plaintiffs failed to plead facts supporting a "legally cognizable present injury or damage" as required to sustain a negligence claim.  *Yu v. Int'l Bus. Machs. Corp.*, 732 N.E.2d 1173, 1177 (Ill. App. Ct. 2000).[6]  As an initial matter, the actual fraudulent misuse of personal information alleged by Plaintiff King (SAC ¶ 40) and attempted fraudulent misuse alleged by Plaintiff Braun (SAC ¶¶ 45-50) are insufficient because neither alleges that he or she incurred unreimbursed out-of-pocket loss as a result of these acts.  Illinois recognizes that when a plaintiff relies on purported economic harm to satisfy the injury element of a negligence claim, the loss must be *unreimbursed*.  *See Kerner v. Kinsey*, 51 N.E.2d 126, 131 (Ill. 1943) ("If it should appear the corporate officer, through the negligence of the bank, defrauded the corporation, but later reimbursed his company by

---

[6] Donnelley incorporates by reference herein Mediant's argument that Plaintiffs have failed to allege cognizable injuries under New York law, as well.  Mem. of Law in Supp. of Mediant Communications Inc.'s Mot. to Dismiss SAC Pursuant to Fed. R. Civ. P. 12(b)(6) ("Mediant's Motion to Dismiss" or "Mediant's Mot. to Dismiss"), § III.B.

payment, it is clear the corporation could not recover from the bank because it had suffered no injury.").  Indeed, numerous courts in data security actions have dismissed negligence (and other) claims where the plaintiff pleaded no unreimbursed financial loss. *E.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 613 F. Supp. 2d 108, 132-33 (D. Me. 2009) (reimbursed charges are not injury in tort or contract), *rev'd on other grounds sub nom., Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 963 (S.D. Cal. 2012) (reimbursed charges insufficient to state a claim); *see also, e.g., Supervalu,* 925 F.3d at 964-65 (same).  For the same reason, the nuisance-type injuries claimed by all the Plaintiffs, such as time spent monitoring accounts, addressing fraudulent misuse, or receiving spam calls (SAC ¶¶ 32, 34, 39, 45-47, 49-50, 53), are insufficient because they do not entail out-of-pocket loss. *See Supervalu*, 925 F.3d at 964-65 ("Holmes's alleged injuries—the expenditure of time monitoring his account, the single fraudulent charge to his credit card, and the effort expended replacing his card—do not constitute actual damage" under Illinois consumer protection statute with similar financial loss requirement).

The out-of-pocket losses that Plaintiffs *do* allege, such as purchase of credit monitoring and security systems, are not cognizable because they are all "injuries" that Plaintiffs inflicted on themselves.  *See Cooney*, 943 N.E.2d at 31 (purchase of credit monitoring to protect against alleged increased risk of identity theft not cognizable).  Moreover, several of the purported injuries have no plausible and/or reasonable causal connection with the Mediant Intrusion. *See* SAC ¶¶ 34 (spam calls), 33 (unspecified "Kaspersky security plans"), 52 ("security system" "installed at her home" along with "two Ring doorbell cameras"); *see also Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036 (N.D. Cal. 2019) (spam calls and emails and fake friend requests are too common in modern life to establish they resulted from data breach). Plaintiffs' assertion that their personal

13

information is "less valuable to" them "as a personal identifier now that criminals can use it to impersonate [them] to fraudulent ends" (SAC ¶¶ 35, 41, 54) is unavailing because the SAC contains no facts plausibly suggesting that this circumstance has caused their personal information to lose value. *See Dwyer v. Am. Express Co.*, 652 N.E.2d 1351, 1356 (Ill. App. Ct.1995) ("[D]efendants' practices do not deprive any of the [plaintiffs] of any value their individual names may possess."); *Pena v. Brit. Airways, PLC (UK)*, No. 18-cv-6278, 2020 WL 3989055, at *3 (E.D.N.Y. Mar. 30, 2020) ("[A]ssuming Plaintiff's personal information has value, Plaintiff has failed to allege any facts indicating how Defendant's data breach diminished that value in any way."); *Whalen v. Michael Stores, Inc.*, 153 F. Supp. 3d 577, 581-82 (E.D.N.Y. 2015) (finding that the plaintiff's alleged diminution in value of personal information was too vague to confer standing because the plaintiff failed to allege how her personal information became less valuable as a result of the defendant's security breach).

Moreover, to the extent Plaintiffs claim a delay in notification, Plaintiffs fail to allege any facts suggesting they suffered injury from such delay.  *See* Mediant's Mot. to Dismiss, § III.B.5.

### d.   Plaintiffs' Negligence Claim Is Barred by the Economic Loss Doctrine

Even if Plaintiffs had alleged both a duty in negligence and a cognizable injury stemming from Donnelly's alleged breach of that duty, their negligence claim would be barred by the economic loss doctrine.  "The economic loss doctrine bars a plaintiff from recovering for purely economic losses under a tort theory of negligence."  *See Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 761 (C.D. Ill. 2020) (Illinois law).[7]  All of Plaintiffs' injuries, including those that do not involve an out-of-pocket loss, are economic in nature and therefore subject to the rule. *See id.*

---

[7] Donnelley incorporates by reference herein Mediant's argument that New York's economic loss doctrine also bars Plaintiffs' recovery.  *See* Mediant's Mot. to Dismiss, § III.D.

("lost time and an inability to use or access funds due to a data breach are economic losses" subject to the Illinois economic loss doctrine, which barred plaintiffs' data breach negligence claim). And, as in countless data breach decisions addressing Illinois's economic loss doctrine,[8] none of the narrow exceptions to the economic loss doctrine applies here. *See id.* ("Illinois law recognizes three exceptions to the economic loss doctrine: (1) where a plaintiff sustains personal injury or property damage resulting from a sudden or dangerous occurrence; (2) where plaintiff's damages were proximately caused by defendant's intentional, false representation; and (3) where plaintiff's damages were proximately caused by the negligent misrepresentation of a defendant in the business of supplying information for the guidance of others in business transactions.")

Accordingly, Plaintiffs' negligence claim must be dismissed.

### e.     Plaintiffs' Reliance on Negligence *Per Se* Is Unavailing

In Count II, Plaintiffs purport to plead a claim for "negligence *per se*." However, this "claim" is a non-starter because Illinois law does not recognize the doctrine of negligence *per se*. *Davis v. Marathon Oil Co.*, 356 N.E.2d 93, 97 (Ill. 1976); *see also Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 185 (Ill. 1999).[9]  Even were that not the case, this claim

---

[8] *See Hy-Vee*, 455 F. Supp. 3d at 761; *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 531 (N.D. Ill. 2011) (dismissing data breach negligence claim under Illinois economic loss doctrine); *see also Schnuck*, 887 F.3d at 817 (same); *Flynn v. FCA US LLC*, No. 15-cv-0855, 2016 WL 5341749, at *9 (S.D. Ill. Sept. 23, 2016) (same); *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1071 (C.D. Ill. 2016) (same); *Vides v. Advocate Health and Hosps. Corp.*, No. 13CH2701, 2014 WL 4262215, at *10-11 (Ill. Cir. Ct. May 27, 2014) (same); *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1174 (D. Minn. 2014) (same).

[9] Nor can Plaintiffs state a claim for negligence *per se* under New York law predicated on purported violations of the FTC Act or the GLBA.  First, neither statute provides a private right of action.  *Smahaj*, 131 N.Y.S.3d at 827–28 (dismissing negligence per se claim because cited laws—including FTC Act—did not provide private right of action).  Second, as explained above, Plaintiffs failed to allege that Donnelley violated the FTC Act or the GLBA. Third, a violation of a federal administrative rule—such as the Safeguards Rule cited by Plaintiffs, SAC ¶ 86, and codified at 16 C.F.R. § 314.4—"is merely some evidence of negligence but does not establish negligence as a matter of law[,] because a regulation lacks the force and effect of a statute." *Chen v. United States,* 854 F.2d 622, 627 (2d Cir.1988) (internal quotations omitted); *see also Pasternack v. Lab'y Corp. of Am.*, 892 F. Supp. 2d 540, 555 (S.D.N.Y. 2012) ("[Plaintiff's] negligence claims cannot be premised solely on the argument that [defendant] violated a federal regulation[.]").

would fail for failure to plead a violation of the statutes on which the claim is predicated (*see* Section IV.A.1.b, *supra*), for failure to allege cognizable injury (*see* Section IV.A.1.c, *supra*), and because Plaintiffs' recovery is barred by the economic loss doctrine (*see* Section IV.A.1.d, *supra)*.

### 2.      The Unfair Competition Law Claim Must Be Dismissed

Plaintiff Torretto's claim under California's Unfair Competition Law ("UCL") for "unfair" and "unlawful" conduct (Count VII) fails for the reasons articulated in Mediant's Motion to Dismiss, incorporated herein by reference.  *See* Mediant's Mot. to Dismiss, § III.H.  As is the case with respect to Mediant, Torretto does not allege that any of Donnelley's purportedly unlawful conduct occurred in California, there is no basis for restitution or injunctive relief against Donnelley, and Plaintiffs may not obtain the equitable remedies they seek because they have adequate remedies at law.      Moreover, the SAC fails to plead facts showing that Donnelley committed "unfair" or "unlawful" conduct within the meaning of the UCL even in the past.

Where, as here, a complaint asserts a claim under the UCL's "unlawful" prong, the law "borrows violations of other laws" and "makes those unlawful practices actionable under the UCL."  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012) (internal citation and quotation omitted).  Such a claim is "predicated on a violation of a separate statute or common law regime" and if such "violations are insufficiently pled, it follows that Plaintiffs have failed to sufficiently plead a violation of the UCL."  *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 923 (N.D. Cal. 2019).  Here, Plaintiffs premise their UCL unlawfulness claim on alleged violations of California Civil Code § 1798.81.5 and California Civil Code § 1798.82 as well as the FTC Act, the GLBA, and "California common law."  SAC ¶ 184.  However, as discussed in Section IV.A.1.b *supra,* Plaintiffs fail to plausibly allege that Donnelley violated the FTC Act, the GLBA, or California common law.    To the extent SAC ¶ 184's conclusory allegations regarding

"Defendants" could be read to assert that *Donnelley* violated California Civil Code § 1798.81.5 and California Civil Code § 1798.82, that suggestion is contradicted by the SAC itself, which declines to press claims under these statutes directly against Donnelley and only alleges that Donnelley is derivatively liable for Mediant's violation (*see* SAC ¶¶ 172, 177).  In any event, both of these provisions only apply to businesses that "own[], license[], or maintain[]" personal information.  Cal. Civ. Code §§ 1798.81.5(a)(1)-(2) and 1798.82(a).  Because Plaintiff Torretto does not allege that Donnelley ever possessed his data, the SAC does not even plead that Donnelley is subject to these laws, much less that Donnelley violated them.

Nor does Plaintiff Torretto allege sufficient facts to establish the elements of any of the tests for "unfairness" utilized by California courts.  California utilizes three different tests for "unfairness" under the UCL: (1) "the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided[;]" (2) the practice "offends an established public policy or . . . the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers[;]" and (3) "the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions."  *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 806, 154 Cal. Rptr. 3d 285, 305 (2013).  The SAC pays lip service to these elements, but does not plead any facts to support them.  Indeed, as with the unfairness prong of the FTC Act, extending a data security unfairness obligation in the UCL to Donnelley would be unprecedented given that Donnelley's network undisputedly was not attacked, Donnelley is not alleged to have ever possessed the personal information in question, and Donnelley's relationship with Mediant merely involved the joint provision of proxy services.

### 3.      The FDUTPA Claim Fails

17

For the reasons explained in Mediant's Motion to Dismiss, incorporated herein by reference, Plaintiff Braun's claim under FDUTPA must also be dismissed.  *See* Mediant's Mot. to Dismiss, § III.G.   Again, Plaintiff Braun fails to allege that Donnelley's conduct occurred in Florida, and the additional grounds Mediant raises regarding Plaintiff Braun's failures to allege that she was a consumer, was damaged, or has a basis to seek injunctive relief apply equally to Donnelley.  Additionally, just as Plaintiff Torretto fails to plead unfairness by Donnelley under the FTC Act and UCL, Plaintiff Braun fails to allege facts showing that Donnelley engaged in an unconscionable or unfair practice under FDUTPA, which is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003), and no case law supports stretching this test to cover Donnelley's alleged conduct.

### B.   Plaintiffs' Claims Based on a Supposed "Partnership" Between Donnelley and Mediant Are Unavailing

#### 1.   Plaintiffs Fail to Plead That Donnelley Is Vicariously Liable for Mediant's Legal Violations

Unable to plausibly plead that Donnelley is directly liable for the Mediant Intrusion, Plaintiffs assert the untenable theory that Donnelley is nevertheless "vicariously" liable for the Mediant Intrusion because Donnelley and Mediant entered into a legal partnership and therefore Donnelley is liable as Mediant's partner for *Mediant's* supposedly unlawful conduct that resulted in the Mediant Intrusion.  SAC ¶¶ 85, 122, 130.[10]   As an initial matter, this theory fails because, for the reasons set forth in Mediant's Motion to Dismiss, the SAC fails to plead that Mediant is directly liable for the Mediant Intrusion.  Mediant's Mot. to Dismiss, § III.  In the absence of

---

[10] Specifically, Plaintiffs claim Donnelley is vicariously liable for Mediant's alleged negligence (Count I) and negligence *per se* (Count II), as well as Mediant's purported violations of California's Customer Records Act (Count VI), the UCL (Count VII), and FDUTPA (VIII).  SAC ¶¶ 130, 137, 177, 183, 185, 191.

underlying liability on the part of Mediant, Donnelley cannot have vicarious liability to Plaintiffs for Mediant's conduct. *Conte v. Cnty. of Naussau*, 596 F. App'x 1, 3 (2d Cir. 2014) (dismissal of underlying theories of liability eliminated the prospect of vicarious liability).

But even if the SAC had somehow adequately pleaded direct liability against Mediant, its vicarious liability theory against Donnelley would fail because Plaintiffs fail to plead facts showing that Donnelley and Mediant entered into a legal partnership. Under both New York and Illinois law,[11] to demonstrate the existence of a partnership Plaintiffs must allege facts establishing each of the following elements:  "(1) the parties' sharing of profits and losses; (2) the parties' joint control and management of the business; (3) the contribution by each party of property, financial resources, effort, skill, or knowledge to the business; and (4) the parties' intention to be partners." *Kidz Cloz, Inc. v. Officially for Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y.2004); *Meyer v. A & A Logistics, Inc.*, No. 13 CV 0225, 2014 WL 3687313, at *5 (N.D. Ill. July 24, 2014) ("[T]o establish the existence of a joint venture under Illinois law, a plaintiff must allege five elements: (1) an express or implied agreement to carry on some enterprise; (2) a manifestation of intent by the parties to be associated as a joint venture; (3) a joint interest as shown by the contribution of property, financial resources, effort, skill, or knowledge; (4) a degree of joint proprietorship or mutual right to the exercise of control over the enterprise; and (5) a provision for joint sharing of

---

[11] Under New York choice of law principles, the grouping of contacts analysis decides which state's law governs whether a partnership exists. *Alphonse Hotel Corp. v. Tran*, No. 13 CIV. 7859, 2014 WL 3801230, at *4–5 (S.D.N.Y. Aug. 1, 2014), *aff'd sub nom. Alphonse Hotel Corp. v. Tran*, 828 F.3d 146 (2d Cir. 2016) (applying grouping of contacts analysis to determine which law governed whether joint venture existed); *see also Scholastic, Inc. v. Harris*, 259 F.3d 73, 84 (2d Cir.2001) ("Under New York law joint ventures are governed by the same legal rules as partnerships because a joint venture is essentially a partnership for a limited purpose." (citations omitted)); *Zeising v. Kelly*, 152 F.Supp.2d 335, 347 (S.D.N.Y.2001) ("[p]rinciples of partnership law control the analysis of joint venture agreements"); *accord Landers-Scelfo v. Corp. Office Sys., Inc.*, 827 N.E.2d 1051, 1058 (Ill. App. Ct. 2005) ("[T]he only distinction of consequence between [a partnership and a joint venture] is that a joint venture relates to a single enterprise or transaction, whereas a partnership relates to a general business of a particular kind."). Because the SAC admits Donnelley is headquartered in Illinois and thus indicates that it performed its portion of the proxy services in Illinois, and Mediant is located in New York and performed its portion of the proxy services in New York, Illinois and New York provide the potentially applicable laws.

profits and losses.").[12]   Plaintiffs' allegations come nowhere near pleading these elements, however, and, indeed, fail to establish anything more than an ordinary business relationship between Mediant and Donnelley.

The SAC makes a lot out of Donnelley's use of the word "partnership" to describe the business relationship between Donnelley and Mediant, as well as its statement that Donnelley and Mediant "jointly provide proxy services to mutual funds and publicly owned companies."  SAC ¶ 1.  But referring to another party as one's "partner" or to a business arrangement as a "partnership" does not *ipso facto* transform that arrangement into a *legal* partnership.  *See In re Syngenta Mass Tort Actions*, No. 16-CV-00255, 2017 WL 54345, at *6 (S.D. Ill. Jan. 4, 2017) ("[T]he word "partner" is not sufficient to state a plausible claim that [defendants] were entered into a legal partnership.");  *Kosower v. Gutowitz*, No. 00 CIV. 9011, 2001 WL 1488440, at *6 (S.D.N.Y. Nov. 21, 2001)("[C]alling an organization a partnership does not make it one.").  Instead, to plead a legal partnership the elements of a legal partnership must be alleged.  *Syngenta*, 2017 WL 54345, at *6; *Kosower*, 2001 WL 1488440, at *6.

Here, the elements of a legal partnership manifestly *have not* been alleged. In particular, the SAC contains no allegations from which the Court can infer that Donnelley and Mediant each possessed a right to exercise control over the other's conduct of the purported partnership's business.  *See Quadro Enters., Inc. v. Avery Dennison Corp.*, No. 97 C 5402, 1997 WL 769345, at *3 (N.D. Ill. Dec. 5, 1997) ("The legal requirement of a right to manage or control has been interpreted as requiring some right by the parties to direct and govern the conduct of each other in connection with the joint venture."); *accord Village of Wellsville v. Village of Andover*, 647

---

[12] Under New York and Illinois law, partnerships are governed by the same legal rules as joint ventures.  *See* note 11, *supra*.

N.Y.S.2d 606, 607 (N.Y. App. Div. 4th Dept. 1996) ("The ultimate inquiry in determining whether a joint venture exists is whether the parties have so joined their property, interests, skills and risks that for the purpose of the particular adventure their respective contributions have become as one and *the commingled property and interests of the parties have thereby been made subject to each of the associates* on the trust and inducement that each would act for the their joint benefit.") (emphasis added) (internal quotations omitted).   Throughout the SAC, Plaintiffs rely on the existence of the so-called partnership to aver that Donnelley had the right and ability to control Mediant, (*see, e.g.*, Compl. ¶ 4), without pleading facts demonstrating the level of control required to infer the existence of a partnership in the first place.   All Plaintiffs have shown is Donnelley's management and control of *Donnelley's own* portion of the proxy services, which alone does not bespeak a right to control *Mediant*.   *See Quadro Enters.*, 1997 WL 769345, at *3 (finding no joint venture alleged where "Avery was simply responsible for producing and printing the subject work at Quadro's behest, so that Quadro could sell the finished label sheets directly to State Farm"); *Village of Wellsville*, 647 N.Y.S.2d at 607 (finding no joint venture where defendants entered into agreements with plaintiffs to use landfill, but plaintiff retained ownership and control of landfill and its equipment).   Rather, it is consistent with the performance of a business arrangement between two unaffiliated companies.

Furthermore, the SAC fails to allege—even in a conclusory manner—the "indispensable" element of sharing of profits and losses.  *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir.2003) ("An indispensable essential of a contract of partnership ... is a mutual promise or undertaking of the parties to share in the profits of the business and submit to the burden of making good the losses ."); *see also Kosower*, 2001 WL 1488440, at *6 ("It is axiomatic that . . . a partnership [] include an agreement between the principals to share losses as well as profits.").

21

Without a single allegation regarding how Mediant and Donnelley were compensated for the proxy services, or whether they agreed upfront to share profits and losses generated thereby, the SAC says nothing from which these facts can be inferred. *See Meyer*, 2014 WL 3687313, at *5 (dismissing joint venture theory where complaint contained no allegations suggesting sharing of profits and losses, finding "allegations [at most] indicate[d] that [alleged partners] had a business relationship involving transportation of truck parts").

In short, the SAC is bereft of any allegations supporting the two elements that most distinguish a partnership from a standard business arrangement: a mutual right of control and the sharing of profits and losses.[13]  Plaintiffs' attempt to plead claims against Donnelley based on the existence of a legal partnership between Mediant and Donnelley thus fails as a matter of law.

In any event, Plaintiffs' claim that Donnelley and Mediant formed a legal partnership fails for the independent reason that it is contradicted by the written Supplier Agreement between Donnelley and Mediant that governed the parties' provision of proxy services.  The Supplier Agreement expressly shows that Donnelley is "partnering" with Mediant *only* in the sense that Mediant is Donnelley's "supplier" in connection with the proxy services at issue.  Clay Decl., Ex. A at 1-2, 17, 19-21; Lauricella Decl., Ex. A at 1-2, 17, 19-21.  ████████████████

████████████████████████████████████████

████████████████   Clay Decl., Ex. A at 8; Lauricella Decl., Ex. A at 8; *see also Quadro Enters.*, 1997 WL 769345, at *3 (rejecting attempt to "recharacterize [the parties'] business relationship" as a joint venture where all plaintiff alleged was "the existence of a rather straightforward

---

[13] Given the Complaint's utter failure to allege these two most important elements of a partnership, the Court need not reach whether it has alleged the others.  But Donnelley also notes that Plaintiffs point to no factual allegations supporting an intent to form a legal partnership, despite their conclusory assertion otherwise.  And the factual allegations relating to the contributions of Donnelley and Mediant to the proxy services show nothing more than the level of contribution that would be inherent in any contract relationship for providing services to third parties.

commercial relationship between supplier and customer"); *Stanley Gudyka Sales Co., Inc. v. Lacy Forest Products Co.*, 686 F. Supp. 1301, 1305 (N.D. Ill. 1988) (agreement did not evince intent to form partnership where it repeatedly referred to plaintiff as "independent contractor"). Furthermore, the language in the agreement belies any intention to share losses. *See* Clay Decl., Ex. A at 9 (█████████████████████████████████████████████████████ ███████); Lauricella Decl., Ex. A at 9 (same); Clay Decl., Ex. B § 14 (limiting Donnelley's liability to Mediant and third parties); Lauricella Decl., Ex. B at § 14 (same); *see also Autotech Techs. LP v. Automationdirect.com, Inc.*, No. 05 C 5488, 2005 WL 3180147, at *6 (N.D. Ill. Nov. 23, 2005), *aff'd sub nom. Autotech Tech. LP v. Automationdirect.com*, 471 F.3d 745 (7th Cir. 2006) ("In the 1999 contract, the necessary element of joint liability for all debts and obligations is expressly disclaimed and therefore the legal relationship of a joint venture or partnership could not exist between Autotech and ADC."); *Slip-N-Slide Records, Inc. v. Island Def Jam Music Grp.*, No. 13-CV-04450 ALC, 2014 WL 2119857, at *2–4 (S.D.N.Y. May 21, 2014) ("[T]he Court finds that the parties did not evince an intent to form a joint venture, given that the Agreement is a product of an arm's length commercial transaction between the parties that does not bare [sic] any indicia of a fiduciary relationship, and that it expressly disavows a joint venture.").

Thus, even if the factual allegations in the SAC supported an inference that a legal partnership existed between Donnelley and Mediant (which they do not), the Supplier Agreement between Donnelley and Mediant, which the Court may consider in ruling on Donnelley's motion to dismiss, *see* note 1 *supra*, conclusively demonstrates there was no such partnership. That agreement makes crystal clear that Donnelley and Mediant did not intend to form a partnership to perform the proxy services in question, did not share profits or losses in connection with the provision of those services, did not exercise control over one another's actions pursuant to that

agreement, and only contributed to the proxy services to the extent inherent in any relationship for providing services to third parties.

### 2. Plaintiffs' Claims Against the Unpleaded "Partnership" Fail

In addition to asserting Donnelley is vicariously liable for Mediant's legal violations on account of the supposed "Partnership," Plaintiffs assert several claims "against" the supposed "Partnership" itself: for Breach of Contracts as to which Plaintiffs Are Third-Party Beneficiaries (Count III), Unjust Enrichment (Count IV), and Declaratory Judgment (Count V). SAC 43-44, 46. However, these attempts to sue the "Partnership" fail because, as noted in Part IV.B.1 *supra*, Plaintiffs have not adequately alleged that Donnelley and Mediant formed a legal partnership in the first place. In any event, even if a legal partnership between Donnelley and Mediant were adequately pleaded, Plaintiffs' claims against that partnership would still be subject to dismissal for a number of reasons, as shown below.

### a. Plaintiffs Fail to State a Claim for Breach of Contracts as to Which They Are Purportedly Third-Party Beneficiaries

Plaintiffs allege that, as to the entities in which they invested, "Donnelley had the direct contractual relationship." SAC ¶¶ 30, 37, 43. But Plaintiffs fail to allege the specific terms in Donnelley's purported contracts with its clients (allegedly formed on behalf of the partnership) that Donnelley or Mediant supposedly breached, much less explain how they were breached. Rather, Plaintiffs generically allege that the contracts "contained provisions requiring Donnelley and/or Mediant to protect the investor information that Donnelley and/or Mediant received" and that "Defendants breached these contracts" by "not protecting Plaintiffs' and Class Members' Personal Information."[14] Under well-established pleading standards, this is not enough to survive

---

[14] After performing a diligent search, Donnelley has been unable to locate integrated written contracts with any of the entities that provided Plaintiffs' information to Mediant in connection with the proxy services. Clay Decl. ¶ 5.

Rule 12(b)(6) dismissal. *See Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 183 (S.D.N.Y. 2009) ("For a breach of contract claim, plaintiff must provide specific allegations as to the agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue.").[15]

In addition, contract claims require causation and damages, *Junger v. John V. Dinan Associates, Inc.*, 84 N.Y.S.3d 574, 577 (N.Y. App. Div. 2d Dept. 2018), *Razor Capital v. Antaal*, 972 N.E.2d 1238, 1246 (Ill. App. Ct. 2012),[16] and for the reasons discussed *supra* at Section IV.A.1.c, Plaintiffs allege no cognizable injury from the Mediant Intrusion.

Finally, the SAC fails to plead facts showing that Plaintiffs are intended third-party beneficiaries of—and are thereby entitled to enforce—any contracts between Donnelley and the entities that provided Plaintiffs' information to Mediant.[17]   Under Illinois law, "[t]here is . . . a strong presumption . . . that the contracting parties intend that the terms of their agreement apply only to them, not to others." *James v. SCR Med. Transp., Inc.*, 61 N.E.3d 1043, 1052 (Ill. App.

---

Donnelley does not believe such integrated written contracts exist governing the provision of proxy services to these entities.  Clay Decl. ¶ 5.

[15] This Court's holding that Plaintiffs pleaded their *standing* to bring a third-party beneficiary claim for purposes of Rule 12(b)(1) does not affect the analysis.  As the Court noted, at the Rule 12(b)(1) stage, the Court must "presume that general allegations embrace those specific facts that are necessary to support the claim."  Op. at 16-17.  By contrast, at the Rule 12(b)(6) stage, Plaintiffs must allege specific facts showing entitlement to relief—even when, as this Court has held, they are authorized to plead those facts "on information and belief" (Op. at 17).  *See Williams v. Calderoni*, No. 11 Civ. 3020, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012), *aff'd sub nom. Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013) (rejecting under *Twombly* allegations pled on information and belief, because the allegations "are not statements of fact; they are conclusory").

[16] Plaintiffs' contract claims are governed by either Illinois or New York law, because, as explained in Section IV.B.1, *supra*, the alleged partnership is either an Illinois or New York entity and the alleged contracts concern proxy services performed by Donnelley in Illinois and Mediant in New York.  *See AIU Ins. Co. v. TIG Ins. Co.*, 577 F. App'x 24, 26 (2d Cir. 2014) (applying New York's "grouping of contacts" analysis to determine which state's law governed contract claim and considering "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties").  Plaintiffs have alleged no facts suggesting another state has a more significant interest than Illinois or New York in having its law apply to contract claims asserted against the supposed partnership.  *See Bank of N.Y. v. Yugoimport*, 745 F.3d 599, 609 (2d Cir. 2014) ("This [grouping of contacts] approach requires application of the law of the jurisdiction with the most significant interest in, or relationship to, the dispute.").

[17] "Whether a plaintiff is a third-party beneficiary of a contract is a legal conclusion that [courts] need not accept for the purpose of a motion to dismiss." *Choi v. Chase Manhattan Mortg. Co.*, 63 F. Supp. 2d 874, 881 (N.D. Ill. 1999).

Ct. 2016).  "[I]t is not enough that the parties know, expect or even intend that another will benefit." *Dachev v. Rich Am., Inc.*, No. 17-CV-5729, 2019 WL 423192, at \*5 (N.D. Ill. Feb. 4, 2019). Instead, the benefit must be immediate and expressly contemplated by the parties, rather than just incidental.  *Id.*  Thus, to sustain a third-party beneficiary claim, "[t]he promisor's intention" to benefit the plaintiff "must be evidenced by an express provision in the contract identifying the third-party beneficiary." *Wheeling Trust & Savings Bank v. Tremco Incorp.*, 505 N.E.2d 1045, 1048 (Ill. App. Ct.1987).  Here, Plaintiffs do not allege that the contracts identified them.  *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 927 (Ill. App. Ct. 2009)  (dismissing third-party beneficiary claim because the claimant could cite no contract language that identified him). Plaintiffs merely allege that any agreed-to security protections incidentally benefited them.  SAC ¶¶ 146, 148.  Indeed, the SAC only implies (and the implication is not even expressly alleged) that Donnelley and its clients "knew" that security protections would benefit unnamed data owners, including Plaintiffs. But the knowledge that "someone . . . farther up the chain of supply" will benefit from a contractual commitment "has never been enough under Illinois law to be viewed as 'direct' rather than 'indirect.'" *Slate Printing Co. v. Metro Envelope Co.*, 532 F. Supp. 431, 433–34 (N.D. Ill. 1982).

Likewise, under New York law, "third-party beneficiary status is conferred only where no one other than the third-party can recover if the promisor breaches the contract or that the language of the contract otherwise clearly evidences an intent to permit enforcement by the third-party[.]" *Abu Dhabi Com. Bank*, 651 F. Supp. 2d at 185 (internal quotations omitted).  Even where contracting parties generally intend to confer third-party beneficiary status, "not all consequential damages which flow from a breach of the contract are recoverable by the third party." *Alicea v. City of N.Y.*, 145 A.D.2d 315, 317, 534 N.Y.S.2d 983, 985 (1988).  Instead, "[t]he contract must

evince a discernible intent to allow recovery for the specific damages to the third party that result from a breach thereof before a cause of action is stated." *Id.*  Plaintiffs do not allege that the entities with whom Donnelley purportedly contracted cannot recover under those alleged contracts.  Nor do Plaintiffs allege facts sufficient to give rise to a plausible inference that any of these contracts "clearly evidence[] an intent to permit enforcement" by Plaintiffs. *Abu Dhabi Com. Bank*, 651 F. Supp. 2d at 185 (dismissing third-party beneficiary claim).  New York law requires that such intent "be shown on the face of the contract." *Id.*  Conclusory statements like the SAC's declaration that the alleged data protection provisions were "intentionally included for the direct benefit of Plaintiffs and Class Members" (SAC ¶ 147) do not meet this requirement. *Id.* (conclusory statements that defendants entered into certain contractual obligations for "the purpose and intent to benefit directly the plaintiff Class" did not evidence an intent to permit enforcement by plaintiffs).  Finally, Plaintiffs do not allege *any facts* supporting an inference that the alleged contracts evinced a total commitment to compensate any and all losses for any individual who happened to invest in an entity for which Donnelley provided certain, discrete services.[18]

### b.    The SAC Fails to Plead Unjust Enrichment

Plaintiffs' unjust enrichment claim against the supposed partnership fails under both Illinois and New York law.[19]

---

[18] To the extent Plaintiffs' contract claim is asserted against Donnelley in its individual capacity, it fails for the reasons described above.  Additionally, it fails because the SAC includes no allegations that *Donnelley* failed to protect any personal information.  Plaintiffs merely assert, without any specifics, that Donnelley failed to exercise proper oversight over Mediant, which in turn allegedly failed to protect Plaintiffs' personal information.  But Plaintiffs do not plead that any contract between Donnelley and any of the Donnelley clients in question required Donnelley to exercise any level of oversight over third parties such as Mediant that received information directly from that Donnelley client.  *See Abu Dhabi Com. Bank*, 651 F. Supp. 2d at 183.

[19] Because Plaintiffs' unjust enrichment claim does not relate to an enforceable contract, New York's choice-of-law interest analysis applicable to tort actions properly applies. *See 2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assur. Co.,* 96 F. Supp. 3d 182, 233–34 (S.D.N.Y. 2015).  As discussed *supra* at Section IV.A.1.a, that analysis calls for the application of either Illinois or New York law to claims asserted against the partnership, as that is where the alleged misconduct took place.

The SAC's theory of unjust enrichment is that, when Mediant received Plaintiffs' personal information from its clients, the Defendants were "benefitted by the conferral upon the Partnership of" that personal information.  SAC ¶ 152.  In particular, Plaintiffs assert that Defendants were benefitted by "their ability to retain and use" Plaintiffs' personal information.  *Id.*  But Plaintiffs fail to allege, as they must under Illinois law in a situation where, as here, Plaintiffs would be seeking to recover a benefit transferred to the partnership by a third party, facts showing that "(1) the benefit should have been given to [Plaintiffs], but the third party mistakenly gave it to [Defendants] instead . . . , (2) [Defendants] procured the benefit from the third party through some type of wrongful conduct . . . , or (3) [Plaintiffs] for some other reason had a better claim to the benefit than [Defendants]."  *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (internal citations omitted).

The indirectness of the alleged benefit likewise bars Plaintiffs' unjust enrichment claims under New York law.  "To prevail on a claim of unjust enrichment, a plaintiff must establish that it conferred a benefit upon the defendant, and that the defendant will obtain that benefit without adequately compensating the plaintiff therefor[.]"  *Jetro Holdings, LLC v MasterCard Int'l, Inc.*, No. 60374/2015, 2016 WL 1761971, at *10 (N.Y. Sup. Ct., May 03, 2016), *aff'd*, 88 N.Y.S.3d 193 (N.Y. App. Div. 2d Dept. 2018); *see also id.* ("[A] plaintiff must show that: (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered[.]").  But the SAC fails to allege the supposed "benefit" (*i.e.* the ability to retain and use Plaintiff's data) was conferred upon Defendants *by Plaintiffs*, as required to state a claim for unjust enrichment under New York law. *See id.* (dismissing claim for unjust enrichment where benefits received by defendant were conferred by third party pursuant to agreement between defendant and third party).  The SAC

28

alleges that Plaintiffs' data was transferred to Mediant by entities in which Plaintiffs were investors in connection with the provision of proxy services to those entites.  SAC ¶ 20.  Accordingly, Plaintiffs cannot state a claim against the supposed partnership for unjust enrichment.

Leaving aside the indirect nature of the supposed benefit, Plaintiffs also fail to allege facts suggesting that Defendants' benefiting from the personal information was "unjust" because they do not claim that Donnelley or Mediant failed to provide the services relevant to Mediant's receipt of their personal information, namely, provision of shareholder materials and coordinating and tabulating shareholder votes.  As in the countless data breach cases that have dismissed unjust enrichment claims for similar reasons, plaintiffs have "not alleged a benefit conferred in exchange for protection of [their] personal information[.]"  *Supervalu*, 925 F.3d at 966 (Illinois law); *see also Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) (dismissing unjust enrichment claim under Illinois law because plaintiff "paid for food products. [He] did not pay for a side order of data security and protection"); *Hy-Vee*, 455 F. Supp. 3d at 765-66 (dismissing unjust enrichment data breach claim under Illinois law because "Plaintiffs have not alleged that any specific portion of their payments went toward data protection"); *Jetro Holdings, LLC v. MasterCard Intl., Inc.*, 88 N.Y.S.3d 193, 197 (N.Y. App. Div. 2d Dept. 2018) (affirming dismissal of unjust enrichment claim because receipt of alleged benefit was independent of harm purportedly caused to plaintiff, and so "it [could not] be said that [defendant] unjustly benefitted from its action").[20]  Accordingly, this claim must be dismissed.[21]

---

[20] Moreover, to the extent the Court agrees that Plaintiffs have sufficiently pleaded they are third-party beneficiaries of contracts between Donnelley and the entities that provided Plaintiffs' information to Mediant, the unjust enrichment claim must be dismissed because, "[w]here there is an express contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Martis v. Pekin Mem'l Hosp. Inc.*, 917 N.E.2d 598, 606 (Ill. App. Ct. 2009) (dismissing unjust enrichment claim because plaintiff and defendant were in third-party beneficiary relationship); *Osan Ltd. v. Accenture LLP*, 454 F.Supp.2d 46, 58 (E.D.N.Y. 2006) (same).

[21] To the extent Plaintiffs have asserted an unjust enrichment claim against Donnelley in its individual capacity, that claim can only be governed by Illinois law and it fails under the Illinois authorities described above.  Further, it fails

29

c.      **The Declaratory Judgment Claim Is Subject to Dismissal**

The SAC's claim for "Declaratory Judgment" under the Declaratory Judgment Act (Count V) must be dismissed as well.  A request for declaratory judgment is not an independent cause of action, only a request for relief as to an independently sufficient claim, and as explained above Plaintiffs do not state a substantive claim for recovery.  *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("[A] court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief.").  In addition, the Declaratory Judgment Act expressly limits its application to cases "of actual controversy," *i.e.*, situations where the plaintiff is likely to be injured by defendant's future conduct. 28 U.S.C. § 2201(a); *Cummins v. Select Portfolio Servicing, Inc.*, No. 14-CV-5121, 2016 WL 4766237, at *4 (E.D.N.Y. Sept. 13, 2016) ("Plaintiff cannot . . . seek declaratory judgment where she does not face actual or imminent harm[.]"); *John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11-CV-5453, 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011) ("[D]eclaratory relief is intended to operate prospectively. There is no basis for declaratory relief where only past acts are involved.").  Plaintiffs fail to allege facts suggesting that either the alleged partnership's or Donnelley's current practices with respect to Mediant's data security practices are likely to injure Plaintiffs in the future.

## V.      CONCLUSION

For the forgoing reasons, the Court should dismiss with prejudice the SAC's claims against Donnelley pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

---

because Donnelley never received the purported benefit at issue here.  *See HPI Health Care Servs.*, 545 N.E.2d at 679 (requiring retention of benefit by defendant). The SAC concedes that Donnelley itself never collected Plaintiffs' personal information and relies only on a theory of "partnership" that is unsupported by factual allegations.  *See* Section IV.B.1, *supra*.  This claim, accordingly, cannot be asserted as a direct claim against Donnelley.  *See* Section IV.B.2.a, *supra*.

30

Dated:  April 5, 2021

                                   Respectfully submitted,

                                   Orrick, Herrington & Sutcliffe LLP


                                    By:         /s/ Douglas H. Meal
                                              Douglas H. Meal

                                   Douglas H. Meal
                                   ORRICK, HERRINGTON & SUTCLIFFE LLP
                                   222 Berkeley Street, Suite 2000
                                   Boston, Massachusetts 02116
                                   Telephone:  (617) 880-1800
                                   Email:  **dmeal@orrick.com**

                                   Michelle Visser (admitted *pro hac vice*)
                                   ORRICK, HERRINGTON & SUTCLIFFE LLP
                                   405 Howard Street
                                   San Francisco, California 94102
                                   Telephone:  (415) 773-5700
                                   Email:  **mvisser@orrick.com**

                                   David T. Cohen
                                   ORRICK, HERRINGTON & SUTCLIFFE LLP
                                   51 West 52nd Street
                                   New York, NY 10019
                                   Telephone:  (212) 506-5000
                                   Email:  **david.cohen@orrick.com**

                                    *Attorneys for Defendant*
                                    Donnelley Financial Solutions, Inc.