**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHILLIP TORETTO, DANIEL C. KING, and SHERI BRAUN, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>DONNELLEY FINANCIAL SOLUTIONS, INC. and MEDIANT COMMUNICATIONS, INC., individually and as general partners,<br><br>      Defendants. | Case No. 1:20-cv-02667-GHW |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND FOR PLAINTIFF SERVICE AWARDS**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

BACKGROUND ....................................................................................................... 1

I.  FACTUAL BACKGROUND ............................................................................ 2

  A.  Class Counsel Investigates and Vigorously Litigates the Claims ....................... 2

  B.  Class Counsel Commits Time and Resources to Achieving the Settlement Agreement .... 4

  C.  Terms of the Settlement and the Court's Preliminary Approval ....................... 5

  D.  Class Counsel Secures Preliminary Approval and Works on Issuance of Notice ............. 7

ARGUMENT……………………………………………………………………………...8

I.  THE REQUESTED ATTORNEYS' FEES ARE REASONABLE ....................................... 8

  A.  The Lodestar Method Confirms the Reasonableness of Class Counsel's Requested
      Attorneys' Fees ................................................................................... 10

  B.  Class Counsel's Fees are Reasonable under the *Goldberger* Factors ............................. 14

    1.  The time and labor expended by Class Counsel ........................................ 15

    2.  The magnitude and complexities of the litigation ...................................... 16

    3.  The risk of the litigation ................................................................. 17

    4.  The quality of the representation ...................................................... 19

    5.  The requested fee in relation to the settlement ....................................... 20

II.  THE REQUESTED SERVICE AWARDS FOR PLAINTIFFS ARE FAIR AND
     REASONABLE ................................................................................ 22

CONCLUSION ..................................................................................... 23

## **TABLE OF AUTHORITIES**

Cases

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd.*
   *of Elections*, 522 F.3d 182 (2d Cir. 2008)....................................................................... 9

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) .................................................................................... 21

*Braun v. Mediant Commc'ns, Inc.*,
   No. 19-62563-CIV, 2020 WL 5038780 (S.D. Fla. Apr. 14, 2020)............................................ 3

*Chin v. RCN Corp.*,
   No. 08-cv-7349, 2010 WL 3958794 (S.D.N.Y. Sept. 8, 2010) ................................................. 9

*City of Detroit v. Grinnell*,
   495 F.2d 448 (2d Cir. 1974)............................................................................................... 18

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
   No. 12-cv-0256, 2021 WL 2453972 (S.D.N.Y. June 15, 2021) ............................................ 11

*Eltman v. Grandma Lee's, Inc.*,
   No. 82 Civ. 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986)................................................ 21

*Farbotko v. Clinton County of New York*,
   433 F.3d 204 (2d Cir. 2005)............................................................................................... 12

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d Cir. 2000)........................................................................................... passim

*Hammond v. The Bank of New York Mellon Corp.*,
   No. 08-cv-6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ........................................ 16, 17

*In re Anthem Data Breach Litig.*,
   No. 15-MD-02617, 2018 WL 3960068 (N.D. Cal. Aug 17, 2018) .................................... 18, 19

*In re Austrian and German Bank Holocaust Litig.*,
   80 F.Supp. 2d 164 (S.D.N.Y. 2000)........................................................................................ 16

*In re Equifax Inc. Customer Data Security Breach Litig.*,
   No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020)............................................ 15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................................ 13

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019)................................................................................... 22

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................... 12, 17, 18

*In re Ntl Inc., Sec. Litig.*,
   No. 02-cv-3013, 2007 WL 623808 (S.D.N.Y. Mar. 1, 2007).................................................. 14

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06-cv-5173, 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ........................................ 8, 9, 10

*In re Sumitomo Copper Litig.*,
    74 F.Supp.2d 393 (S.D.N.Y. 1999) ....................................................................................... 21

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05-MDL-01695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ............................ 13, 14, 18

*Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary*
    *Corp.*, 540 F.2d 102 (3d Cir. 1976) ..................................................................................... 19

*McBean v. City of New York*,
    233 F.R.D. 377 (S.D.N.Y. 2006) ............................................................................................. 8

*McMorris v. Carlos Lopez & Assocs., LLC*,
    995 F.3d 295 (2d Cir. 2021) ...................................................................................... 4, 17, 18

*Midamines Sprl Ltd. v. KBC Bank NV*,
    No. 12-cv-8089, 2016 WL 1071028 (S.D.N.Y. Mar. 16, 2016) ......................................... 9, 10

*Sackin v. TransPerfect Global, Inc.*,
    278 F.Supp.3d 739 (S.D.N.Y. 2017) ....................................................................................... 17

*Savoie v. Merchants Bank*,
    166 F.3d 456 (2d Cir. 1999) ..................................................................................................... 9

*Sukhnandan v. Royal Health Care of Long Island LLC*,
    No. 12-cv-4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) .......................................... 8, 22

*Taft v. Ackermans*,
    No. 02-cv-7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ............................................... 20

*Toretto v. Donnelley Fin. Sols., Inc.*,
    523 F. Supp. 3d 464 (S.D.N.Y. 2021) ....................................................................................... 3

*Toretto v. Donnelley Financial Solutions Inc.*,
    No. 20-cv-2667, 2022 WL 348412, at *12 (S.D.N.Y. Feb. 4, 2022)...........................4, 15, 19

*Toretto v. Mediant Commc'ns, Inc.*,
    No. 19-cv-05208, 2020 WL 1288478 (N.D. Cal. Mar. 18, 2020) ............................................ 2

*Townsend v. Benjamin Enter., Inc.*,
    679 F.3d 41 (2d Cir. 2012) ..................................................................................................... 12

*Vista Outdoor Inc. v. Reeves Fam. Tr.*,
    No. 16-cv-5766, 2018 WL 3104631 (S.D.N.Y. May 24, 2018) ............................................. 12


Rules

Fed. R. Civ. P. 23 ......................................................................................................................... 8

Federal Rule of Civil Procedure 12 ............................................................................................ 3, 4

iii

## INTRODUCTION

After engaging in nearly three years of vigorous litigation and taking on significant contingency risk, Class Counsel negotiated a comprehensive settlement that provides meaningful relief to the Settlement Class Members whose personal data was exposed in Mediant's April 2019 Data Security Incident. The Settlement Agreement is an excellent result, both compensating the Settlement Class Members for time and money spent responding to the Data Security Incident and protecting them from future harm through free access to a high-quality credit monitoring product and data security reforms by Mediant. Therefore, and in accordance with the terms of the Settlement Agreement, Class Counsel respectfully move this Court for an award of $700,000 in attorneys' fees and expenses, and for service awards of $2,500 for each of the three Plaintiffs, which will be paid separately by Mediant and will not reduce any of the relief being made available to the Class.

Given the complexity and risk involved in litigating this case, the time Class Counsel dedicated to investigating, litigating, and resolving it, and the excellent result achieved for the Settlement Class, the requested award of $700,000 in attorneys' fees and expenses is reasonable. This is confirmed by both Class Counsel's lodestar, which demonstrates that the requested award represents a significant negative multiplier on Class Counsel's time in this case, as well as by an analysis of the factors set forth by the Second Circuit in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Further, because of the Plaintiffs' role in securing relief for the Settlement Class, a service award of $2,500 each is fair and reasonable.

## BACKGROUND

Investigating, litigating, and achieving a successful resolution of this case required a substantial commitment of time and resources from Class Counsel. This section summarizes Class Counsel's work on litigating this case, their efforts to bring about the Settlement

Agreement, the additional work they have performed since the Court granted preliminary approval of the Settlement Agreement and directed notice of it to the Settlement Class, and the work that they expect to perform during the Settlement Administration and final approval processes.[1]

## I.     FACTUAL BACKGROUND

### A.     CLASS COUNSEL INVESTIGATES AND VIGOROUSLY LITIGATES THE CLAIMS

In April 2019, hackers exploited a vulnerability in Mediant's software to gain unauthorized access to four of its business email accounts and exfiltrate the identifying personal and financial information of over 200,000 individuals from all fifty states, the District of Columbia, and Puerto Rico (the "Data Security Incident"). Dkt. 57 (Second Amended Complaint ("Complaint" or "Compl.")), ¶¶ 2, 17. The Plaintiffs are investors whose personal information was compromised in the Data Security Incident. *Id.* ¶¶ 29-30, 36-37, 42-43.

After speaking with several individuals impacted by the Data Security Incident, including the Plaintiffs, and investigating and researching their potential claims, Class Counsel filed two separate lawsuits: a putative class action against Mediant in the Northern District of California on behalf of Phillip Toretto and Daniel C. King, and a similar action in the Southern District of Florida on behalf of Sheri Braun.[2] *See* Declaration of Class Counsel ("Class Counsel Decl.") ¶¶ 13-15. Mediant lodged its opposition from the very start, moving to dismiss both actions on jurisdictional grounds. Class Counsel engaged in full briefing and argument of Mediant's motions, but after both cases were dismissed for lack of personal jurisdiction, *see Toretto v.*

---

[1] All capitalized terms herein are used as defined in the parties' Settlement Agreement. Dkt. Ex. 146-1.

[2] Norm Siegel and J. Austin Moore of Stueve Siegel Hanson LLP and Elaine Ryan, who was then with the law firm Bonnett Fairbourn Friedman & Balint, represented the Plaintiffs in the California case, and John Yanchunis of Morgan & Morgan represented the Plaintiff in the Florida case.

*Mediant Commc'ns, Inc.*, No. 19-cv-05208, 2020 WL 1288478, at *6 (N.D. Cal. Mar. 18, 2020); *Braun v. Mediant Commc'ns, Inc.*, No. 19-62563-CIV, 2020 WL 5038780, at *4 (S.D. Fla. Apr. 14, 2020), Class Counsel consolidated their actions and filed a class action complaint in this Court. Class Counsel Decl. ¶ 18. In their complaint, Plaintiffs asserted claims against Mediant and its alleged business partner, Donnelley Financial Solutions, Inc., for negligence, negligence per se, breach of contract, unjust enrichment, a declaratory judgment, and violations of California and Florida statutes. Dkt. 1. Two amended complaints followed. Dkts. 23, 57.

The claims in the Second Amended Complaint faced vigorous challenge from the two defendants, who twice moved for its dismissal. Both sets of motions required pre-motion argument and substantive and detailed briefing by Class Counsel. *See* Class Counsel Decl. ¶¶ 20-23. In the first round of briefing, each defendant filed a motion challenging Plaintiffs' Article III standing to bring claims against them pursuant to Federal Rule of Civil Procedure 12(b)(1), with Donnelley arguing that the two defendants were not "partners" such that Donnelley could be held liable for Mediant's cybersecurity deficiencies, Dkt. 68, at 5-14, and Mediant arguing that it could not be liable for breaching contracts that Donnelley had entered. Dkt. 66, at 3-8. Class Counsel's response required a detailed analysis of whether the defendants' challenges appropriately went to threshold Article III standing or the merits, Dkt. 71, at 10-13, whether Plaintiffs' allegations met the definition of "partnership" under Illinois law, *id*. at 13-17, and whether Plaintiffs had sufficiently alleged that they were third-party beneficiaries to Mediant's contract with Donnelley. *Id*. at 20-23; *see also* Class Counsel Decl. ¶ 20. Ultimately, Class Counsel were successful in their defense, as this Court denied both defendants' motions. *Toretto v. Donnelley Fin. Sols., Inc.*, 523 F. Supp. 3d 464, 473, 475-76, 478 (S.D.N.Y. 2021).

Each defendant then once again moved to dismiss the Second Amended Complaint, this time pursuant to Rule 12(b)(6). Dkts. 94, 96. Class Counsel responded to both defendants' arguments in a Consolidated Opposition, which spanned nearly 60 pages and analyzed multiple issues under the laws of several jurisdictions. Dkt. 108; *see also* Class Counsel Decl. ¶ 22. For example, Class Counsel analyzed whether Mediant and Donnelley could be characterized as "partners" under New York law, Dkt. 108, at 8-19; whether Plaintiffs had adequately stated a claim for damages under the analysis of the recently decided *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 301-03 (2d Cir. 2021), *id*. at 19-30; whether they had pleaded each element of their negligence claim under New York law (after conducting a prerequisite choice of law analysis), *id*. at 32-45; and whether they had adequately alleged claims under Florida's Deceptive and Unfair Trade Practices Act, California's Unfair Competition Law, and California's Customer Records Act. *Id*. at 51-58. After considering the parties' full briefing on the motions, Dkts. 95, 98, 108, the Court granted Donnelley's motion, found that Plaintiffs had adequately stated claims for negligence and for a declaratory judgment against Mediant, dismissed the remainder of Plaintiffs' claims against Mediant, and granted leave to amend as to the dismissed claims. 2022 WL 348412, at *1, 6, 21 (Feb. 4, 2022).

## B.   CLASS COUNSEL COMMITS TIME AND RESOURCES TO ACHIEVING THE SETTLEMENT AGREEMENT

At several different points in the litigation, Class Counsel engaged in time-consuming settlement negotiations with counsel for Mediant. Before filing the initial complaint in this Court, Class Counsel and Mediant participated in a full-day mediation with the assistance of mediator Rodney Max of Upchurch Watson White & Max. Class Counsel Decl. ¶ 17. Following that mediation, the Parties continued negotiations through Mr. Max and directly through counsel, but were unsuccessful at reaching resolution. *Id*. The Parties thereafter suspended negotiations

and proceeded to litigation in this Court. *Id*. ¶ 18. After Mediant's and Donnelley's 12(b)(6) motions to dismiss were fully briefed, Class Counsel re-engaged in good faith, arm's-length settlement discussions. *Id*. ¶¶ 24-26. Then, on February 4, 2022, the Court ruled on Defendants' 12(b)(6) motions, which helped define the scope of the case. Dkt. 127. The Parties then jointly requested a stay of this Action so that they could continue their discussions, which this Court granted. Dkt. 129, 130. On March 28, 2022, the Parties participated in a second mediation with Mr. Max, which was successful. Class Counsel Decl. ¶ 26.

On March 30, 2022, the Parties finalized and executed a Term Sheet, which represented an agreement in principle on the terms of the Settlement. *Id*. After reaching this agreement in principle, the Parties continued to work for over two months to finalize the terms of the Settlement Agreement ("Settlement" or "Agreement"). *Id*.

## C. TERMS OF THE SETTLEMENT AND THE COURT'S PRELIMINARY APPROVAL

The Settlement negotiated by Class Counsel provides meaningful and comprehensive relief to the Settlement Class of "approximately 224,650 individuals who were mailed a notification that their personal information may have been impacted in the Data Security Incident experienced by Mediant on or around April 1, 2019." *See* Settlement Agreement, Dkt. 146-1, ¶ 26(dd). First, it reimburses Settlement Class Members for the time and money that they have already spent responding to the Data Security Incident. These benefits include cash payments for Lost Time of up to eight hours spent responding to the Data Security Incident, and for Out-of-Pocket Losses of up to $10,000 that were incurred as a result of it. *Id*. ¶¶ 27-28.[3] The cash funds available to settle these claims is uncapped, meaning that Settlement Class Members will be paid

---

[3] While this section provides an overview of the Settlement, a more detailed description of its terms is set forth in the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement Pursuant to Rule 23(e). Dkt. 146, at 7-15.

100% of their losses (subject to the individual caps set forth in the Settlement Agreement), without any risk of a reduction based on the number of Claimants. Class Counsel Decl. ¶ 27.

Further, the Settlement offers Settlement Class Members two forms of prospective protection against further harm due to the Data Security Incident: first, free access to two years of a high-quality credit-monitoring product provided by Aura's Identity Defense Total Services that will monitor for fraudulent or unusual activity on Settlement Class Members' financial and other accounts. Dkt. 146-1, ¶ 30; Class Counsel Decl. ¶ 27. This benefit is available to all Settlement Class Members, whether or not they submit a claim under the Settlement. Dkt. 146-1, ¶ 30.[4]

Second, Mediant is contractually obligated to adopt and implement comprehensive data security reforms specifically designed to protect the personal information in its possession. Dkt. 146-1, ¶ 31; Class Counsel Decl. ¶ 27. This will include the security system and practice enhancements described in Exhibit A to the Settlement Agreement.[5] Dkt. 152, Ex. 1-A. And finally, as another benefit to the Settlement Class Members, Mediant has agreed to separately pay for all costs of the notice and claims administration process, including the fees and expenses of the Settlement Administrator. Dkt 146-1, ¶ 57; Class Counsel Decl. ¶ 28.

After the substantive terms of the Settlement were agreed-upon, Class Counsel negotiated attorneys' fees and costs, as well as service awards for the Plaintiffs, with Mediant. Dkt. 146-1, ¶ 58; Class Counsel Decl. ¶ 29. Prior to that point, the Parties had only discussed that Mediant would separately pay for reasonable attorneys' fees and expenses, as approved by the Court. Dkt.

---

[4] While the Parties were able to secure discounted pricing based on the size of the Settlement Class, the actual market value of this settlement benefit can fairly be estimated at approximately $360 per Settlement Class Member ($15 per Settlement Class Member for 24 months), or over $80 million in services made available to the Settlement Class as a whole. Class Counsel Decl., ¶ 27.

[5] This document has been submitted to the Court under seal. *See* Dkt. 155.

146-1, ¶ 58; Class Counsel Decl., ¶ 29. Pursuant to the Settlement, Mediant will not object to a request by Class Counsel for attorneys' fees and expenses of up to $700,000. Dkt. 146-1, ¶ 59; Class Counsel Decl. ¶ 30. Mediant has also agreed not to object to a request for service awards for the three Plaintiffs in the amount of $2,500 each, in recognition of the time, effort, and expense they incurred in pursing claims that ultimately benefited the entire Settlement Class. Dkt. 146-1, ¶ 60; Class Counsel Decl. ¶ 30.

Mediant will pay for these attorneys' fees, expenses, and service awards, as approved by the Court, separate and apart from all other relief made available under the Settlement. Dkt. 146-1, ¶¶ 61-62; Class Counsel Decl. ¶ 30. As a result, the payment of attorneys' fees, expenses and service awards will not reduce any of the relief made available to Settlement Class Members. Dkt. 146-1, ¶ 62; Class Counsel Decl. ¶ 31.

### D. CLASS COUNSEL SECURES PRELIMINARY APPROVAL AND WORKS ON ISSUANCE OF NOTICE

On June 17, 2022, Class Counsel filed an Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement Pursuant to Rule 23(e). Dkt. 145. The motion was granted on June 24, 2022, wherein the Court concluded it would likely approve the Settlement as fair, reasonable, and adequate and certify the Settlement Class for purposes of judgment on the proposal, and thus directed that notice be issued to the Class. Dkt. 153 (the "Order"), ¶¶ 6-15. In addition, for purposes of issuing notice of the Settlement, the Court appointed J. Austin Moore of Stueve Siegel Hanson, LLP, Elaine A. Ryan of Auer Ryan P.C., and John A. Yanchunis of Morgan & Morgan as interim class counsel pursuant to Rule 23(g)(3). *Id*. ¶ 16. The Court appointed Epiq Class Action and Claims Solutions, Inc. ("Epiq") to serve as the Settlement Administrator and to execute the Notice plan set forth in the Settlement Agreement. *Id*. ¶¶ 17-20.

Since that time, Class Counsel has worked with Epiq and counsel for Mediant on issuing Notice to the Settlement Class, including by reviewing and approving the final notice forms, reviewing and providing feedback on the Settlement Website and Settlement Toll-Free Number, and responding to questions from Class Members. Class Counsel Decl. ¶ 34. Epiq began to mail notice to Class Members on August 24, 2022, a process which was completed on September 7, 2022. *Id*.

## ARGUMENT

### I.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

"Reasonableness is the touchstone when determining whether to award attorneys' fees." *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-cv-4216, 2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014); *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."). In this case, in accordance with the terms of the Parties' Settlement Agreement, Class Counsel seeks $700,000 in compensation for their time and expenses in litigating and favorably resolving this action. Where, as here, the defendant has agreed to pay the negotiated fees in addition to any recovery to the class, "the danger of conflicts of interest between attorneys and class members is diminished," *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-cv-5173, 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008), and "the Court's fiduciary role in overseeing the award is greatly reduced." *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006). Nonetheless, the court must "assess the reasonableness of the fee award," *In re Sony*, 2008 WL 1956267, at *15, an assessment which is "properly committed to the sound discretion of the district court." *Goldberger v. Integrated Resources Inc*, 209 F.3d 43, 47 (2d Cir. 2000).

Courts in this Circuit use two methods to determine a reasonable attorneys' fee. *Id*. One such method is the percentage-of-the-benefit approach, whereby the courts "sets some percentage of the recovery as a fee." *Id*. This method is not readily applicable to the present case as the parties agreed to an uncapped recovery to compensate Settlement Class Members for their Lost Time and Out-of-Pocket Expenses, along with valuable Credit Monitoring Services and non-monetary benefits in the form of security system and practice enhancements by Mediant. As the full scope of the benefits is not clearly quantifiable, the percentage-of-the-benefit method is not apt to assessing the reasonableness of the requested attorneys' fees. *See, e.g.*, *Chin v. RCN Corp.*, No. 08-cv-7349, 2010 WL 3958794, at *5 (S.D.N.Y. Sept. 8, 2010) (using lodestar method to assess reasonableness of requested attorneys' fees where "settlement is not monetary in nature").

More suitable to assessing the reasonableness of the requested attorneys' fees in this case is the lodestar method, "under which the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Goldberger*, 209 F.3d at 47; *see also In re Sony*, 2008 WL 1956267, at *15 (applying lodestar method to assess reasonableness of negotiated fee request where no "common fund" had been created and defendant had agreed to pay the attorneys' fees "in addition to the class recovery"). "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Goldberger*, 209 F.3d at 47 (quoting *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999)). The lodestar method results in a "presumptively reasonable fee." *Midamines Sprl Ltd. v. KBC Bank NV*, No. 12-cv-8089, 2016 WL 1071028, at *2 (S.D.N.Y. Mar. 16, 2016) (quoting *Arbor Hill Concerned*

*Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190, 183 (2d Cir. 2008)).

The $700,000 award that Class Counsel now seeks is for both their attorneys' fees and the expenses that they have advanced in this litigation. Dkt. 146-1, ¶ 59. This amount was negotiated at arms-lengths between the parties after the substantive terms of the Settlement, is not contingent upon this Court's final approval of those terms, and does not reduce the amount available to compensate the Settlement Class Members. *Id.* ¶¶ 58, 62; Class Counsel Decl. ¶¶ 29-31. Each of these facts weighs in favor of the reasonableness of Class Counsel's requested attorneys' fees. *See In re Sony,* 2008 WL 1956267, at *15 ("important factors" supporting the reasonableness of the agreed-upon attorneys' fees included that the fee was negotiated at "arms-length" and "only *after* agreement had been reached on the substantive terms of the Settlement benefiting the class") (emphasis in original)). Further, the reasonableness of the requested amount is confirmed by an analysis of Class Counsel's lodestar and of the factors set forth in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

### A.   THE LODESTAR METHOD CONFIRMS THE REASONABLENESS OF CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES

To calculate the lodestar, "a court must first set a 'reasonable hourly rate' for each attorney and staff member, keeping in mind all case-specific variables" and then "determine the number of hours reasonably expended.'" *Midamines*, 2016 WL 1071028, at *2 (citation omitted). The court must then "multiply the reasonable hourly rate by the number of hours reasonably expended to determine the 'presumptively reasonable fee.'" *Id.* As explained below, applying this method results in a total Class Counsel lodestar of $1,264,007.50.

First, Class Counsel has collectively devoted 1,554.7 hours over the course of three years to litigating and resolving this action. *See* Class Counsel Decl. ¶¶ 44, 46, 49, 52 (providing

breakdown of hours spent by firm). This time includes that spent investigating the claims, drafting the original and then two amended complaints, collectively responding to six potentially dispositive motions by two different defendants,[6] negotiating the comprehensive Settlement Agreement and seeking preliminary approval from this Court, and working with Epiq and Mediant's counsel to design and implement a plan to notify the Settlement Class of the Settlement. Class Counsel Decl. ¶¶ 13-34. The legal issues in this case were evolving and complex, requiring Class Counsel to research and brief issues relating to Article III standing, the nature of Mediant's relationship with Donnelley, and how a claim for traditional common law negligence, as well as claims under certain California and Florida statutes, apply in the context of a data security incident. *See* Class Counsel Decl. ¶¶ 20-23; *see also infra*, Section I(B)(1). Further, Class Counsel expended significant time in negotiating a comprehensive Settlement Agreement with counsel for Mediant, revisiting the discussions at several points during the litigation. Class Counsel Decl. ¶¶ 17, 24-26. Therefore, and given the robust opposition mounted by each of the two defendants at every step of the litigation, the hours expended by Class Counsel are reasonable. *Id*. ¶ 43.

Next, the rates utilized in calculating Class Counsel's lodestar—which are set forth in detail in the attached Declaration of Class Counsel—are reasonable and consistent with those charged locally by attorneys of similar levels of experience and expertise. Class Counsel Decl. ¶¶ 46-47, 49-50, 52-53; *see also City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.,* No. 12-cv-0256, 2021 WL 2453972, at *2 (S.D.N.Y. June 15, 2021) (approving hourly rates that ranged from $170 to $1,058 in a securities fraud class action, and noting that they were "between 34% and 50% lower than the hourly rates charged for similar professionals for large private

---

[6] This includes the two jurisdictional motions in the predecessor Northern District of California and Southern District of Florida cases, and the 12(b)(1) and 12(b)(6) motions to dismiss from Mediant and Donnelley.

firms in the New York market"); *Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16-cv-5766, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (finding reasonable hourly rates ranging from $569 to $1,260 in 2017 and 2018). Determination of a "reasonable hourly rate" 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel,'" and may "'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" *Townsend v. Benjamin Enter., Inc.,* 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko v. Clinton County of New York,* 433 F.3d 204, 209 (2d Cir. 2005)). As explained in their declaration, Class Counsel's rates reflect reasonable rates for lawyers of comparable skill and experience and have consistently been approved by courts around the country. Class Counsel Decl. ¶¶ 47-48, 50-51, 53-54.

Applying those reasonable rates to the hours reasonably expended by each firm in this action results in the following per firm and total lodestars:

| Firm | Hours | Lodestar |
|------|-------|----------|
| Morgan & Morgan | 168.0 | $189,165.00 |
| Stueve Siegel Hanson LLP | 1,027.4 | $842,765.00 |
| Elaine Ryan | 359.3 | $232,077.50 |
| **Total** | 1,554.7 | $1,264,007.50 |

*See* Class Counsel Decl. ¶ 44. Thus, Class Counsel's total lodestar is $1,264,007.50.

This alone significantly exceeds the total agreed-upon fee of $700,000. Class Counsel Decl. ¶ 55. But even further, the total requested fees of $700,000 are intended to compensate Class Counsel for both their time *and* their costs and expenses, which they advanced in this litigation on a contingent basis. Dkt. 146-1, ¶ 59; Class Counsel Decl. ¶¶ 30, 37. The expenses advanced by Class Counsel include those reasonably necessary to prosecute this action, including filing fees, mediation fees, printing charges, and online research costs. *See* Class Counsel Decl. ¶¶ 38-40; *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010)

(awarding litigation expenses that were "reasonable and necessary to the effective prosecution of this action").

The following chart summarizes each firm's advanced expenses in this case through September 7, 2022:

| Firm | Costs/Expenses |
|------|----------------|
| Morgan & Morgan | $11,211.16 |
| Stueve Siegel Hanson LLP | $21,597.95 |
| Elaine Ryan | $3,936.98 |
| **Total** | **$36,746.09** |

*See* Class Counsel Decl. ¶ 38-39 (providing a per firm breakdown by type of expense). As a result, of the total agreed-upon award of $700,000 being sought, over $36,000 would be attributable to expenses, leaving less than $664,000 attributable to attorneys' fees. Class Counsel Decl. ¶ 41. This is nearly 50% less than Class Counsel's lodestar of over $1.2 million. *Id*. ¶ 55.

By contrast, in cases in which Class Counsel undertook significant risk in prosecuting the action, courts typically *enhance* counsel's lodestar by applying a multiplier. *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("'Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.'") (citation omitted); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-MDL-01695, 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007) ("Lodestar multipliers of over 4 are routinely awarded by courts, including this Court."). But while the legal and financial risks Class Counsel bore in this case could have justified a multiplier on their lodestar, *see infra* Section I(B)(3), the agreed-upon fees represent a *negative* multiplier on the time they spent prosecuting and successfully resolving this action. Class Counsel Decl. ¶ 55.

13

Further, as Class Counsel expects to expend significant additional time on this matter in connection with the Settlement Administration process and with seeking final approval of the Settlement Agreement, *see* Class Counsel Decl. ¶ 35, their lodestar will only increase, resulting in an even greater negative multiplier. Thus, the lodestar analysis confirms that Class Counsel's agreed-upon fee is reasonable. *See, e.g.*, *In re Veeco Instruments*, 2007 WL 4115808, at *10 (noting that lodestar analysis "unquestionably support[ed]" the requested fees where "[n]ot only is Plaintiffs' Counsel not receiving a premium on their lodestar to compensate them for the contingent risk factor, their fee request amounts to a deep discount from their lodestar"); *In re Ntl Inc., Sec. Litig.*, No. 02-cv-3013, 2007 WL 623808, at *8 (S.D.N.Y. Mar. 1, 2007) (negative multiplier on counsel's lodestar demonstrated that fee "will not bring a windfall to co-lead plaintiffs' counsel" and was therefore reasonable).

## B.   CLASS COUNSEL'S FEES ARE REASONABLE UNDER THE *GOLDBERGER* FACTORS

In addition to assessing the reasonableness of attorneys' fees based on the lodestar method, courts in this Circuit "continue to be guided by the traditional criteria" in determining whether a fee is reasonable, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).[7] Consideration of each of these factors confirms the reasonableness of the requested attorneys' fees.

---

[7] While the *Goldberger* factors are traditionally applicable when assessing the reasonableness of fees that are taken from a common fund, which this Settlement does not create, Class Counsel nonetheless engages in this analysis as the factors are relevant to demonstrating that the requested fee is reasonable.

### 1.      The time and labor expended by Class Counsel

The excellent result achieved for the Settlement Class is the result of Class Counsel's dedication of over 1,600 hours to this litigation. Class Counsel Decl. ¶¶ 11, 44. This commitment of time and labor is reasonable for a case of this size and complexity. *Id*. ¶ 43. Indeed, in response to vigorous opposition from both defendants in this case, Class Counsel has briefed substantial motions at every stage of the litigation, including on personal jurisdiction, subject matter jurisdiction, and the adequacy of Plaintiffs' allegations. *Id*. ¶¶ 16-23. Thus, it has taken close to three years to reach the present stage in the case, with Plaintiffs poised to file a Third Amended Complaint.

And as this Court has recognized, the jurisprudence around data breach cases is still evolving, thus requiring Class Counsel to expend time researching and briefing novel and complex issues. *Toretto v. Donnelley Financial Solutions Inc.*, No. 20-cv-2667, 2022 WL 348412, at *12 (S.D.N.Y. Feb. 4, 2022); *see also In re Equifax Inc. Customer Data Security Breach Litig.*, No. 1:17-md-2800, 2020 WL 256132, at *32 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), *and cert. denied sub nom. Watkins v. Spector*, No. 21-638, 2022 WL 89334 (U.S. Jan. 10, 2022) (noting that data breach plaintiffs' "path forward remained difficult," as "[t]he law in data breach litigation remains uncertain and the applicable legal principles have continued to evolve"). For example, in connection with Mediant's 12(b)(6) motion to dismiss the Second Amended Complaint, Class Counsel addressed several evolving issues regarding data breach claims, including the questions of whether "loss of identity information" is a "legally cognizable claim" and whether New York and Illinois's "economic loss" doctrine bars recovery for the types of losses suffered in a data incident. Dkt. 108, at 44-46, 19-32; *Toretto*, 2022 WL 348412, at *8-9, 12. Further, in analyzing just one element of their claim for negligence—whether

defendants owed the Plaintiffs a duty of care—Class Counsel analyzed privity requirements under New York law, surveyed how other courts had applied the duty element in data incident cases, and distinguished earlier precedent from this Court in *Hammond v. The Bank of New York Mellon Corp.*, No. 08-cv-6060, 2010 WL 2643307, at *2 (S.D.N.Y. June 25, 2010) where the court concluded that "an increased risk of future harm" due to a data incident was insufficient to confer Article III standing to sue. Dkt. 108, at 34-40. Researching, analyzing and briefing these and other issues in response to motions from two defendants was necessarily a time and labor-intensive project. Class Counsel Decl. ¶ 23.

Further, Class Counsel devoted significant time to negotiating a resolution in this case, engaging in discussions with Mediant's counsel at several points in the litigation before finally reaching an agreement earlier this year. Class Counsel Decl. ¶¶ 17, 24-26. Thus, given the novel issues in this case, the multiple dispositive motions to which Class Counsel responded, and the efforts required to bring this case to a negotiated resolution, the time and labor Class Counsel expended warrant the requested attorneys' fees.

## 2. The magnitude and complexities of the litigation

The magnitude and complexities of this litigation also warrant the requested attorneys' fees. Not only is the jurisprudence of data incident claims relatively novel and continuing to evolve, *see supra* Section II(B)(1), but class actions are "inherently complex." *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp. 2d 164, 174 (S.D.N.Y. 2000). Further, defendants vigorously contested Plaintiffs' claims at every stage of the litigation. Class Counsel Decl. ¶¶ 16-23. Therefore, the magnitude and complexities of the litigation weigh in favor of the requested award.

### 3. The risk of the litigation

Class Counsel faced several risks in prosecuting this action. The first is the risk of prosecuting a data breach action in a relatively new and evolving field of jurisprudence. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 147 (S.D.N.Y. 2010) (stating that "[t]he unsettled nature of the law applicable to Plaintiffs' claims—especially as it existed more than five years ago when this case was filed—increases the risks for Plaintiffs' Counsel."); *see also Goldberger*, 209 F.3d at 55 ("[i]t is well-established that litigation risk must be measured as of when the case is filed."). At the time Class Counsel filed the initial complaint in this Court, there was disagreement among the district courts as to whether a risk of future identity theft or fraud was a cognizable injury-in-fact for purposes of conferring Article III standing to sue, and the Second Circuit had yet to decide the issue. Indeed, defendants in data breach cases across the country consistently cited a decision by this Court in *Hammond v. Bank of New York*, No. 08-vb-6060, 2010 WL 2643307, at *1 (S.D.N.Y. 2010), in which the Court concluded that the data breach plaintiffs did not have Article III standing "because they claim to have suffered little more than an increased risk of future harm from the loss (whether by accident or theft) of their personal information." *Id.* at *2; *but see Sackin v. TransPerfect Global, Inc.*, 278 F.Supp.3d 739, 746-47 (S.D.N.Y. 2017) (concluding that Plaintiffs' allegations that they had reasonably incurred the cost of identity theft prevention services "sufficiently alleges injury in fact")

In filing the Complaint, Class Counsel thus took on the task of distinguishing *Hammond*, along with the risk that precedent in this Circuit would continue to develop along its lines. It was more than a year after Class Counsel filed the Seconded Amended Complaint that the Second Circuit rendered its decision in *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295 (2d Cir. 2021), holding for the first time that a plaintiff could establish Article III standing based on "an increased risk of future identity theft or fraud following the unauthorized disclosure of their

data." *Id.* at 300-01. But even *McMorris* only cleared a path as to the threshold issue of Article III standing; had the parties continued to litigate this case, further risks lay ahead, including to class certification and in proving damages, which Mediant has already indicated it would vigorously contest.

Thus, the relative novelty of Plaintiffs' claims—and the resulting risks involved in prosecuting them—support the reasonableness of the requested attorneys' fees. *See City of Detroit v. Grinnell*, 495 F.2d 448, 471 (2d Cir. 1974) (issues that are "novel and complex," rather than "straightforward and well worn," indicate risk of litigation) (abrogated on other grounds by *Goldberger*, 209 F.3d 43); *see also In re Anthem Data Breach Litig.*, No. 15-MD-02617, 2018 WL 3960068, at *13 (N.D. Cal. Aug 17, 2018) (Class Counsel in data breach case had "identified uniquely potent risks" that they "would have to overcome to reach a favorable result in this lawsuit.").

Class Counsel also took on significant financial risk by prosecuting this case on an entirely contingent basis, despite the legal risks described above, thus advancing their time and expenses without any guarantee of recovery. Class Counsel Decl. ¶¶ 36-37. Class Counsel's assumption of this risk supports the reasonableness of the agreed-upon fee, which, as discussed above, represents a *negative* multiplier on their lodestar. *In re Marsh ERISA Litig.*, 265 F.R.D. at 148 ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."); *see also In re Veeco Instruments Inc. Sec. Litig.*, No. 05-MDL-01695, 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007) ("the risk of non-payment in complex cases, such as this one, is very real. There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.").

####     4.       The quality of the representation

While Class Counsel is demonstrably qualified and experienced in the realm of data breach litigation (Class Counsel Decl. ¶¶ 3-10; *see also* Dkt. 153, at ¶ 16), "the quality of representation is best measured by results." *Goldberger*, 209 F.3d at 55. Those "results may be calculated by comparing 'the extent of possible recovery with the amount of actual verdict or settlement.'" *Id*. (quoting *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp*., 540 F.2d 102, 112 (3d Cir. 1976)). Here, Class Counsel overcame several legal hurdles to achieve excellent results for the Class.

It is difficult to assess "the extent of possible recovery" due to the dearth of data breach cases that have proceeded to trial. Still, this Court has recognized that the "costs incurred to mitigate" the future risk of "identity theft or fraud" are compensable in a data breach case. *See Toretto*, 2022 WL 348412, at *14. The Settlement compensates Class Members for these damages by providing for reimbursement for lost time and expenses incurred in response to both realized and potential future harm from the Data Security Incident. Dkt. 146-1, ¶¶ 27-28. Further, the Settlement provides two types of benefits that would not be available to Settlement Class Members as traditional damages through the litigation process. First, it offers them free access to two years of high-quality credit monitoring to protect against the risk of harm due to the Data Security Incident. *Id*. ¶ 30. Second, the Settlement requires changes to Mediant's information security practices will help protect Class Members' personal information in the future. *See In re Anthem,* 2018 WL 3960068, at *11 (noting that forms of "nonmonetary relief" in data breach case—including access to credit monitoring services and "obligatory changes" to defendant's "business practice"—"underscore that Class Counsel achieved an impressive benefit for the Class."). Mediant has also agreed to pay for the costs of notice and claims administration, along

19

with Class Counsel's court-approved fees and expenses, which also represent a benefit to the Class that was negotiated by Class Counsel. Dkt. 146-1, ¶¶ 57, 61.

The excellent result achieved for the Class—over vigorous opposition from defense counsel at every stage—speaks to the quality of Class Counsel's representation. So too does the background of Class Counsel, who have considerable and nationally recognized experience in the fields of class action litigation, data breach litigation, and the intersection of the two. *See* Class Counsel Decl. at ¶¶ 3-11. This factor therefore weighs in favor of a finding that the requested attorneys' fees are reasonable. *See Taft v. Ackermans*, No. 02-cv-7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (favorable results achieved for plaintiffs and "significant experience" of counsel in "litigating and settling securities class actions" weighed in favor of reasonableness of fees).

### 5. The requested fee in relation to the settlement

Although it is difficult to assign a total value to the Settlement due to its uncapped nature and the non-monetary nature of some of its benefits, the requested fee is reasonable in relation to the excellent results that the Settlement achieves for the Class. As explained above, *see supra* Section II(B)(4), the Settlement offers to make Class Members whole for any Lost Time or Out-of-Pocket Expenses that they have already suffered due to the Data Security Incident, as well as providing prospective protection from further harm through free access to credit-monitoring and reforms to Mediant's data security practices.

Further, the agreed-upon attorneys' fees and expenses do not diminish the amount of compensation available to the Settlement Class Members, are not contingent on the Court's approval of the substantive terms of the Settlement Agreement, and represent a significant negative multiplier on Class Counsel's lodestar. Dkt. 146-1, ¶ 62; Class Counsel Decl. ¶ 55.

Therefore, the requested attorneys' fees and expenses are reasonable in relation to the overall value offered to Class Members by the Settlement Agreement.

### A. Public policy considerations

Public policy also favors an award of the agreed-upon fee. "When determining whether a fee award is reasonable, courts consider the social and economic value of the class action, 'and the need to encourage experienced and able counsel to undertake such litigation.'" *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (quoting *In re Sumitomo Copper Litig.*, 74 F.Supp.2d 393, 399 (S.D.N.Y. 1999)). The present class action provides both a remedy for Settlement Class Members affected by the Data Security Incident (and who were unlikely to otherwise pursue individual remedies) and can serve to incentivize companies to take adequate steps to protect the sensitive personal information that they store. It therefore provides an important social benefit, as individuals' sensitive information is increasingly stored in digital format across a variety of platforms.

Further, an award of the agreed-upon fees and expenses will incentivize experienced and dedicated counsel to bring these types of cases that inure to the public benefit. *See Goldberger*, 209 F.3d at 51 (noting the "commendable sentiment in favor of providing lawyers with sufficient incentive to bring . . . cases that serve the public interest"); *Eltman v. Grandma Lee's, Inc.*, No. 82 Civ. 1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986) ("To make certain that the public [interest] is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.") (quotation marks and citation omitted).

***

Therefore, the nature of the requested fee as negotiated at arms-length and as being paid by Mediant separate from any relief to the Settlement Class Members, an analysis of Class

Counsel's lodestar and expenses in this action, and of the several factors set forth by the Second Circuit in *Goldberger v. Integrated Resources, Inc*., all demonstrate that the requested sum of $700,000 in attorneys' fees and expenses is reasonable.

## II.   THE REQUESTED SERVICE AWARDS FOR PLAINTIFFS ARE FAIR AND REASONABLE

"Service awards are common in class action cases" as "[i]t is important to compensate plaintiffs for the time they spend and the risks they take." *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12CV4216 RLE, 2014 WL 3778173, at *16 (S.D.N.Y. July 31, 2014) (citation omitted). Here, pursuant to the terms of the Settlement Agreement, Plaintiffs Toretto, King, and Braun seek an award of $2,500 each in recognition of the time and labor they expended in prosecuting this case and achieving this Settlement on behalf of the Settlement Class. Dkt. 146-1, at ¶ 60. Each of the three Plaintiffs spent time working with Counsel to describe and provide evidence of the damages they suffered in this action, which was vital to Class Counsel's investigation of the Data Security Incident and ability to prosecute this action for the benefit of all those affected. *See* Class Counsel Decl. ¶ 56.

By serving this role as private attorney general in pursuing their claims on behalf of the thousands of people across the country impacted by the Data Security Incident, Plaintiffs helped secure a remedy for Settlement Class Members who were harmed by the Data Security Incident, but who would not have the incentive to pursue individual remedies against Mediant. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 702 (S.D.N.Y. 2019) ("large size of the class and potentially small recovery of many individual plaintiffs suggests that class members' interests are likely served by a class action"). Further, these agreed-upon service awards were negotiated after the substantive terms of the Settlement, and the effectiveness of the Settlement is not tied to the Court's approval of this request. Dkt. 146-1, ¶¶ 58, 62. Therefore, Plaintiffs

respectfully ask that this Court grant them an award of $2,500 each for their service in securing the Settlement on behalf of the Settlement Class Members.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court enter an order awarding Class Counsel attorneys' fees and expenses in the amount of $700,000, and for service awards for the plaintiffs in the amount of $2,500 each.

Dated: September 12, 2022

/s/ *J. Austin Moore*
Norman E. Siegel (*pro hac vice*)
J. Austin Moore (*pro hac vice* )
Lindsay Todd Perkins (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
siegel@stuevesiegel.com
moore@stuevesiegel.com
perkins@stuevesiegel.com

John A. Yanchunis (*pro hac vice*)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel.: 813-223-5505
jyanchunis@forthepeople.com

Elaine A. Ryan (*pro hac vice*)
**AUER RYAN PC**
20987 N. John Wayne Parkway, B104-374
Maricopa, AZ 85139
Tel: 520-705-7332
eryan@auer-ryan.com

*Counsel for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered users.

/s/ *J. Austin Moore*