# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILLIP TORETTO, DANIEL C. KING, and SHERI BRAUN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>DONNELLEY FINANCIAL SOLUTIONS, INC. and MEDIANT COMMUNICATIONS, INC., individually and as general partners,<br><br>        Defendants. | Case No. 1:20-cv-02667-GHW |

## CLASS COUNSEL'S DECLARATION IN SUPPORT OF UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND FOR PLAINTIFF SERVICE AWARDS

J. Austin Moore, Elaine Ryan, and John A. Yanchunis declare as follows:

1.    We serve as counsel to Plaintiffs Phillip Toretto, Daniel C. King, and Sheri Braun, and as interim Class Counsel for purposes of the Settlement. Dkt. 153, at ¶ 16. We submit this Declaration in support of Class Counsel's Unopposed Motion for Approval of Attorneys' Fees and Expenses and for Plaintiff Service Awards. We have personal knowledge of all the matters addressed in this Declaration, including our work and that of our colleagues in prosecuting this action and negotiating its Settlement.[1]

---

[1] All capitalized terms are defined as in the Parties' June 16, 2022 Settlement Agreement. *See* Dkt. 146-1, ¶ 26.

2.     Collectively, we have significant experience in the area of data privacy and breach litigation, including in most of the largest and most complex class action suits in this area to date. A summary of our experience follows.

3.     J. Austin Moore is a partner at Stueve Siegel Hanson and has significant experience representing consumers in data breach and privacy litigation. Over the last decade, Mr. Moore has played key roles representing consumers in many of the largest data breach cases in history, including multi-district litigation in *Target Corp*. (consumer settlement valued at $23 million), *The Home Depot* (consumer settlement valued at $29 million), *Anthem Insurance* (settlement valued at $115 million), *Equifax* (settlement valued at over $1.5 billion), the *U.S. Office of Personnel Management* (preliminary approval of $63 million settlement), and *T-Mobile* (preliminary approval of $350 million settlement). Mr. Moore's experience in this field includes leading plaintiff vetting efforts, chairing law and briefing committees, and negotiating class-wide settlements.

4.     Among his recent cases, Mr. Moore argued a precedential data breach case where the Third Circuit reversed the dismissal of a data breach class action for lack of Article III standing and clarified the contours of "injury" based on the threat of future harm. *See Clemens v. ExecuPharm, Inc*., --- F.4th ---, 2022 WL 4005322 (3d. Cir. Sept. 2, 2022). Mr. Moore was also appointed as class counsel on behalf of a class of optometrists who were subject to a data breach of the national optometry board. Following a successful appeal to the Fourth Circuit, the court approved an "outstanding" $3.25 million settlement on behalf of more than 61,000 eye doctors. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. CV JKB-16-3025, 2019 WL 3183651, at *4-5 (D. Md. July 15, 2019) (noting Mr. Moore and his partner Norman Siegel "have substantial experience in consumer class action litigation, and in particular data breach and privacy litigation,

and were able to negotiate a well-informed Settlement that provides meaningful relief to Plaintiffs and the Class."). Mr. Moore also recently served as co-lead counsel in the Citrix data breach litigation with Mr. Yanchunis, where they negotiated a $2.3 million settlement that received final Court approval in June 2021. *In re Citrix Data Breach Litig.*, No. 19-61350-CIV, 2021 WL 2410651, at *4 (S.D. Fla. June 11, 2021).

5.      In recognition of his efforts, Mr. Moore was named among Law360's "Rising Stars" in the field of Cybersecurity and Privacy Law, which recognizes attorneys under 40 "whose legal accomplishments transcend their age." Mr. Moore's firm, Stueve Siegel Hanson, was selected by Law360 as its Cybersecurity & Privacy Group of the Year, recognizing practice groups that "worked on the biggest deals or achieved the biggest wins in the most important cases."

6.      Elaine Ryan is a named partner in Auer Ryan PC. Prior to starting her own law firm this year, Ms. Ryan was a partner with the Phoenix, Arizona law firm of Bonnett, Fairbourn, Friedman & Balint, PC, which had a robust national class action practice led by Ms. Ryan and several of her then-partners.

7.      Ms. Ryan's class action experience includes several data privacy and breach cases in courts throughout the United States. She and her former partners at Bonnett, Fairbourn have successfully resolved cases in their home state of Arizona. *See, e.g.*, *In re Valley Anesthesiology Consultants, Inc. Data Breach Litig.*, Case No. CV2016-013446 (AZ. Dec. 14, 2016); *In re Banner Health Data Breach Litig.*, Case No. 2:16-CV-02696-SRB (D.Az. Aug. 9, 2016), and elsewhere. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, Case No. 15-MD-02617-LHK (N.D. Cal. 2015).

8.     Ms. Ryan has taken an active role in these cases, as well as several others that are presently pending from coast-to-coast. She has been appointed class counsel, assigned to plaintiffs' steering committees in MDL suits, and her efforts have received praise from the courts.

9.     John A. Yanchunis leads the Class Action Department at Morgan & Morgan. His practice in the privacy arena stretches back decades, beginning in 1999 with the filing of *In re Doubleclick Inc. Privacy Litigation*, 154 F. Supp.2d 497 (S.D.N.Y. 2001), which alleged privacy violations based on the placement of cookies on hard drives of internet users. Beginning in 2003, he served as co-lead counsel in the successful prosecution and settlement of privacy class action cases involving the protection of privacy rights arising from the misuse of information of more than 200 million consumers under the Driver's Protection Privacy Act against the world's largest data and information brokers, including Experian, R.L. Polk, Acxiom, and Reed Elsevier (which owns Lexis/Nexis). *See Fresco v. Auto. Directions, Inc*., No. 03-cv-61063 and *Fresco v. R.L. Polk,* No. 07-cv-60695 (S.D. Fla.).

10.     Mr. Yanchunis serves, by appointment of Judge Lucy Koh, as lead counsel in perhaps the largest class action lawsuit in history by number of consumers affected: *In re: Yahoo! Customer Data Sec. Breach Litig.*, No. 16-md-02752-LHK (N.D. Cal.), which at inception included over 1 billion Yahoo user accounts. He also serves, or has served, in leadership positions in the following data privacy-related multidistrict cases: *In Re: Equifax, Inc. Customer Data Security Breach Litig.*, 1:17-md-2800-TWT (N.D. Ga.) (member of the Plaintiffs' Steering Committee) (final approval of $380.5 million fund); *In re Capital One Consumer Data Security Breach Litig.*, MDL No. 1:19md2915 (E.D. Va. 2022) ($190 million settlement preliminarily approved); *In re: U.S. Office of Personnel Management Data Security Breach Litigation*, 1:15-mc-01394-ABJ (D.D.C.) (member of the Executive Committee) (dismissal on standing grounds

reversed on appeal by the D.C. Circuit); *In re The Home Depot, Inc. Consumer Data Sec. Data Breach Litig.*, No. 1:14-md-02583-TWT (N.D. Ga.) (co-Lead Counsel) (final judgment entered approving a settlement on behalf of a class of 40 million consumers with total value of more than $29 million); and *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522 (D. Minn.) (Executive Committee member) (final judgment approving a settlement on behalf of a class of approximately 100 million consumers upheld by the 8th Circuit), amongst many others. Mr. Yanchunis also litigated and successfully resolved the Facebook data breach case, including achieving certification of a litigation class, in *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686 (N.D. Cal. 2019).

11.     Class Counsel's collective experiences on the forefront of litigating and resolving data breach cases, including some of the largest in history, were brought to bear on the approach to prosecuting and settling the claims presented in this case. And based on these experiences, it is our shared view that the Settlement presented here is an excellent result for the Settlement Class, as it offers both to make Settlement Class Members whole for costs already incurred in remedying the breach, as well as comprehensive prospective relief to prevent future harm that could result from the misuse of their stolen personal information.

### Summary of Class Counsel's Work

12.     In April 2019, hackers gained unauthorized access to four of Mediant's e-mail servers and allegedly stole the personal information of 224,650 individuals who were investors in Mediant's clients (the "Data Security Incident"). The information accessed included social security numbers and bank and tax identification information. Mediant began informing these individuals of the security incident about two months later, in late May 2019.

13.     Prior to filing any litigation arising out of the Data Security Incident, Class Counsel conducted a thorough investigation of the potential claims, including by extensively researching Mediant's business practices, consulting with experts regarding the nature and scope of the Data Security Incident, interviewing victims of the Data Security Incident, including the Plaintiffs, and researching potential legal claims.

14.     Following our investigation of the case, Mediant and the Plaintiffs (collectively, the "Parties") actively and vigorously litigated their claims and defenses arising out of the Data Security Incident for close to three years.

15.     Class Counsel initially filed two separate class action lawsuits arising out of the Data Security Incident, one in the Northern District of California and the other in the Southern District of Florida. Ms. Ryan and Mr. Moore filed the California case against Mediant on behalf of Plaintiffs Phillip Toretto and Daniel King and, separately, Mr. Yanchunis filed a similar case in Florida on behalf of Plaintiff Sheri Braun. *See Toretto v. Mediant Commc'ns, Inc.*, No. 19-cv-05208 (N.D. Cal.); *Braun v. Mediant Commc'ns, Inc.*, No. 19-62563-CIV (S.D. Fl.).

16.     Mediant moved to dismiss both the California and Florida cases for lack of personal jurisdiction over it, and Class Counsel filed briefs opposing dismissal in both actions. *Toretto*, No. 19-cv-05208, Dkt. Nos. 24, 27; *Braun*, No. 19-62563, Dkt. Nos. 7, 18. After hearing argument on the motions, the courts dismissed both cases for lack of personal jurisdiction. *Toretto v. Mediant Commc'ns, Inc.*, No. 19-cv-05208, 2020 WL 1288478, at *6 (N.D. Cal. Mar. 18, 2020); *Braun v. Mediant Commc'ns, Inc.*, No. 19-62563-CIV, 2020 WL 5038780, at *4 (S.D. Fla. Apr. 14, 2020).

17.     On May 7, 2020, Class Counsel and Mediant participated in a full-day mediation with mediator Rodney Max of Upchurch Watson White & Max. The Parties continued their

discussions after the mediation session, both through Mr. Max and directly through counsel, but were unable to reach a resolution at that time.

18.     Thereafter, Class Counsel consolidated their two separate lawsuits as a single class action lawsuit in the United States District Court for the Southern District of New York, where Mediant is headquartered. In this action, Plaintiffs Toretto, Braun, and King, on behalf of themselves and those similarly situated, asserted claims against Mediant and its alleged business partner, Donnelley Financial Solutions ("Donnelley), for negligence, negligence per se, breach of contract, unjust enrichment, a declaratory judgment, and violations of California and Florida statutes. *Toretto v. Mediant Commc'ns, Inc*., 1:20-cv-02667 (S.D.N.Y.), Dkt. 1.

19.     After Class Counsel filed two amended complaints, Dks. 23, 57, defendants Mediant and Donnelley indicated that they intended to move to dismiss the Second Amended Complaint. The Court instructed the defendants to proceed in two stages: they should first file their motions to dismiss pursuant to Rule 12(b)(1), and then subsequently file any motions pursuant to Rule 12(b)(6), if necessary. Dkt. 178, at 1.

20.     In the first round of motions, each defendant filed a separate brief challenging Plaintiffs' Article III standing to bring claims against them pursuant to Federal Rule of Civil Procedure 12(b)(1), with Donnelley arguing that the two defendants were not "partners" such that Donnelley could be held liable for Mediant's cybersecurity deficiencies, Dkt. 68, at 5-14, and Mediant arguing that it could not be liable for breaching contracts that Donnelley had entered. Dkt. 66, at 3-8. Class Counsel filed a consolidated brief opposing both motions. Dkt. 71. Class Counsel's response required analysis of several issues, including whether the defendants' challenges appropriately went to threshold Article III standing or the merits, Dkt. 71, at 10-13, whether the Plaintiffs' allegations met the definition of "partnership" under Illinois law, *id*. at 13-17, and

whether the Plaintiffs were third-party beneficiaries to Mediant's contract with Donnelley. *Id*. at 20-23.

21.     This Court denied both defendants' motions, finding that Plaintiffs had adequately alleged that Donnelley was a "direct cause" of their injuries and that they had standing to bring their breach of contract claims against both defendants. *Toretto v. Donnelley Fin. Sols., Inc*., No. 1:20-cv-2667, 523 F. Supp. 3d 464, 473, 475-76, 478 (S.D.N.Y. Mar. 5, 2021).

22.     Each defendant then filed a motion pursuant to Rule 12(b)(6). Dkts. 94, 96. Class Counsel opposed the motions, filing a 59-page consolidated brief defending each one of their common law and state statutory claims. Dkt. 108. Responding to the defendants' arguments required Class Counsel to examine multiple issues under the laws of several jurisdictions. For example, Class Counsel analyzed whether Mediant and Donnelley could be characterized as "partners" under New York law, Dkt. 108, at 8-19; whether Plaintiffs had adequately stated a claim for damages under the analysis of the recently decided opinion in *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 301-03 (2d Cir. 2021), *id*. at 19-30; whether they had pleaded each element of their negligence claim under New York law (after conducting a prerequisite choice of law analysis), *id*. at 32-45; and whether they had adequately alleged claims under Florida's Deceptive and Unfair Trade Practices Act, California's Unfair Competition Law, and California's Customer Records Act. *Id*. at 51-58.

23.     Responding to these two rounds of motions required a substantial commitment of time and resources by Class Counsel due to both the novel and evolving nature of data breach claims and the task of responding to separate arguments from each of the two defendants.

24.     While these motions were pending, Class Counsel and Mediant revived their settlement negotiations. After considering the Parties' full briefing on the motions, Dkts. 95, 98,

108, the Court granted Donnelley's motion to dismiss in full, and dismissed Plaintiffs' claims against Mediant, except the claims for negligence and for a declaratory judgment. 2022 WL 348412, at *1, 6 (Feb. 4, 2022). The Court found Plaintiffs had "plausibly allege[d] that Mediant had breached a duty to exercise reasonable care safeguarding Plaintiffs' personal information." *Id*. at *1. As to the dismissed claims, including those against Donnelley, the Court granted Plaintiffs leave to amend their complaint. *Id*. at *21.

25.     As this Court's decision on the defendants' 12(b)(6) motions helped define the scope of the case, including by narrowing Plaintiffs' claims and addressing the Parties' arguments as to Plaintiffs' negligence claim, Class Counsel and Mediant made substantial progress in their settlement negotiations and asked this Court to stay the Action pending their further discussions. Dkt. 129. This Court granted that request on February 25, 2022. Dkt. 130.

26.     On March 28, 2022, Class Counsel and Mediant participated in a second mediation with Mr. Max. This time, the negotiations were successful. On March 30, the Parties finalized and executed a Term Sheet, which represented an agreement in principle on the terms of the Settlement. After coming to this agreement in principle, Class Counsel continued to negotiate with Mediant's counsel for two months to finalize the terms of the Settlement.

27.     The Settlement offers two types of relief to the Settlement Class: uncapped funds available to reimburse those who spent time and/or money addressing the Data Security Incident, Dkt. 146-1, ¶¶ 27-28, as well as two forms of prospective relief to help prevent any future harm that could result from the misuse of their stolen personal information. The first type of prospective relief is access to two years of high-quality credit monitoring. *Id.* ¶ 30. This product, Aura's Identity Defense Total Service, is being made available to all Settlement Class Members, whether or not they made a Claim for Out-of-Pocket Losses or Lost Time. *Id*. While the Parties were able to secure

discounted pricing based on the size of the settlement class, the actual market value of this settlement benefit can be fairly estimated at approximately $360 per Settlement Class Member ($15 per Settlement Class Member for 24 months), or over $80 million in services made available to the Settlement Class as a whole. The second prospective relief offered is in the form of important remedial changes to Mediant's information security practices. *Id.* ¶ 31.

28.     As another benefit to the Settlement Class, Mediant has also agreed to pay for all costs of notice and administration of the Settlement, including the fees and expenses of the Settlement Administrator. *Id.* ¶ 57.

29.     The Parties only discussed attorneys' fees, expenses and Plaintiffs' service awards after the substantive terms of the Settlement had been agreed upon. Prior to that point, the Parties had only discussed that Mediant would separately pay for reasonable costs and fees, as ordered by the Court.

30.     Ultimately, the Parties agreed that defendants would not object to Class Counsel's motion for up to $700,000 in attorneys' fees and expenses. *Id.* ¶ 59. As explained further below, these fees, which we now seek, are significantly less than the lodestar for our work on this case. As to service awards for the Plaintiffs, the Parties agreed that defendants would not object to Plaintiffs' motion for $2,500 each, in recognition of the time, effort, and expense they incurred in pursuing claims that ultimately benefited the Settlement Class Members. *Id.* ¶ 60. Mediant agreed to separately pay for these attorneys' fees, expenses, and service awards, in the amount ordered by the Court. *Id.* ¶ 61.

31.     None of these fees would reduce the amount available for Settlement Class Members' Claims, nor are the substantive terms of the Settlement conditioned on the Court's approval of the requested fees or service awards. *Id.* ¶ 62.

32.     Prior to seeking preliminary approval of the Settlement, Class Counsel worked with Mediant's counsel to seek and select a Claims Administrator; to select and negotiate with a company to provide a Credit Monitoring product; and, with the Claims Administrator and Mediant's counsel, to create a Notice program designed to reach as many Class Members as possible.

33.     After working through these details, Class Counsel moved this Court for preliminary approval of the Parties' Settlement Agreement on June 17, 2022. Dkt. Nos. 145-50. On June 24, 2022, this Court entered an order indicating that it was likely to approve the Settlement Agreement as fair, reasonable, and adequate; directing that notice of it be issued to the Class Members pursuant to the plan set forth in the Settlement Agreement; appointing Epiq Claims Solutions as the Claims Administrator; and appointing us as interim Class Counsel for purposes of the Settlement. Dkt. 153, ¶¶ 13-31.

34.     Since that time, Class Counsel has continued to work with the Claims Administrator and Mediant's counsel to implement the Notice program, including conducting final reviews of the notice forms, Settlement Website, and Toll-Free Phone Number. Epiq Claims Solutions began mailing notice to the Class Members on August 24, 2022, a process which was completed on September 7, 2022. We have already been in communication with Class Members who have contacted us about filing claims.

35.     Class Counsel expects to expend additional time and resources on this action over the next several months, including by reviewing weekly Settlement Administration statistics compiled by Epiq, potentially fielding additional calls from Class Members, and responding to any other issues that arise in the course of the Settlement Administration process. *See* Dkt. 146-1, ¶ 55. Further, Class Counsel's motion for final approval of the Settlement Agreement in advance of the

Final Fairness Hearing, which is set for January 5, 2023, will require a further commitment of hours and resources, Dkt. 153, at ¶¶ 26-27, as will overseeing any future payment distribution.

## **Contingent Nature of the Representation**

36.     At the time we took on the cases following the breach, Class Counsel faced significant risk. We were aware that data breach litigation was a developing field, with evolving jurisprudence. For example, at the time we filed the initial complaint in this Court, the Second Circuit had yet to find that the potential for future misuse of stolen personal information was an injury sufficient to confer Article III standing to sue. And while we were confident in the strengths of our case, further risks lay beyond that threshold issue, including as to class certification and in ultimately proving damages. Indeed, the dearth of data breach cases that have gone through to trial made it difficult to fully assess the extent of the risk involved.

37.     Despite these risks, Class Counsel have represented the Plaintiffs and the Class on a fully contingent basis. Thus, for over three years, we have advanced our time and that of our colleagues, along with the expenses reasonably necessary to prosecute this case, without any compensation and with no guarantee of recovery. Our time and expenses in this action are discussed in more detail below.

## **Class Counsel's Advanced Costs and Expenses**

38.     For the past three years, Class Counsel has advanced significant costs and expenses that were reasonably necessary to prosecute this case. These expenses total $36,746.09 in unreimbursed costs, and include fees for pro hac vice admissions, other court filing fees, copy and print charges, and online research fees. The following chart breaks down the total costs expended by Class Counsel per firm:

| Firm | Costs/Expenses |
|---|---|
| Stueve Siegel Hanson LLP | $21,597.95 |
| Morgan & Morgan | $11,211.16 |
| Auer Ryan[2] | $3,936.98 |
| **Total** | **$36,746.09** |

39.     A detailed breakdown of the specific costs and expenses incurred by each firm is summarized below:

| Morgan & Morgan Costs/Expenses | |
|---|---|
| **Cost Category** | **Amount Paid** |
| Filing Fee | $400.00 |
| PACER | $247.00 |
| Pro Hac Vice Fees | $400.00 |
| Postage & Shipping | $28.06 |
| In-House Printing | $16.00 |
| Service of Process | $130.60 |
| Telephone Charges | $2.00 |
| Mediation – Upchurch Watson White & Max Mediation Group, Inc. | $9,987.50 |
| **Total** | **$11,211.16** |

| Stueve Siegel Hanson Costs/Expenses | |
|---|---|
| **Cost Category** | **Amount Paid** |
| Meals | $66.50 |
| Court Fees | $1,645.00 |
| Process Servers | $322.00 |
| Airfare | $1,191.81 |
| Ground Transportation | $83.40 |
| Internal Print & Copy | $235.60 |
| Postage | $2.22 |

---

[2] This chart reflects the costs and expenses of Bonnett, Fairbourn, Friedman & Balint, PC, the firm that worked on this case prior to Auer Ryan.

| Online Research (PACER) | $50.40 |
|---|---|
| Online Research (Westlaw) | $18,687.23 |
| Accurint | $1.22 |
| **Total** | **$22,285.38** |

| **Auer Ryan Costs/Expenses** | |
|---|---|
| **Cost Category** | **Amount Paid** |
| Filing Fees | $1,804.70 |
| Pro Hac Vice and Certificates of Good Standing | $179.45 |
| Mailing Fees | $39.56 |
| Online Research (PACER and Westlaw) | $1,069.27 |
| Internal Print & Copy | $101.20 |
| Travel | $742.80 |
| **Total** | **$3,936.98** |

40.     These costs were necessary and reasonably incurred in connection with the prosecution of this action. If Class Counsel had not been successful on behalf of the Class, we would have been required to absorb these expenses at a loss.

41.     The award of $700,000 that Class Counsel now seeks, and that the Parties agreed upon in the Settlement Agreement, is inclusive of both Class Counsel's attorneys' fees *and* their costs and expenses. Dkt. 146-1, ¶ 59. Subtracting Class Counsel's reasonable costs and expenses of $36,746.09 from that total agreed-upon award leaves $663,253.91 that would be attributable to compensating Class Counsel for the time and labor they expended in this action.

### Class Counsel's Lodestar

42.     Through September 7, 2022, Class Counsel has devoted 1,554.7 hours to prosecuting the litigation arising out of the Data Security Incident, ultimately securing a Settlement that provides an excellent result for the Class. These hours include those involved in interviewing those affected by the Data Security Incident, researching and investigating potential claims and

drafting the complaints, responding to two motions to dismiss on personal jurisdiction grounds, responding to two complex motions to dismiss from each defendant on Article III and 12(b)(6) grounds, negotiating a comprehensive Settlement Agreement with Mediant's counsel, moving the Court for preliminary approval of that Settlement, and effectuating the Notice program that it sets forth.

43.     Our three firms worked together to prosecute these actions as efficiently as possible and to minimize any overlap in our work. In our extensive experience litigating class actions and data breach cases, and given the work required to litigate and then resolve an action in an evolving and uncertain field, the number of hours devoted by Class Counsel to prosecuting this case is reasonable.

44.     As reflected in the following chart, Class Counsel expended a total of 1,554.7 hours prosecuting this litigation through September 7, 2022, which results in a lodestar of $1,264,007.5:

| Firm | Hours | Lodestar[3] |
|------|-------|-------------|
| Morgan & Morgan | 168.0 | $189,165.00 |
| Stueve Siegel Hanson LLP | 1,027.4 | $842,765.00 |
| Auer Ryan | 359.3 | $232,077.5 |
| **Total** | **1,554.7** | **$1,264,007.5** |

---

[3] The rate used for each attorney in calculating the lodestar is their current billing rate. *See Farbotko v. Clinton County of New York*, 433 F.3d 204, 210, n.11 (2d Cir. 2005) (to compensate attorneys for delay in payment, "the rates used by the [district court] to calculate the lodestar amount should be 'current rather than historic hourly rates.'") (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)); *Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194, 2010 WL 4877852, at *23 (S.D.N.Y. Sept. 4, 2014) ("The use of current rates to calculate the lodestar figure has been repeatedly endorsed by courts as a means of accounting for the delay in payment inherent in class actions and for inflation.") (citation omitted). The rate for each attorney is set forth in detail below.

45.     Class Counsel kept track of the hours we spent working on this action in six-minute increments. Based on Class Counsel's time records, the following charts represent the total number of attorney hours reasonably expended through September 7, 2022, summarized by firm.

46.     First, the law firm of Morgan & Morgan expended the following attorney hours:

| Attorney | Title | Years Practicing | Hours[4] | Rate | Lodestar |
|---|---|---|---|---|---|
| John Yanchunis | Partner | 42 | 94.5 | $1300.00 | $122,850.00 |
| Kenya Reddy | Partner | 21 | 50.10 | $950.00 | $47,595.00 |
| Patrick Barthle | Partner | 10 | 23.40 | $800.00 | $18,720.00 |
| **Total** | | | **168.00** | | **$189,165.00** |

47.     The attorneys and staff that participated in this matter on behalf of my firm are all well-credentialed and highly experienced. The rates sought by professionals at my firm are consistent with their credentials, level of experience, past awards, and market rates in the locales in which they practice:

> a.  **John A. Yanchunis** – Mr. Yanchunis is the head of the Morgan & Morgan Complex Litigation Group's class action section, and has been appointed co-interim Class Counsel in this action. He obtained his undergraduate degree from University of Florida in 1976, where he was a member of Florida Blue Key and Omicron Delta Kappa. He received his Juris Doctor degree from the South Texas College of Law in 1980, where he graduated magna cum laude. During law school, Mr. Yanchunis was a member of the Order of the Lytae, Associate Editor-in-Chief and Technical Editor of the South Texas Law Journal. His practice—which began after completing a two-year clerkship with United States District Judge Carl O. Bue, Jr., S.D. Tex.—has concentrated on complex litigation, including consumer class actions for more than two-thirds of that time. Alongside his experience in the area of privacy, he also served as lead, co-lead, and class counsel in numerous

---

[4] In an exercise of billing judgment, Morgan & Morgan has not included any time from attorneys or staff members who spent less than 15 hours on this case. This results in the removal of the time of some partners, associates and staff members who worked on important tasks including research and administrative tasks.

national class actions, including multi-district litigation, involving a wide range of subjects affecting consumers, including antitrust, defective products, life insurance, annuities, and deceptive and unfair acts and practices. *See also supra* ¶¶ 9-10.

b. **Patrick A. Barthle** – Mr. Barthle graduated, *cum laude*, with a double major in History and Criminology from the University of Florida in 2009. While at UF, he was inducted into the Phi Beta Kappa Honor Society. Mr. Barthle graduated *summa cum laude* from Washington and Lee University School of Law in 2012. He was a Lead Articles Editor for the Law Review, a member of the Order of the Coif and the Phi Delta Phi Legal Honor Society. Before joining Morgan & Morgan in 2015, Mr. Barthle worked at one of the country's largest law firms, Greenberg Traurig, LLP, and then served as a judicial law clerk for two years to the Honorable Mary S. Scriven, United States District Judge, Middle District of Florida. Mr. Barthle was selected as a Florida Super Lawyer Rising Star in 2019 and 2020 in the field of Class Actions.

c. **Kenya Reddy** – Ms. Reddy graduated from Duke University with a degree in political science and graduated from the University of Virginia School of Law in 2000. She clerked for the Hon. Anne C. Conway, the former Chief Judge of the United States District Court for the Middle District of Florida and the Hon. Charles R. Wilson of the United States Court of Appeals for the Eleventh Circuit. At Morgan & Morgan, her primary area of practice is in representing consumers in class action litigation.

48. The billable rates charged by the attorneys and other professionals in my law firm, as set forth herein, have been approved by other federal and state courts across the country. *See, e.g.*, *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at \*26 (N.D. Cal. July 22, 2020) (approving as reasonable rates of class counsel, which included $900 for John Yanchunis, and $550 for Mr. Barthle, and finding as reasonable: "billing rates for partners range from about $450 to $900, depending on seniority level," "billing rates for non-partner attorneys, including of counsel, associates, and staff/project attorneys, range from about $160 to $850, with most under $500," and "billing rates for paralegals range from $50 to $380"); *In re: Equifax Inc. Customer Data Security Breach Litig.*, Case No 1:17-md-02800-TWT, ECF 956 at 105 (N.D. Ga. Jan. 13, 2020) (approving as reasonable rates of class counsel, which included $950 for John Yanchunis, and approving rates ranging from $750 - $1050 for lead counsel); *Walters v. Kimpton*

*Hotel & Restaurant*, No. 3:16-cv-05387, ECF 117 (N.D. Cal. July 11, 2019), *id.*, ECF 113-1 (May 8, 2019) (identifying Morgan & Morgan rates of $864-950 for partners, $450-636 for associates, $196 for paralegals, and $300 for investigators); *Finerman v. Marriott Ownership Resorts, Inc.*, No. 3:14-cv-01154, ECF 222 (M.D. Fla. Aug. 15, 2018); *id.*, ECF 222 (May 7, 2018) (identifying Morgan & Morgan rates of $950 for John Yanchunis, $450-864 for associates, $196 for paralegals, and $300 for investigators); *Sanborn v. Nissan N. Am., Inc.*, No. 0:14-cv-62567, ECF 200 at 3 (S.D. Fla. Jan. 6, 2017); *id.*, ECF 195-3 at 4 (Oct. 14, 2016) (identifying Morgan & Morgan rates of $950 for John Yanchunis, $450 for associate); and *Dyer v. Wells Fargo Bank, N.A.*, No. 3:13-cv-02858, ECF 51 at 10 (N.D. Cal. Oct. 22, 2014); *id.*, ECF 43-1 (July 11, 2014) (identifying Morgan & Morgan rates of $900 for John Yanchunis, $550 for associate).

49.     The law firm of Stueve Siegel Hanson expended the following attorney hours:

| Stueve Siegel Hanson LLP | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Title** | **Years Practicing** | **Hours**[5] | **Rate** | **Lodestar** |
| Norman E. Siegel | Senior Partner | 29 | 61.1 | $1125 | $68,737.5 |
| J. Austin Moore | Partner | 11 | 502.7 | $825 | $414,727.5 |
| Lindsay Todd Perkins | Partner | 15 | 331.2 | $825 | $273,240.0 |
| Yasmin Zainulbhai | Senior Counsel | 13 | 132.4 | $650 | $86,060.00 |
| **Total** | | | **1,027.4** | | **$842,765.00** |

---

[5] In an exercise of billing judgment, Stueve Siegel Hanson is submitting only those timekeepers who worked on this matter for fifty or more hours. This results in the removal of the time of several associates and staff members who worked on this case, including on drafting, research and cite-checks.

50.     The attorneys and staff that participated in this matter on behalf of my firm are all well-credentialed and highly experienced. The rates sought by professionals at my firm are consistent with their credentials, level of experience, past awards, and market rates in the locales in which they practice:

   a.   **Norman E. Siegel** is a founding partner of Stueve Siegel Hanson and leads the firm's data breach and privacy practice. In recent years, Mr. Siegel has been appointed as lead counsel in many of the largest data breach and privacy cases in the country, including serving as co-lead counsel in multi-district litigation against Equifax, Capital One, Quest Diagnostics, Home Depot, and Target for breaches of their data security. He was recently one of three lawyers named among Law360's "MVPs" in the field of Cybersecurity and Privacy Law and one of ten lawyers named as a "Titan of the Plaintiffs' Bar." Mr. Siegel has been involved in this case since its inception, working with Mr. Moore to develop the case strategy, assisting in the drafting of the complaint, and overseeing the management of the case.

   b.   **J. Austin Moore** is a partner at Stueve Siegel Hanson and has significant experience representing consumers in data breach and privacy litigation. He was appointed as co-interim Class Counsel in this matter and served as the partner responsible for leading the day-to-day management of this case. Mr. Moore has been actively involved in this case since its outset, including serving as the primary contact with Mediant's counsel, taking lead roles drafting the consolidated complaint, negotiating the settlement, substantive briefing, and preparing settlement-related filings. Mr. Moore has been appointed as class counsel in data breach and privacy cases across the country and has significant experience working with data breach victims and administering class settlements. *See also* Supra, ¶¶ 3-5.

   c.   **Lindsay Todd Perkins** is a partner at Stueve Siegel Hanson who was recognized in 2020 as a "Rising Star" in the field of Cybersecurity and Privacy Law. She focuses a significant portion of her practice on data and privacy litigation, taking a lead role in preparing the pleadings and briefing in cases against *Capital One*, *Marriott*, and the *National Board of Examiners in Optometry*, among others. Her role in this case has been with respect to responding to Mediant's 12(b)(1) and 12(b)(6) motions and in securing preliminary approval of the settlement. Ms. Perkins has been named by *Super Lawyers* as a "Rising Star" from 2012-2021, and received Missouri Lawyers Weekly's Up & Coming Award in 2020.

   d.   **Yasmin Zainulbhai** is a Senior Counsel to the firm. Her role in this case has been primarily post-settlement and related to seeking preliminary approval of the Settlement Agreement, working with Mediant's counsel and Epiq to execute the Notice plan, and seeking an award of the agreed-upon attorneys' fees, expenses, and service awards. Prior to joining Stueve Siegel Hanson, she served as Senior Counsel in the Appeals Division of the New York City Law Department. Ms.

Zainulbhai clerked for the Hon. Jon O. Newman of the United States Court of Appeals for the Second Circuit and the Hon. Ann M. Donnelly of the United States District Court for the Eastern District of New York. Prior to her clerkships, she was an associate at the New York law firm Patterson Belknap Webb & Tyler for six years.

51.     Stueve Siegel Hanson's hourly rates have been approved in fee applications submitted in jurisdictions across the country, including several in the last two years. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig*., 2020 WL 256132, at *39 (N.D. Ga. Jan. 13, 2020) (approving partner rates ranging from $750-$1,050 per hour in large-scale data breach class action); *Reyes v. Experian Info. Sols., Inc*., 2020 WL 5172713, at *4 (C.D. Cal. July 30, 2020) (approving Stueve Siegel Hanson's "sufficiently document[ed] and justifie[d]" hourly rates for purposes of cross-check, including Mr. Siegel's 2019 rate of $985 and Mr. Moore's rate of $700); *Smith v. Experian Info. Sols., Inc*., 2020 WL 6689209, at *6 (C.D. Cal. Nov. 9, 2020) (approving Stueve Siegel Hanson's "reasonable hourly rates" for complex practitioners, including Mr. Siegel's 2019 rate of $985 and Mr. Moore's rate of $700).

52.     Auer Ryan expended the following attorney hours:[6]

| Auer Ryan | | | | | |
|---|---|---|---|---|---|
| **Attorneys** | **Title** | **Years Practicing** | **Hours** | **Rate** | **Lodestar** |
| Elaine Ryan | Partner | 33 | 150.3 | $800 | $120,240.00 |
| Carrie Laliberte | Attorney | 7 | 133.7 | $400 | $53,480.00 |
| Patricia Syverson | Attorney | 22 | 75.3 | $775 | $58,357.50 |
| **Total** | | | 359.3 | | $232,077.5 |

---

[6] This chart includes the time spent on this matter by Elaine Ryan and her colleagues both when she was a partner with Bonnett, Fairbourn, Friedman & Balint, PC and now at Auer Ryan.

53. The attorneys and staff that participated in this matter on behalf of my firm are all well-credentialed and highly experienced. The rates sought by professionals at my firm are consistent with their credentials, level of experience, past awards, and market rates in the locales in which they practice:

   a. **Elaine Ryan** is a named partner in Auer Ryan PC in Arizona and is licensed to practice in ten states. Prior to starting her own law firm this year, Ms. Ryan was a partner with the Phoenix, Arizona law firm of Bonnett, Fairbourn, Friedman & Balint, PC, which had a robust national class action practice led by Ms. Ryan and several of her then-partners. Ms. Ryan's class action experience includes several data privacy and breach cases in courts throughout the United States, and she and her former partners at Bonnett, Fairbourn have successfully resolved cases in their home state of Arizona. *See, e.g.,* In re Valley Anesthesiology Consultants, Inc. Data Breach Litig., Case No. CV2016-013446 (AZ. Dec. 14, 2016); *In re Banner Health Data Breach Litig.*, Case No. 2:16-CV-02696-SRB (D.Az. Aug. 9, 2016), and elsewhere. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, Case No. 15-MD-02617-LHK (N.D. Cal. 2015). Her work in this case has primarily been related to participating and conferring with co-counsel on strategic decisions, as well as supervising the work of her colleagues.

   b. **Carrie Laliberte** has worked as an associate at Bonnet, Fairbourn Friedman & Balint for over six years. Her work involves consumer class actions, including negligence actions against health care providers, servicing companies and other corporate entities for inadequate data security measures; representing plaintiffs in label misrepresentation cases against manufacturers of supplements, food, and beverages; and consumer fraud actions against manufacturers misrepresenting the attributes of their products. Her role in this case primarily involved legal research and drafting pleadings and motions.

   c. **Patricia N. Syverson** has over 20 years of experience as a class action and employment lawyer and is licensed in both California and Arizona. She is currently a partner at Yen Pilch Robaina and Kresin in San Diego, California, and was a partner at Bonnet, Fairbourn Friedman & Balint during her work on this case. She has represented plaintiff classes against companies engaging in unfair business practices, false and deceptive advertising, data breaches, and product liability, collecting millions of dollars in relief for class members. In this case, her role has been primarily with respect to drafting of motions and communicating with co-counsel and the Parties.

54. During her thirty-three years of practice, Ms. Ryan has submitted numerous fee applications to courts around the country. In connection with those applications, she has never had

a court reduce her lodestar, and has been awarded fees in all cases in which she has submitted a fee application.

55.     Thus, Class Counsel's total lodestar of $1,264,007.5 significantly exceeds the requested award of $700,000. Per the terms of the Settlement Agreement, however, the requested award of $700,000 is intended to compensate Class Counsel for both their attorneys' fees *and* their costs and expenses. As explained above, *see supra* ¶ 40, the portion of the total agreed-upon sum of $700,000 that would be attributable to compensating Class Counsel for the time and labor they expended in this action is $663,253.91. This is significantly less than Class Counsel's $1,264,007.5 lodestar in this case, representing nearly a 50% discount on their time.

### Plaintiffs' Service to the Class

56.     Plaintiffs Phillip Toretto, Daniel C. King, and Sheri Braun took on the task of prosecuting this action on behalf of the Class. They sought out and retained counsel for their claims, each conferred with Class Counsel about the Data Security Incident and the resulting injuries that they suffered, including what steps they took to remediate and respond to the Incident.

57.     They have remained in contact with Class Counsel throughout the litigation.

58.     In our view, the Plaintiffs' efforts were essential to bringing about the Settlement, and the agreed-upon award of $2,500 is fair and adequate for their service.

We declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 12th day of September, 2022.

/s/ *J. Austin Moore*
J. Austin Moore

/s/ *John A. Yanchunis*

John A. Yanchunis

/s/ *Elaine A. Ryan*
Elaine A. Ryan

*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered users.

/s/ *J. Austin Moore*